Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of The Americas, 37th Floor
New York, New York 10020
Tel. No. (212) 880-3800
Fax No. (212) 880-8965

John H. Thompson
AKERMAN LLP
750 Ninth Street, N.W., Suite 750
Washington D.C. 20001
Tel.: (202) 393-6222
Fax: (202) 393-5959

*Proposed Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BUYK CORP.[1] | Case No. 22-10328 (MEW) |
| Debtor. | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER GRANTING AN EXTENSION OF TIME TO FILE SCHEDULES AND STATEMENTS**

Buyk Corp. (the "Debtor" or "Buyk"), the debtor and debtor-in-possession in the above-captioned Chapter 11 Case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby files this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to section 521(a) of Title 11 of the United States Code, (the "Bankruptcy Code"), Rule 1007 (b), and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) extending the time within which the Debtor must file its (a) statement of financial affairs, (b) schedule of assets and liabilities, and (c) schedule of executory contracts and unexpired leases (collectively, the "Schedules and Statements"). In support of this Motion, the Debtor submits the *Affidavit of James Walker Pursuant to Local Bankruptcy Rule 1007-2 And In Support of First Day Motions and Applications* (the "First Day Declaration"), which is being

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

1

filed contemporaneously herewith and is incorporated herein by reference. In further support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is section 521(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 1007 (b), and (c).

## BACKGROUND

4. The Debtor intends to proceed as expeditiously as permitted through its Chapter 11 case for the purposes of effecting a sale of substantially all of its assets subject to higher and better offers in an auction process approved by the Court.

5. Prior to this bankruptcy filing, the Debtor operated an ultra-high speed grocery business with 39 locations, 31 in the New York metropolitan area and 8 in the Chicago metropolitan area. The Debtor commenced operations in April of 2021. After an initial seed round of investment by Russian-based investors in the amount of approximately $63.5 million in convertible notes and $11 million in unsecured loans, in or about January 2022, the Debtor was in the process of a seeking additional equity investment of approximately $250,000,000. Due to the mounting indicia of a potential Russian dispute with Ukraine, the Debtor determined in January 2022 to pivot to a United States-based equity raise and actively sought series A funding from numerous institutional investors. The United States fund raising was going reasonably well when Russia commenced its invasion of Ukraine. At that juncture, the Debtor was confronted with an existential and, ultimately, fatal crisis. First, any chance of obtaining equity or debt investment

from the prominent institutional investors which had been interested in funding the Debtor was now lost.  Second, although the Debtor was operating and earning revenue, it was in the beginning stages of its growth and was relying, in part, on cash infusions by the founders to continue its operations and expansion.  Unfortunately, although the founders were not, and are not, subject to any sanctions, restrictions on the ability to transfer any funds out of Russia made it impossible for the founders to provide any further funding to the Debtor.

6. Since February 28, 2022, working together with the management team, the Debtor has tried to pursue an asset or stock sale to a variety of entities in a similar or adjacent business as the Debtor or a rescue loan /equity investment.  In light of the monthly deficiency between income and expenses, an impending payroll due on March 11, 2022, and other pressing obligations to creditors, plus the negative impact of the Russia/Ukraine crisis on investor interest, the Debtor began seeking a loan from several potential debtor-in-possession ("DIP") lenders in order to fund final payroll to Debtor's employees and independent contractors in the amount of approximately 800 and an orderly liquidation in the context of bankruptcy.  In the exercise of its fiduciary duties to all stakeholders it became apparent that the only viable and realistic strategic alternative for the Debtor was to obtain a short term bridge loan secured by all of the Debtor's assets, including unencumbered brand new (and almost new) refrigeration and other food storage equipment with a book value of approximately $11 million, grocery items (including 20% perishable items) with a book value of $1.7 million, and cash of approximately $700,000, in a sufficient amount to fund all outstanding payroll expense and an expedited sale process in bankruptcy.  The goal, of course, is to maximize the value of these assets in bankruptcy in order to repay the DIP Lender, administrative and priority claims and to, if possible, provide some level of distribution to unsecured creditors.

3

7. After having discussions with over thirty (30) potential funding sources, including multiple potential DIP lenders, on March 10, 2022, the Debtor entered into a Term Sheet with Legalist for a debtor-in-possession loan commitment of $6.5 million (the "DIP Loan").

8. On March 4, 2022, the Debtor furloughed approximately 98% of all employees. On March 11, 2022, the Debtor terminated the employment of all of its employees, except for six staff members who the Debtor proposes to continue to employ post-petition to assist in the orderly winddown in this liquidating Chapter 11.[2] On March 11, 2022, Legalist and the Debtor executed that certain Pre-Petition Term Loan Credit Agreement in the maximum amount of $6.5 million (the "Credit Agreement")[3] which provided for two separate draws: (i) $4 million on March 11, 2022 for the sole purpose of satisfying all payroll obligations for the Debtor's terminated employees and, (ii) up to $2.5 million to be drawn post-petition pursuant to a budget approved by the Court as part of Court approval of the DIP Loan and the funds borrowed both pre and post-petition.

9. The purpose of the post-petition availability under the DIP Loan is to fund an expedited and efficient sale process of the Debtor's assets. In light of the existence of perishable inventory and the desperate need to avoid administrative rents starting in April 2022[4], the Debtor retained certain auctioneers pre-petition with the intent to seek Court approval of the retention of such auctioneers and the sale process.

10. The Debtor's goal is to complete the sale process within sixty (60) days of the Petition Date and to then seek confirmation of a plan of liquidation to distribute the remaining sale

---

[2] On March 11, 2022, the Debtor provided WARN Notices to all terminated employees.

[3] The Pre-Petition Term Loan Credit Agreement was superseded by the Amended and Restated DIP Agreement executed on March 17, 2022.

[4] Many of the Debtor's leases are current through March 2022.

4

62552713;5

proceeds after satisfaction of the DIP Loan. The Debtor has sufficient funds and anticipated revenues from prospective asset sales to operate in liquidation mode through, at least, the first 13 weeks of these Chapter 11 cases, as reflected in the budget (the "Budget") prepared by the Debtor.

11. The Debtor's entry into the DIP Loan and the sale of all assets is the best result for all stakeholders under incredibly difficult and unforeseeable circumstances. For the Debtor's former employees, the DIP Loan allowed them to be paid their wages in full. For the rest of the Debtor's stakeholders, the DIP Loan, commencement of this case, and the contemplated sale process will enable the Debtor to maximize the value of its assets in the hope of satisfying creditor claims in order of priority.

## BUSINESS OF THE DEBTOR

12. In April 2021, the Debtor made its debut with the launch of a 15-minute grocery delivery service in New York City. In November 2021, the Debtor expanded into the Chicago market.

13. The Debtor offered grocery items, along with household essentials, personal care and pet supplies, relying on couriers on bicycles to deliver the orders.

14. The Debtor, which was backed by $63.5 million in seed funding, was the latest entrant to the competitive field of ultrafast delivery firms cropping up in major metropolitan areas including New York. One of the Debtor's differentiating factors from its competitors was its real-time, in-house technology. For example, the Debtor, which had an order weight maximum of 26 pounds for each courier, had the ability to split larger orders up between multiple couriers if needed. Its technology allowed the Debtor to fulfill orders within two minutes and then deliver them in between five and 10 minutes.

15. The Debtor relied on a mix of contractors and its own workforce and had more than 600 couriers and over 100 office workers. In addition to leveraging efficiencies from its

technologies, the Debtor attempted to earn revenue from the margins on its products and used the money saved by renting small locations not needed to be in prime spots for foot traffic to invest in employee costs. The Debtor's business plan also included an initiative to launch private label offerings with more than 100 SKUs in categories, such as meat and pasta.

16. As of February 24, 2022, the Debtor had 39 stores that serve the New York and the Chicago metropolitan areas (31 in New York and 8 in Chicago), each with 2,000 to 3,000 SKUs.

17. As noted above, the Debtor had been relying upon cash infusions by its original investors to continue to operate and expand while simultaneously seeking a new round of equity financing. Prior to closing its business, the Debtor's plan was to open another 100 stores in 2022. Due to the invasion of Ukraine, the Debtor was unable to execute on its planned equity raise, despite its intensive efforts to raise rescue capital. With relatively little cash on hand in February 2022 and payroll coming due, the Debtor's Board of Directors, in consultation with its managers and retained advisors, determined to ultimately terminate virtually all of its employees and obtain a relatively small DIP Loan to fund a liquidating Chapter 11 case.

18. On March 4, 2022, the Debtor furloughed 98% of its work force. On March 10, 2022, the Debtor enter into the Credit Agreement to borrow up to $6.5 million from Legalist with $4 million of such commitment already distributed by the Debtor on account of the wages due to all employees[5] whose employment was terminated on March 11, 2022.

19. As previously stated, Legalist and the Debtor agreed in the Credit Agreement that the Debtor was required to file a bankruptcy case on March 15, 2022 (with a two-business day grace period).

---

[5] Note the exception of 6 employees retained to assist with the bankruptcy.

6

## CHAPTER 11

20. On March 17, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. As a result of the Ukrainian crisis and the Debtor's attendant inability to receive funding from its initial investors and/or any other parties in a sufficient amount to continue to operate as a going concern while seeking a comprehensive capital raise or a merger or sale transaction, the Debtor's fiduciaries determined to cause the Debtor to commence this Chapter 11 case in order to effectuate an orderly sale of its assets.

## CORPORATE STRUCTURE

21. As set forth in the Declaration of James Walker in Support Of First Day Motions which has been filed contemporaneously herewith Rodion Shishkov and Viacheslav Bocharov, each own 46.55% of the Debtor. The remaining 6.9% of the Debtor is owned by Kirill Shishkov. Prior to the financial distress described above, the Debtor formed a German wholly-owned subsidiary named BUYK GmBH. That entity has no assets, liabilities and operations and has little if any value. In the Debtor's estimation it is highly unlikely that any part of the funds realized from the sales of the Debtor's assets will be distributed to equity holders under a liquidating plan or otherwise.

## CAPITAL STRUCTURE AND PREPETITION INDEBTEDNESS

22. The Debtor's principal pre-petition secured lender is Legalist whose secured debt against the Debtor is in the amount of $4,000,000 as of the Petition Date. Legalist has a blanket lien on all of the Debtor's assets. Legalist has committed to funding up to an additional $2.5 million to fund the Chapter 11 case. The Debtor has no other secured creditors.

23. The Debtor is also a borrower under certain unsecured convertible notes in the aggregate amount of $63.5 million during the period from June-December 2021(the "Convertible Notes"). In addition to the secured debt to Legalist and the Convertible Note debt, the Debtor has

approximately $18 million in unsecured debt.  Finally, the Debtor anticipates significant claims arising from the rejection of its leases (although as part of the sale process).

## SCHEDULES AND STATEMENTS

24.     The Debtor has begun compiling the information required to complete its Schedules and Statements.  Nevertheless, in order to prepare the Schedules and Statements, the Debtor must review and compile information from its books and records and from other documents relating to, among other things, accounts payable and receivables, real estate leases, employee wages and benefits, and vendor and supplier agreements.  Collecting the necessary information to prepare the Schedules requires an enormous expenditure of time and effort from the Debtor, its employees and professionals.

25.     Given the numerous critical operational matters that the Debtor's employees and legal personnel must address in the early days of this Chapter 11 Case, and the volume of information that must be reviewed, prepared, and included in its Schedules and Statements, the Debtor anticipates that it will be unable to complete its Schedules and Statements within the time required under Bankruptcy Rule 1007.

26.     Moreover, the Debtor respectfully submit that focusing the attention of the remaining employees on maximizing value through this liquidation process during the critical first weeks after filing this Chapter 11 Case, rather than on preparing its Schedules and Statements, will facilitate the Debtor's smooth transition into Chapter 11 and maximize the value of the Debtor's estate for the benefit of creditors and all parties in interest.  Accordingly, the Debtor seeks an additional thirty (30) days by which to file its Schedules and Statements with the Court.

## RELIEF REQUESTED

27. By this Motion, the Debtor respectfully request entry of an Order extending the Debtor's deadline to file its Schedules and Statements from March 31, 2022 to, and through, May 2, 2022, without prejudice to its right to request additional time should it become necessary.

## BASIS FOR RELIEF

28. Section 521(a) of the Bankruptcy Code and Bankruptcy Rule 1007(c) require that a debtor file its schedules of assets and liabilities and its statement of financial affairs with the Court within 14-days of filing a Chapter 11 petition. Under Bankruptcy Rule 1007(c), the Court, for cause shown, may enlarge the period prescribed to file the Debtor's Schedules and Statements.

29. Sufficient cause exist to extend, by an additional thirty (30) days, the Debtor's time to file its Schedules and Statements. While the Debtor has commenced the task of gathering the necessary information that will enable it to finalize its Schedules and Statements, the nature and scope of the Debtor's business requires extensive review of voluminous records and intricate accounting systems.

30. The Debtor also has limited staff available to perform the required internal review of such financial records and affairs. Thus, the scope of the Debtor's business, the limited staff available to perform the required preparation activities, the numerous critical matters that the remaining employees must address in the early weeks of the Chapter 11 Case, the pressures incident to the commencement of the Chapter 11 Case, provide ample cause, if not necessitate, an additional thirty (30) days to file its Schedules and Statements.

31. In addition, preparing and finalizing its Schedules and Statements within the next month will unnecessarily distract the remaining employees and the Debtor's professionals' attention from focusing on asset marshalling and liquidation and ensuring the Debtor's smooth transition into Chapter 11 during a sensitive time. Moreover, the proposed extension of the filing

9

62552713;5

deadline will not prejudice creditors and other parties-in-interest because the Debtor will work with any statutory committee appointed in the Chapter 11 Case to make available sufficient financial data.

32. For the foregoing reasons, the Debtor respectfully requests that the Court grant an additional thirty (30) days to file the Debtor's Schedules and Statements.

## NO PREVIOUS REQUEST

33. No prior motion for the relief requested herein has been made by the Debtor to this or any other court.

## NOTICE

34. Notice of this Motion has been or will be provided to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Internal Revenue Service; (d) the parties listed in the list of twenty (20) largest unsecured creditors filed by the Debtor in this Chapter 11 Case; and (e) counsel to Legalist DIP GP, LLC. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, for the reasons set forth above and in the First Day Declaration, the Debtor respectfully requests that the Court enter the Order substantially in the form attached hereto as **Exhibit A** extending the time within which the Debtor must file its Schedules and Statements by an additional thirty (30) days to, and through, May 2, 2022, without prejudice to the Debtor's right to seek further extensions.

Dated: New York, New York
   March 17, 2022

        AKERMAN LLP

        By: */s/Mark Lichtenstein*
          Mark S. Lichtenstein
          AKERMAN LLP
          1251 Avenue of The Americas, 37th Floor
          New York, New York 10020
          Tel. No. (212) 880-3800
          Fax No. (212) 880-8965
          E-Mail: mark.lichtenstein@akerman.com

          -and-

        John H. Thompson
        AKERMAN LLP
        750 Ninth Street, N.W., Suite 750
        Washington D.C. 2001
        Tel.: (202) 393-6222
        Fax: (202) 393-5959
        E-Mail: john.thompson@akerman.com

        *Proposed Counsel for Debtor and Debtor-in Possession*

# EXHIBIT A

# PROPOSED ORDER

1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ) | Case No. 22-10328 (MEW) |
| BUYK CORP.¹ ) | |
| ) | |
| Debtor. ) | |

**ORDER GRANTING DEBTOR'S MOTION FOR ENTRY
OF AN ORDER GRANTING AN EXTENSION OF TIME
TO FILE SCHEDULES AND STATEMENTS**

UPON the *Debtor's Motion For Entry of an Order Granting an Extension of Time to File Schedules and Statements* (the "Motion") [ECF No. ____], by which Buyk Corp., the debtor and debtor-in-possession herein (the "Debtor"), seeks entry of an order extending the fourteen (14)-day period to file its (i) schedules of assets and liabilities; (ii) schedules of executory contracts and unexpired leases; and (iii) statement of financial affairs (collectively, the "Schedules and Statements"); and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given and such notice having been adequate and appropriate under the circumstances and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and no objections having been filed to the Motion; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and upon the First Day Declaration filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set

---

¹ The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

2

forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and good and sufficient cause appearing therefor,

    IT IS HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein.

2.     The time by which the Debtor shall file its Schedules and Statements is extended for an additional thirty (30) days, through and including May 2, 2022, without prejudice to the Debtor's right to seek further extensions upon a showing of cause therefor.

3.     The Debtor is authorized to take all action necessary to effectuate the relief granted in this Order.

4.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: New York, New York
       March \_\_\_, 2022

                                               **PROPOSED**

                                          _____
                                          UNITED STATES BANKRUPTCY COURT