**HEARING DATE AND TIME: MARCH 18, 2022 AT 4:30 P.M.**

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of The Americas, 37th Floor
New York, New York 10020
Tel. No. (212) 880-3800
Fax No. (212) 880-8965

John H. Thompson
AKERMAN LLP
750 Ninth Street, N.W., Suite 750
Washington D.C. 20001
Tel.: (202) 393-6222
Fax: (202) 393-5959

*Proposed Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUYK CORP.[1] | ) | Case No. 22-10328 (MEW) |
| | ) | |
| Debtor. | ) | **RELATED DOC. NO. 16** |
| | ) | |

## NOTICE OF TELEPHONIC HEARING TO CONSIDER DEBTOR'S EMERGENCY MOTION TO (I) APPROVE ASSET SALE VIA AUCTION; AND (II) SELL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

**PLEASE TAKE FURTHER NOTICE** that a telephonic hearing (the "Hearing") to consider the *Debtor's Emergency Motion to (I) Approve Asset Sale via Auction; and (II) Sell Property Free and Clear of All Liens, Claims, and Encumbrances* attached hereto as **Exhibit A** the "Motion") [ECF No. 16] has been scheduled by the Court for **March 18, 2022 at 4:30 p.m. (prevailing Eastern Time),** before the Honorable Michael E. Wiles, United States Bankruptcy Judge, in Room 617 of the United States Bankruptcy Court, One Bowling Green, New York, NY 10004.

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

62673689;1

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("General Order M-543"), the Hearing will be conducted telephonically. Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Bankruptcy Court's guidelines for telephonic appearances[2] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and all pleadings and other papers filed in these chapter 11 cases may be obtained by (i) accessing the Court's website at www.nysb.uscourts.gov, or (ii) contacting the Office of the Clerk of the Court at One Bowling Green, New York, New York 10004.  Note that a PACER password is needed to access documents on the Court's website.

**PLEASE TAKE FURTHER NOTICE that _your rights may be affected_.  You should read the Motion carefully and discuss it with your attorney, if you have one in connection with the chapter 11 case.  (If you do not have an attorney, you may wish to consult with one).**

**PLEASE TAKE FURTHER NOTICE** that if you do not want the Court to grant the relief requested in the Motion, or if you want the Court to consider your views on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter orders granting the relief requested in the First Day Pleadings.

---

[2] The Bankruptcy Court's procedure for telephonic appearances is available at: http://www.nysb.uscourts.gov/general-orders-and-guidance-created-covid-19

62673689;1

Dated: New York, New York
       March 18, 2022

AKERMAN LLP

By:    */s/Mark Lichtenstein*
       Mark S. Lichtenstein
       AKERMAN LLP
       1251 Avenue of The Americas, 37th Floor
       New York, New York 10020
       Tel. No. (212) 880-3800
       Fax No. (212) 880-8965
       E-Mail: mark.lichtenstein@akerman.com

       -and-

       John H. Thompson
       AKERMAN LLP
       750 Ninth Street, N.W., Suite 750
       Washington D.C. 20001
       Tel.: (202) 393-6222
       Fax: (202) 393-5959
       E-Mail: john.thompson@akerman.com

       *Proposed Counsel for Debtor and Debtor-in Possession*

# EXHIBIT A

# MOTION

62673689;1

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of The Americas, 37th Floor
New York, New York 10020
Tel. No. (212) 880-3800
Fax No. (212) 880-8965

John H. Thompson
AKERMAN LLP
750 Ninth Street, N.W., Suite 750
Washington D.C. 20001
Tel.: (202) 393-6222
Fax: (202) 393-5959

*Proposed Counsel to the Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUYK CORP.[1] | ) | Case No. 22-10328 (MEW) |
| | ) | |
| Debtor. | ) | |

### DEBTOR'S EMERGENCY MOTION TO (I) APPROVE ASSET SALE VIA AUCTION; AND (II) SELL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

Buyk Corp. (the "Debtor") debtor and debtor-in-possession in the above-captioned Chapter 11 case, by and through undersigned counsel, hereby files this Emergency Motion pursuant to 11 U.S.C. §§ 105 and 363, Federal Rule of Bankruptcy Procedure 6003, and Local Rule of Bankruptcy Procedure 6004 for authority to (i) implement emergency liquidation sale procedures, and (ii) sell substantially all of the property of the Debtor free and clear of all liens, claims, and encumbrances. In support of this Motion, the Debtor submits the *Affidavit of James Walker Pursuant to Local Bankruptcy Rule 1007-2 And In Support of First Day Motions and Applications* (the "First Day Declaration"), and states as follows:

### BASIS FOR EMERGENCY CONSIDERATION

1.      The Debtor, prepetition, operated as a 15- minute grocery delivery service with 39 locations in the New York metropolitan area (31 locations) and the Chicago metropolitan area (8

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

locations). The Debtor's assets, mostly equipment and perishable food products, are scattered across these locations. If the Debtor is not able to sell its assets quickly before April 1, 2022, it will not be able to vacate those locations and the administrative rent expenses of the estate will quickly become untenable and will outweigh the benefits of selling the equipment over a longer period. This economic pressure is most acute with respect to the sale of refrigeration equipment located in the actual store locations, where the net sales proceeds of relatively new equipment with an aggregate book value of $3.5 million will be severely diminished by the incurrence of all or a portion of administrative rent in April 2022. The financial analysis is somewhat different when considering the sale duration of brand new, unused refrigeration equipment located in several warehouses with a book value of approximately $750,000. There, the Debtor may opt to conduct the sale process into April 2022.

2.      Given the intense financial distress facing the Debtor and the existence of certain perishable inventory, the debtor, on a pre-petition basis, retained two (2) auctioneers and conducted a few auctions of inventory and equipment prior to the petition date. At present, one of the auctioneers has scheduled an auction of the contents of 2 stores in Brooklyn, New York for Saturday, March 19, 2022 and is seeking authority to proceed with that auction in the best interests of the Debtor and its estate. Indeed, the Debtor's largest creditor—its pre-petition and proposed debtor-in-possession—has been advised of the Debtor's chosen approach both pre and post-petition—and is supportive of such process and has no interest in exercising its credit bid rights.

3.      Although unorthodox, in light of the impending administrative rent for April 2022 the Debtor seeks emergency relief that will allow the Debtor's retained auctioneers to conduct auctions and sales of the Debtor's assets, at each Debtor location, without the extensive reporting requirements and strict compliance with Local Rule 6004. The Debtor is asking the Court for some

2

flexibility in the sale process, as the assets of the Debtor, while together valuable, are not on a per item basis valuable enough so as to justify the Debtor's strict compliance with Local Rule 6004.

4.      The Debtor respectfully requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtor believes an immediate and orderly transition into chapter 11 is critical to the viability of any recovery and that any delay in granting the relief requested could hinder the Debtor's liquidation efforts and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 14 days of this Chapter 11 Case would severely imperil the Debtor's efforts to maximize recovery for creditors. Specifically, if the Debtor is unable to sell the inventory, furniture, fixtures and equipment described herein on an expedited basis, rent will continue to accrue at the related premises, and any benefit to the estate from sales of these assets will be substantially diminished, if not completely negated, by the accruing rent. Additionally, the inventory includes perishable goods and other expiring items, so any delay in selling these items will result in a total loss. Accordingly, the Debtor submits it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully requests that the Court approve the relief requested in this Motion on an emergency basis.

## JURISDICTION AND PROCEDURAL BACKGROUND

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3

62665965;2

## BACKGROUND

7.      The Debtor intends to proceed as expeditiously as permitted through its Chapter 11 case for the purposes of effecting a sale of substantially all of its assets subject to higher and better offers in an auction process approved by the Court.

8.      Prior to this bankruptcy filing, the Debtor operated an ultra-high speed grocery business with 39 locations, 31 in the New York metropolitan area and 8 in the Chicago metropolitan area.  The Debtor commenced operations in April of 2021.  After an initial seed round of investment by Russian-based investors in the amount of approximately $63.5 million in convertible notes and $11 million in unsecured loans, in or about January 2022, the Debtor was in the process of a seeking additional equity investment of approximately $250,000,000.  Due to the mounting indicia of a potential Russian dispute with Ukraine, the Debtor determined in January 2022 to pivot to a United States-based equity raise and actively sought series A funding from numerous institutional investors.  The United States fund raising was going reasonably well when Russia commenced its invasion of Ukraine.  At that juncture, the Debtor was confronted with an existential and, ultimately, fatal crisis.  First, any chance of obtaining equity or debt investment from the prominent institutional investors which had been interested in funding the Debtor was now lost.  Second, although the Debtor was operating and earning revenue, it was in the beginning stages of its growth and was relying, in part, on cash infusions by the founders to continue its operations and expansion.  Unfortunately, although the founders were not, and are not, subject to any sanctions, restrictions on the ability to transfer any funds out of Russia made it impossible for the founders to provide any further funding to the Debtor.

9.      Since February 28, 2022, working together with its management team, the Debtor pursued an asset or stock sale to a variety of entities in a similar or adjacent business as the Debtor

or a rescue loan /equity investment.  In light of the monthly deficiency between income and expenses, an impending payroll due on March 11, 2022, and other pressing obligations to creditors, plus the negative impact of the Russia/Ukraine crisis on investor interest, the Debtor began seeking a loan from several potential debtor-in-possession ("DIP") lenders in order to fund final payroll to Debtor's employees and independent contractors in the amount of approximately 800 and an orderly liquidation in the context of bankruptcy.  In the exercise of its fiduciary duties to all stakeholders it became apparent that the only viable and realistic strategic alternative for the Debtor was to obtain a short term bridge loan secured by all of the Debtor's assets, including unencumbered brand new (and almost new) refrigeration and other food storage equipment with a book value of approximately $11 million, grocery items (including 20% perishable items) with a book value of $1.7 million, and cash of approximately $700,000, in a sufficient amount to fund all outstanding payroll expense and an expedited sale process in bankruptcy.  The goal, of course, is to maximize the value of these assets in bankruptcy in order to repay the DIP Lender, administrative and priority claims and to, if possible, provide some level of distribution to unsecured creditors.

10.     After having discussions with over thirty (30) potential funding sources, including multiple potential DIP lenders, on March 10, 2022, the Debtor entered into a Term Sheet with Legalist for a debtor-in-possession loan commitment of $6.5 million (the "DIP Loan").

11.     On March 4, 2022, the Debtor furloughed approximately 98% of all employees. On March 11, 2022, the Debtor terminated the employment of all of its employees, except for six staff members who the Debtor proposes to continue to employ post-petition to assist in the orderly winddown in this liquidating Chapter 11.[2]  On March 11, 2022, Legalist and the Debtor executed

---

[2] On March 11, 2022, the Debtor provided WARN Notices to all terminated employees.

62665965;2

that certain Pre-Petition Term Loan Credit Agreement in the maximum amount of $6.5 million (the "Credit Agreement")[3] which provided for two separate draws:  (i) $4 million on March 11, 2022 for the sole purpose of satisfying all payroll obligations for the Debtor's terminated employees and, (ii) up to $2.5 million to be drawn post-petition pursuant to a budget approved by the Court as part of Court approval of the DIP Loan and the funds borrowed both pre and post-petition.

12.     The purpose of the post-petition availability under the DIP Loan is to fund an expedited and efficient sale process of the Debtor's assets.  In light of the existence of perishable inventory and the desperate need to avoid administrative rents starting in April 2022[4], the Debtor retained certain auctioneers pre-petition with the intent to seek Court approval of the retention of such auctioneers and the sale process.

13.     The Debtor's goal is to complete the sale process within sixty (60) days of the Petition Date and to then seek confirmation of a plan of liquidation to distribute the remaining sale proceeds after satisfaction of the DIP Loan.  The Debtor has sufficient funds and anticipated revenues from prospective asset sales to operate in liquidation mode through, at least, the first 13 weeks of these Chapter 11 cases, as reflected in the budget (the "Budget").

14.     The Debtor's entry into the DIP Loan and the sale of all assets is the best result for all stakeholders under incredibly difficult and unforeseeable circumstances.  For the Debtor's former employees, the DIP Loan allowed them to be paid their wages in full.  For the rest of the Debtor's stakeholders, the DIP Loan, commencement of this case, and the contemplated sale

---

[3] The Pre-Petition Term Loan Credit Agreement was superseded by the Amended and Restated DIP Agreement executed on March 17, 2022.

[4] Many of the Debtor's leases are current through March 2022.

process will enable the Debtor to maximize the value of its assets in the hope of satisfying creditor claims in order of priority.

## BUSINESS OF THE DEBTOR

15.     In April 2021, the Debtor made its debut with the launch of a 15-minute grocery delivery service in New York City. In November 2021, the Debtor expanded into the Chicago market.

16.     The Debtor offered grocery items, along with household essentials, personal care and pet supplies, relying on couriers on bicycles to deliver the orders.

17.     The Debtor, which was backed by $63.5 million in seed funding, was the latest entrant to the competitive field of ultrafast delivery firms cropping up in major metropolitan areas including New York.  One of the Debtor's differentiating factors from its competitors was its real-time, in-house technology.  For example, the Debtor, which had an order weight maximum of 26 pounds for each courier, had the ability to split larger orders up between multiple couriers if needed. Its technology allowed the Debtor to fulfill orders within two minutes and then deliver them in between five and 10 minutes.

18.     The Debtor relied on a mix of contractors and its own workforce and had more than 600 couriers and over 100 office workers.  In addition to leveraging efficiencies from its technologies, the Debtor attempted to earn revenue from the margins on its products and used the money saved by renting small locations not needed to be in prime spots for foot traffic to invest in employee costs. The Debtor's business plan also included an initiative to launch private label offerings with more than 100 SKUs in categories, such as meat and pasta.

19.     As of February 24, 2022, the Debtor had 39 stores that serve the New York and the Chicago metropolitan areas (31 in New York and 8 in Chicago), each with 2,000 to 3,000 SKUs.

62665965;2

20.     As noted above, the Debtor had been relying upon cash infusions by its original investors to continue to operate and expand while simultaneously seeking a new round of equity financing.  Prior to closing its business, the Debtor's plan was to open another 100 stores in 2022.  Due to the invasion of Ukraine, the Debtor was unable to execute on its planned equity raise, despite its intensive efforts to raise rescue capital.  With relatively little cash on hand in February 2022 and payroll coming due, the Debtor's Board of Directors, in consultation with its managers and retained advisors, determined to ultimately terminate virtually all of its employees and obtain a relatively small DIP Loan to fund a liquidating Chapter 11 case.

21.     On March 11, 2022, the Debtor enter into the Credit Agreement to borrow up to $6.5 million from Legalist with $4 million of such commitment already distributed by the Debtor on account of the wages due to all employees whose employment was terminated on March 11, 2022.

22.     As previously stated, Legalist and the Debtor agreed in the Credit Agreement that the Debtor was required to file a bankruptcy case on March 15, 2022 (with a two-business day grace period).

**CHAPTER 11**

23.     On March 17, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  As a result of the Ukrainian crisis and the Debtor's attendant inability to receive funding from its initial investors and/or any other parties in a sufficient amount to continue to operate as a going concern while seeking a comprehensive capital raise or a merger or sale transaction, the Debtor's fiduciaries determined to cause the Debtor to commence this Chapter 11 case in order to effectuate an orderly sale of its assets.

## CORPORATE STRUCTURE

24.     As set forth in the Declaration of James Walker in Support Of First Day Motions which has been filed contemporaneously herewith Rodion Shishkov and Viacheslav Bocharov, each own 46.55% of the Debtor.  The remaining 6.9% of the Debtor is owned by Kirill Shishkov. Prior to the financial distress described above, the Debtor formed a German wholly-owned subsidiary named BUYK GmBH.  That entity has no assets, liabilities and operations and has little if any value.  In the Debtor's estimation it is highly unlikely that any part of the funds realized from the sales of the Debtor's assets will be distributed to equity holders under a liquidating plan or otherwise.

## CAPITAL STRUCTURE AND PREPETITION INDEBTEDNESS

25.     The Debtor's principal pre-petition secured lender is Legalist whose secured debt against the Debtor is in the amount of $4,000,000 as of the Petition Date.  Legalist has a blanket lien on all of the Debtor's assets.  Legalist has committed to funding up to an additional $2.5 million to fund the Chapter 11 case.  The Debtor has no other secured creditors.

26.     The Debtor is also a borrower under certain unsecured convertible notes in the aggregate amount of $63.5 million during the period from June-December 2021(the "Convertible Notes").  In addition to the secured debt to Legalist and the Convertible Note debt, the Debtor has approximately $18 million in unsecured debt.  Finally, the Debtor anticipates significant claims arising from the rejection of its leases (although as part of the sale process).

## RELIEF REQUESTED

27.     Through this Motion, the Debtor respectfully requests authority to sell by auctions and sales conducted by the auctioneers:  (i) all furniture and equipment (the "Equipment") located in the 39 stores, (ii) all inventory ("Inventory") located in the 39 stores, and (iii) the equipment located in the warehouses at the previously-closed locations set forth in **Exhibit A** hereto, free and

9

clear of all liens, claims, and encumbrances, pursuant to 11 U.S.C. § 363. The Debtor is not seeking to sell any customer lists or any customer information so as to necessitate the appointment of a consumer privacy ombudsman pursuant to Section 332 of the Bankruptcy Code.

28.     Certain valuable Equipment and Inventory remains at certain of the stores identified in **Exhibit B** attached hereto (the "Stores"), however, April rent for the Stores will be due in the approximate amount of $580,000 (in the aggregate).  If the Equipment is not sold on an expedited basis, the already deteriorating value of the Equipment will be further offset by the accruing rent. Further, if the Inventory is not sold quickly, any value for the perishable grocery items will be lost. The total sales are estimated to bring roughly $5,500,000 to $5,800,000 in gross proceeds.

29.     Prepetition, the Debtor retained two auctioneers, who initiated the process of marketing the Equipment and Inventory at the Stores (in particular the perishable and expiring items).  The Debtor seeks to retain a third Auctioneer[5] post-petition due to the logistical limitations and manpower required to hold auctions at all the Debtor's Stores.  The Debtor's managers interviewed over 20 auctioneers prior to the petition date both New York and Chicago based.  It became clear that the "market" commission for selling this sort of equipment on such an expedited basis via in-store sales is 15%.  Indeed, every auctioneer with which the Debtor had meaningful discussions sought a 15% commissions and, in some instances, reimbursement for costs incurred in connection with the sales.  Accordingly, the Debtor respectfully requests that the Court allow the Debtor retain auctioneers for a greater commission than the statutory tiers included in Local Rule 6004.

30.     The agreements with the auctioneers, in part, require that the auctions be completed by March 31, 2022. The Auctioneers will also be providing the following services which comply,

---

[5] The Debtor intends to submit applications for retention of each of the Auctioneers as soon as possible.

62665965;2

for the most part, with Bankruptcy Rule 6004, Local Rule 6004-1, and the Courts guidelines for

the sale/auction of property of the estate:

a) Inventory the Debtor's assets, prepare auction lots, and tag them for sale.
b) Conduct a live on-site auction sale, and /or an internet sale with selected items to be listed on-line.
c) Process sales from auction, invoice and collect proceeds from sale.
d) Assist and supervise removal of contents sold.
e) Market and advertise the sale utilizing a multifaceted approach including:
    i. Newspaper advertising including NY / NJ newspapers and other local and/or trade publications as deemed necessary.
    ii. Internet presence including bestbuyauctioneers.com website, with email marketing to our database of 10,000 + auction buyers.
    iii. AuctionZip.com advertising, including auction listing marketed to their million plus users.
    iv. State of the art text messaging to recent auction attendees and other interested "opt-in" buyers.

31. The Debtor's retained Auctioneers will further file a Report of Sale pursuant to

Local Rule 6004-1(f) and the Affidavit accompanying the Report of Sale pursuant to Local Rule

6004-1(f). The sale of substantially all of the Debtor's equipment has to take place before April 1,

2022. Given the short deadline for the auctions to be completed, to the extent the auctioneers do

not strictly comply with Bankruptcy Rules 6004 and 6005 and Local Rules 6004-1 and 6005-1,

the Debtor would ask that the Court exempt the Debtor with the strict compliance with those

requirements. Debtor submits this is an emergency situation, and thus respectfully requests a

degree of flexibility due to the numerous locations and urgency of timing. Additionally, such

flexibility will allow the Debtor to maximize the recovery on its assets in light of the perishable

nature of its Inventory and the need to move the Equipment quickly from the Stores to avoid

incurring excessive administrative expenses in this case. To that end, one of the auctioneers has

scheduled an auction of the contents of two (2) stores in Brooklyn, New York for Saturday, March

19, 2022 and for two (2) stores in Bronx, New York for Monday, March 21, 2022. The equipment

in each store is valued between $20,000 and $40,000, and the Inventory, comprised of dried goods

and perishable items, has an aggregate value of approximately $6,000 (with perishable items

representing 20% of that number). The Debtor respectfully requests authority to proceed with

those auctions, which had been scheduled and advertised prior to the bankruptcy filing, in the best

interests of the Debtor and its estate.

## SALE OF EQUIPMENT AND INVENTORY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

32.     The Debtor intends to sell the Equipment and Inventory by auction, free and clear

of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f).

33.     Section 363 of the Bankruptcy Code provides in relevant part that a trustee (or

debtor-in-possession) may sell property of the estate free and clear of the interest of any entity if

> (1) applicable nonbankruptcy law permits sale of such property free
> and clear of such interest; (2) such entity consents; (3) such interest
> is a lien and the price at which such property is to be sold is greater
> than the aggregate value of all liens on such property; (4) such
> interest is in bona fide dispute; or (5) such entity could be compelled,
> in a legal or equitable proceeding, to accept a money satisfaction of
> such interest.

*See* 11 U.S.C. § 363(f).

34.     The Debtor anticipates the sales of the Equipment and Inventory will result in net

proceeds to the bankruptcy estate of between $5,500,000 and $5,800,000.

35.     The only known lienholder to the Equipment and Inventory, the DIP Lender,

supports the Debtor's request to quickly sell substantially all of the Debtor's assets and their

collateral pursuant to auctions held by the Debtor's retained Auctioneers as requested in this

Motion.

36.     Accordingly, the Debtor believes relief under 11 U.S.C. § 363(f) is appropriate, and requests authority to sell the Equipment and Inventory by auctions scheduled and held by the Debtor's retained Auctioneers, free and clear of all liens, claims, and encumbrances.

## ANCILLARY RELIEF REQUESTED

37.     The Debtor further requests that (i) any restrictions under the applicable leases on the sale and procedures proposed herein be deemed waived; (ii) any order granting this Motion not impact or prejudice the affected landlords' rights to file claims, of any nature, in this Chapter 11 Case; and (iii) any order granting this Motion not impact or prejudice the bankruptcy estate's rights and remedies related to those landlords' claims.

38.     Based on the foregoing, the Debtor submits the relief requested is necessary and appropriate, is in the best interests of the estate and creditors, and should be granted.

## THE REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

39.     The Debtor submits the facts cited herein illustrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate. Based on the foregoing, Bankruptcy Rule 6003 has been satisfied.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

40.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

41.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief

62665965;2

sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently. Finally, the relief requested herein shall not oblige the Debtor to accept any services, to accept the shipment of goods, or prevent the Debtor's from returning or rejecting goods.

## **NOTICE**

42.     The Debtor has or will provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Internal Revenue Service; (d) the parties listed in the list of twenty (20) largest unsecured creditors filed by the Debtor in this Chapter 11 Case; (e) counsel to Legalist DIP GP, LLC; and (f) all parties on the creditor matrix. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE the Debtor respectfully requests that the Court enter an Order attached hereto as **Exhibit C** granting the Motion and authorizing the Debtor to (i) sell substantially all of the Debtor's assets by auction, free and clear of all liens, claims, and encumbrances, and (ii) grant such other and further relief as it deems just and proper.

Dated: New York, New York
      March 18, 2022

                      AKERMAN LLP

                      By:   */s/Mark Lichtenstein*
                          Mark S. Lichtenstein
                          1251 Avenue of The Americas, 37th Floor
                          New York, New York 10020
                          Tel. No. (212) 880-3800
                          Fax No. (212) 880-8965
                          E-Mail: mark.lichtenstein@akerman.com

-and-

John H. Thompson
AKERMAN LLP
750 Ninth Street, N.W., Suite 750
Washington D.C. 20001
Tel.: (202) 393-6222
Fax: (202) 393-5959
E-Mail: john.thompson@akerman.com

*Counsel for Debtor and Debtor-in-Possession*

15

# EXHIBIT  A

# LIST OF EQUIPMENT

| Asset | Info | Warehouse | In Transit | Stores | Balance Owed* |
|---|---|---|---|---|---|
| Table | 47" | 205 | 0 | 117 | 0 |
| Computer Chair | | 227 | 0 | 78 | 0 |
| Step Stool | | 132 | 0 | 39 | 0 |
| Coat Racks | | 113 | 0 | 117 | 0 |
| Document Cabinet | | 184 | 0 | 78 | 0 |
| Container / Pick Bin | | 11038 | 0 | 4680 | 0 |
| Carts | | 725 | 0 | 156 | 0 |
| Sitting Stools | | 153 | 0 | 195 | 0 |
| Server Racks | | 6 | 0 | 2 | 0 |
| Reflector Safety Vests | | 130 | 0 | 0 | 0 |
| Hand Trucks | | 0 | 50 | 22 | 0 |
| 96 Gallon Garbage Can | | 396 | 0 | 156 | 0 |
| Microwave | | 96 | 0 | 39 | 0 |
| 18 X 36 X 86 7 tier | | 299 | 0 | 117 | 0 |
| 18 X 48 X 86 7 tier | | 5277 | 0 | 2145 | 0 |
| 18 X 60 X 86 7 tier | | 149 | 0 | 39 | 0 |
| 18 X 48 X 84 Wood/steel | | | 0 | 117 | 0 |
| 18 X 36 X 84 Wood/steel | | 657 | 0 | 63 | 0 |
| 2-Door Refrigerator (MVP LX-46RB) | MVP LX-46RB | 1684 | 0 | 266 | 122 |
| 2-Door Refrigerator (Blue Air BKGM48SL) | Blue Air BKGM48SL | 0 | 0 | 10 | 0 |
| 2-Door Refrigerator (MVP KSM-36) | MVP KSM-36 | 0 | 0 | 16 | 0 |
| 2-Door Refrigerator (MVP KSM-42) | MVP KSM-42 | 0 | 0 | 35 | 0 |
| 2-Door Refrigerator (MVP KGM-42) | MVP KGM-42 | 0 | 0 | 23 | 0 |
| 2-Door Refrigerator (MVP KSM-50) | MVP KSM-50 | 0 | 0 | 14 | 0 |
| 2-Door Refrigerator (True GDM-49-HC) | True GDM-49-HC | 0 | 0 | 182 | 0 |
| Chest Freezer (Excellence VB6-HC) | Excellence VB6-HC | 82 | 0 | 38 | 400 |

16

| Asset | Info | Warehouse | In Transit | Stores | Balance Owed* |
|---|---|---|---|---|---|
| Chest Freezer (Excellence VB7-HC) | Excellence VB7-HC | 16 | 0 | 84 | 360 |
| Chest Freezer (Excellence HL-20HC) | Excellence HL-20HC | 40 | 0 | 0 | 20 |
| Chest Freezer (Excellence HB-17HC) | Excellence HB-17HC | 28 | 0 | 0 | 68 |
| Chest Freezer (Excellence HB20) | Excellence HB20 | 2 | 7 | 130 | 48 |
| Chest Freezer (Excellence HR-18) | Excellence HR-18 | 0 | 0 | 32 | 0 |
| Chest Freezer (Excellence HR-21) | Excellence HR-21 | 0 | 0 | 12 | 0 |
| Chest Freezer (Large, Novum Dubliner, dual temp) | Large, Novum Dubliner, dual temp | 30 | 0 | 70 | 0 |
| Chest Freezer (Large, Novum Grand Caymans, dual temp) | Large, Novum Grand Caymans, dual temp | 156 | 0 | 0 | 0 |
| Cabinet Freezer (MVP KBSF-2) | MVP KBSF-2 | 129 | 0 | 19 | 0 |
| Cabinet Freezer (MVP LX-46FB) | MVP LX-46FB | 4 | 0 | 0 | 0 |
| Cabinet Freezer (Blue Air BSF49T-HC) | Blue Air BSF49T-HC | 0 | 0 | 7 | 0 |
| Cabinet Freezer (True T-49F-HC) | True T-49F-HC | 0 | 0 | 13 | 0 |

# EXHIBIT B

## LIST OF STORES WITH CERTAIN
## VALUABLE EQUIPMENT AND INVENTORY

| |
|---|
| 62-41 Forest Avenue, Queens, New York |
| 83 3 Ave, Brooklyn, New York |
| 1454 Rockaway Parkway, Brooklyn, New York |
| 1860 North Milwaukee Avenue, Chicago |
| 1620 Fulton Street, Brooklyn, New York |
| 150 West 26th Street, Manhattan, New York |
| 221-06 Merrick Boulevard, Queens, New York |
| 5020 Avenue N, Brooklyn, New York |
| 72 West Brighton Avenue, Brooklyn, New York |
| 29-28 41 Ave, Queens, New York |
| 1938 Coney Island Avenue, Brooklyn, New York |
| 4838 South Cicero Avenue, Chicago |
| 10411 Northern Boulevard, Queens, New York |
| 869 Myrtle Ave, Brooklyn, New York |
| 5216 5th Avenue, Brooklyn, New York |
| 3808 Nostrand Avenue, Brooklyn, New York |
| 635 4th Avenue, Brooklyn, New York |
| 1805 Church Avenue, Brooklyn, New York |
| 2774 North Milwaukee Avenue, Chicago |
| 83 Gardner Avenue, Brooklyn, New York |
| 976 Amsterdam Avenue, Manhattan, New York |
| 2721 Bronxwood Avenue, Bronx, New York |
| 4819 West Irving Park Road, Chicago |
| 2717 North Clark Street, Chicago |
| 308 E 204 St, Bronx, New York |
| 610 Exterior Street, Bronx, New York |
| 356 Broadway, Manhattan, New York |
| 2408 Hoffman Street, Bronx, New York |
| 8904 5th Avenue, Brooklyn, New York |
| 28-16 21st Street, Queens, New York |
| 315 West 35th Street, Manhattan, New York |
| 2121 North Clybourn Avenue, Chicago |
| 113 3rd Avenue, Manhattan, New York |
| 178 Delancey Street, Manhattan, New York |
| 47 East 34th Street, Manhattan, New York |
| 3545 West Armitage Avenue, Chicago |

| |
|---|
| 5 West 125th Street, Manhattan, New York |
| 190 West 231st Street, Bronx, New York |
| 2269 1st Avenue, Manhattan, New York |
| 1956 West Lawrence Avenue, Chicago |
| 10702 Queens Boulevard, Queens, New York |
| 1695 1st Avenue, Manhattan, New York |
| 524 Vandalia Avenue, Brooklyn, New York |
| 1800 South Cicero Avenue, Cicero |

# EXHIBIT C


# PROPOSED ORDER

62665965;2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUYK CORP.[1] | ) | Case No. 22-10328 (MEW) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER GRANTING DEBTOR'S EMERGENCY MOTION TO (I) APPROVE ASSET SALE VIA AUCTION; AND (II) SELL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

Upon Buyk Corp.'s (the "Debtor"), debtor and debtor-in-possession in the above-captioned Chapter 11 case, Emergency Motion [ECF No. ___] pursuant to 11 U.S.C. §§105 and 363, Federal Rule of Bankruptcy Procedure 6003, and Local Rule of Bankruptcy Procedure 6004 for authority to (i) implement emergency liquidation sale procedures, and (ii) sell substantially all of the property of the Debtor free and clear of all liens, claims, and encumbrances (the "Motion"), the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012; and this proceeding being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that notice of the Motion as set forth therein is sufficient under the circumstances, and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is in the best interests of the Debtor's estate, creditors, and other parties-in-interest; and upon all of the proceedings had before the Court; and after due deliberation and cause appearing;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

2.      The Debtor, through its authorized and retained auctioneers,  is permitted to conduct auctions of the Debtor's Equipment[2] and Inventory (as identified in **Exhibit A** to the Motion) at the various Store locations (as identified in **Exhibit B** to the Motion).

3.      The notice and auction procedures proposed by the Debtor's auctioneers are consistent with Bankruptcy Rule 6004, Local Rule 6004-1, and the Court's Guidelines for Conduct of Asset Sales. To the extent the notice and auction procedures of the retained auctioneers are inconsistent with the relevant rules and guidelines, the Debtor is excused from strict compliance with those rules and guidelines given the emergency nature of the Debtor's chapter 11 filing and need to quickly liquidate in order to preserve estate assets.

4.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, all auction sales of Equipment and Inventory shall be transferred to a buyer free and clear of all liens, claims, encumbrances and interests.

5.      All prepetition liens and claims, to the extent any exist other than the secured interest of the DIP Lender,  against the Equipment and Inventory, shall attach to the sale proceeds the Debtor receives. Those liens and claims will attach to the proceeds of any auction sales authorized pursuant to this Order  in the same order of relative priority and with the same validity, force, and effect that the holder of such lien or claim had against the asset prepetition and will be subject to any claims and defenses the Debtor may possess with respect thereto. The interests of the holders of such liens or claims are being adequately protected pursuant to the provisions of this Order.

6.      The Debtor is authorized to take any additional actions as are necessary or appropriate to implement and effectuate the auctions of the Debtor's Equipment and Inventory.

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

62670214;1

7.     The Debtor may proceed with the auctions of the contents of four (4) stores scheduled prior to the bankruptcy filing on March 19, 2022 and March 21, 2022.

8.     The Motion satisfies Bankruptcy Rules 2002, 6006 and 9014.

9.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
   March __, 2022

**PROPOSED**

_____

**HONORABLE  MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**
