**HEARING DATE AND TIME: APRIL 19, 2022 AT 10:00 A.M. (ET)**
**OBJECTION DEADLINE DATE AND TIME: APRIL 12, 2022 AT 4:00 P.M. (ET)**

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of The Americas, 37th Floor
New York, New York 10020
Tel. No. (212) 880-3800
Fax No. (212) 880-8965

John H. Thompson
AKERMAN LLP
750 Ninth Street, N.W., Suite 750
Washington D.C. 20001
Tel.: (202) 393-6222
Fax: (202) 393-5959

*Proposed Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUYK CORP.[1] | ) | Case No. 22-10328 (MEW) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NOTICE OF TELEPHONIC HEARING ON**
**OMNIBUS MOTION OF DEBTOR PURSUANT TO 11 U.S.C. §§ 105(a) AND 365(a)**
**AND FED. R. BANKR. P. 6006 FOR ENTRY OF AN ORDER**
**AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES**

**PLEASE TAKE NOTICE** that a telephonic hearing on *Omnibus Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 365(a) and Fed. R. Bankr. P. 6006 for Entry of An Order Authorizing Rejection of Certain Unexpired Leases* (the "Motion") will be held on **April 19, 2022 at 10:00 a.m. (ET)** before the Honorable Michael E. Wiles, United States Bankruptcy Judge, or as soon thereafter as counsel may be heard, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 617, New York, NY 10004.

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted telephonically. Parties wishing to appear at, or attend, the Hearing must refer to and comply with

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

the Bankruptcy Court's guidelines for telephonic appearances[2] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** the Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

**PLEASE TAKE FURTHER NOTICE** that any objections, or other responses shall be filed and served no later than **April 12, 2022 at 4:00 p.m. (ET),** must be made in writing, state with particularity the grounds therefore, shall conform to the United States Bankruptcy Rules and the Local Rules of the Bankruptcy Court, include in the upper right hand corner of the caption, the ECF docket number to which the filing relates, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399, and served via e-mail upon Akerman LLP, Proposed Counsel to the Debtor, to Mark S. Lichtenstein mark.lichtenstein @akerman.com and John H. Thompson john.thompson@akerman.com together with proof of service thereof.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing **telephonically** so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court. Failure to appear may result in relief being granted as requested.

**PLEASE TAKE FURTHER NOTICE** that unless responses are received by that time, the relief may be granted as requested.

---

[2] The Bankruptcy Court's procedure for telephonic appearances is available at:
http://www.nysb.uscourts.gov/general-orders-and-guidance-created-covid-19

Dated: New York, New York
March 22, 2022

AKERMAN LLP

By: ___/s/Mark Lichtenstein___
       Mark S. Lichtenstein
       1251 Avenue of The Americas, 37th Floor
       New York, New York 10020
       Tel. No. (212) 880-3800
       Fax No. (212) 880-8965
       E-Mail: mark.lichtenstein@akerman.com

           -and-

       John H. Thompson
       AKERMAN LLP
       750 Ninth Street, N.W., Suite 750
       Washington D.C. 20001
       Tel.: (202) 393-6222
       Fax: (202) 393-5959
       E-Mail: john.thompson@akerman.com

*Proposed Counsel for Debtor and Debtor-in Possession*

**HEARING DATE AND TIME: APRIL 19, 2022 AT 10:00 A.M. (ET)**
**OBJECTION DEADLINE DATE AND TIME: APRIL 12, 2022 AT 4:00 P.M. (ET)**

Mark S. Lichtenstein                          John H. Thompson
AKERMAN LLP                                   AKERMAN LLP
1251 Avenue of The Americas, 37th Floor       750 Ninth Street, N.W., Suite 750
New York, New York 10020                      Washington D.C. 20001
Tel. No. (212) 880-3800                       Tel.: (202) 393-6222
Fax No. (212) 880-8965                        Fax: (202) 393-5959

*Proposed Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUYK CORP.[1] | ) | Case No. 22-10328 (MEW) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**OMNIBUS MOTION OF DEBTOR PURSUANT TO 11 U.S.C. §§ 105(a) AND 365(a)**
**AND FED. R. BANKR. P. 6006 FOR ENTRY OF AN ORDER**
**AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES**

> **THIS MOTION SEEKS TO REJECT CERTAIN UNEXPIRED LEASES. PARTIES RECEIVING THIS OMNIBUS MOTION SHOULD REVIEW IT IN ITS ENTIRETY TO SEE IF THEIR NAME(S) AND/OR LEASE(S) APPEAR IN THE MOTION AND/OR THE ATTACHED EXHIBITS TO DETERMINE WHETHER THE RELIEF REQUESTED AFFECTS THEIR LEASE(S).**

BUYK Corp.  (the "Debtor"), as debtor and debtor-in-possession in the above-captioned

Chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby submits

this motion (the "Motion")  for entry of an Order in the form attached hereto as **Exhibit A** (the

"Proposed Order"), pursuant to 11 U.S.C. §§ 105(a) and 365(a) of title 11 of the United States

Code (the "Bankruptcy Code"), Bankruptcy Rule 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rules 6006-1 and 9006-1(b) of the Local Bankruptcy

Rules for the Southern District of New York (the "Local Rules"), authorizing the Debtor to reject

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

certain unexpired leases in which the Debtor never initiated business operations, which leases are listed and described on the schedule attached hereto as **Exhibit B**  (the "Rejected Unoccupied Lease Schedule"), including any amendments or modifications thereto effective, *nunc pro tunc*, as of March 17, 2022 (the "Petition Date"), and to reject certain unexpired leases, which leases are listed and described on the schedule attached hereto as **Exhibit C** (the "Rejected Occupied Lease Schedule",  together with the "Rejected Unoccupied Lease Schedule," each, a "Rejected Lease" and, collectively, the "Rejected Leases" and the counterparty thereto, the "Lease Counterparty"), including any amendments or modifications, thereto effective as of March 31, 2022, or if the Debtor is unable to vacate the premises by then, when the premises are actually vacated by the Debtor.  The Debtor  respectfully represents as follows in support of this motion (the "Motion"):

## <u>BACKGROUND</u>

1.     The Debtor intends to proceed as expeditiously as permitted through its Chapter 11 case for the purposes of effecting a sale of substantially all of its assets in an auction process approved by the Court.

2.     Prior to this bankruptcy filing, the Debtor operated an ultra-high speed grocery business with 39 locations, 31 in the New York metropolitan area and 8 in the Chicago metropolitan area.  The Debtor commenced operations in April of 2021.  After an initial seed round of investment by Russian-based investors in the amount of approximately $63.5 million in convertible notes and $11 million in unsecured loans, in or about January 2022, the Debtor was in the process of a seeking additional equity investment of approximately $250,000,000.  Due to the mounting indicia of a potential Russian dispute with Ukraine, the Debtor determined in January 2022 to pivot to a United States-based equity raise and actively sought series A funding from numerous institutional investors.  The United States fund raising was going reasonably well

when Russia commenced its invasion of Ukraine.  At that juncture, the Debtor was confronted with an existential and, ultimately, fatal crisis.  First, any chance of obtaining equity or debt investment from the prominent institutional investors which had been interested in funding the Debtor was now lost.  Second, although the Debtor was operating and earning revenue, it was in the beginning stages of its growth and was relying, in part, on cash infusions by the founders to continue its operations and expansion.  Unfortunately, although the founders were not, and are not, subject to any sanctions, restrictions on the ability to transfer any funds out of Russia made it impossible for the founders to provide any further funding to the Debtor.

3.    Since February 28, 2022, working together with its management team, the Debtor pursued an asset or stock sale to a variety of entities in a similar or adjacent business as the Debtor or a rescue loan /equity investment.  In light of the monthly deficiency between income and expenses, an impending payroll due on March 11, 2022, and other pressing obligations to creditors, plus the negative impact of the Russia/Ukraine crisis on investor interest, the Debtor began seeking a loan from several potential debtor-in-possession ("DIP") lenders in order to fund final payroll to Debtor's employees and independent contractors in the amount of approximately 800 and an orderly liquidation in the context of bankruptcy.  In the exercise of its fiduciary duties to all stakeholders it became apparent that the only viable and realistic strategic alternative for the Debtor was to obtain a short term bridge loan secured by all of the Debtor's assets, including unencumbered brand new (and almost new) refrigeration and other food storage equipment with a book value of approximately $11 million, grocery items (including 20% perishable items) with a book value of $1.7 million, and cash of approximately $700,000, in a sufficient amount to fund all outstanding payroll expense and an expedited sale process in bankruptcy.  The goal, of course, is to maximize the value of these assets in bankruptcy in order to repay the DIP Lender,

3

administrative and priority claims and to, if possible, provide some level of distribution to unsecured creditors.

4.    After having discussions with over thirty (30) potential funding sources, including multiple potential DIP lenders, on March 10, 2022, the Debtor entered into a Term Sheet with Legalist for a debtor-in-possession loan commitment of $6.5 million (the "DIP Loan").

5.    On March 4, 2022, the Debtor furloughed approximately 98% of all employees. On March 11, 2022, the Debtor terminated the employment of all of its employees, except for six staff members who the Debtor proposes to continue to employ post-petition to assist in the orderly winddown in this liquidating Chapter 11.[2]  On March 11, 2022, Legalist and the Debtor executed that certain Pre-Petition Term Loan Credit Agreement in the maximum amount of $6.5 million (the "Credit Agreement")[3] which provided for two separate draws:  (i) $4 million on March 11, 2022 for the sole purpose of satisfying all payroll obligations for the Debtor's terminated employees and, (ii) up to $2.5 million to be drawn post-petition pursuant to a budget approved by the Court as part of Court approval of the DIP Loan and the funds borrowed both pre and post-petition.

6.    The purpose of the post-petition availability under the DIP Loan is to fund an expedited and efficient sale process of the Debtor's assets.  In light of the existence of perishable inventory and the desperate need to avoid administrative rents starting in April 2022[4], the Debtor retained certain auctioneers pre-petition with the intent to seek Court approval of the retention of such auctioneers and the sale process.

---

[2] On March 11, 2022, the Debtor provided WARN Notices to all terminated employees.

[3] The Pre-Petition Term Loan Credit Agreement was superseded by the Amended and Restated DIP Agreement executed on March 17, 2022.

[4] Many of the Debtor's leases are current through March 2022.

62637289;3

7.      The Debtor's goal is to complete the sale process within sixty (60) days of the Petition Date and to then seek confirmation of a plan of liquidation to distribute the remaining sale proceeds after satisfaction of the DIP Loan.  The Debtor has sufficient funds and anticipated revenues from prospective asset sales to operate in liquidation mode through, at least, the first 13 weeks of these Chapter 11 cases, as reflected in the budget (the "Budget").

8.      The Debtor's entry into the DIP Loan and the sale of all assets is the best result for all stakeholders under incredibly difficult and unforeseeable circumstances.  For the Debtor's former employees, the DIP Loan allowed them to be paid their wages in full.  For the rest of the Debtor's stakeholders, the DIP Loan, commencement of this case, and the contemplated sale process will enable the Debtor to maximize the value of its assets in the hope of satisfying creditor claims in order of priority.

## BUSINESS OF THE DEBTOR

9.      In April 2021, the Debtor made its debut with the launch of a 15-minute grocery delivery service in New York City. In November 2021, the Debtor expanded into the Chicago market.

10.      The Debtor offered grocery items, along with household essentials, personal care and pet supplies, relying on couriers on bicycles to deliver the orders.

11.      The Debtor, which was backed by $63.5 million in seed funding, was the latest entrant to the competitive field of ultrafast delivery firms cropping up in major metropolitan areas including New York.  One of the Debtor's differentiating factors from its competitors was its real-time, in-house technology.  For example, the Debtor, which had an order weight maximum of 26 pounds for each courier, had the ability to split larger orders up between multiple couriers

if needed. Its technology allowed the Debtor to fulfill orders within two minutes and then deliver them in between five and 10 minutes.

12.     The Debtor relied on a mix of contractors and its own workforce and had more than 600 couriers and over 100 office workers.  In addition to leveraging efficiencies from its technologies, the Debtor attempted to earn revenue from the margins on its products and used the money saved by renting small locations not needed to be in prime spots for foot traffic to invest in employee costs. The Debtor's business plan also included an initiative to launch private label offerings with more than 100 SKUs in categories, such as meat and pasta.

13.     As of February 24, 2022, the Debtor had 39 stores that serve the New York and the Chicago metropolitan areas (31 in New York and 8 in Chicago), each with 2,000 to 3,000 SKUs.

14.     As noted above, the Debtor had been relying upon cash infusions by its original investors to continue to operate and expand while simultaneously seeking a new round of equity financing.  Prior to closing its business, the Debtor's plan was to open another 100 stores in 2022. Due to the invasion of Ukraine, the Debtor was unable to execute on its planned equity raise, despite its intensive efforts to raise rescue capital.  With relatively little cash on hand in February 2022 and payroll coming due, the Debtor's Board of Directors, in consultation with its managers and retained advisors, determined to ultimately terminate virtually all of its employees and obtain a relatively small DIP Loan to fund a liquidating Chapter 11 case.

15.     On March 4, 2022, the Debtor furloughed 98% of its work force.  On March 11, 2022, the Debtor enter into the Credit Agreement to borrow up to $6.5 million from Legalist with

$4 million of such commitment already distributed by the Debtor on account of the wages due to all employees[5] whose employment was terminated on March 11, 2022.

16.    As previously stated, Legalist and the Debtor agreed in the Credit Agreement that the Debtor was required to file a bankruptcy case on March 15, 2022 (with a two-business day grace period).

## **CHAPTER 11**

17.    On March 17, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  As a result of the Ukrainian crisis and the Debtor's attendant inability to receive funding from its initial investors and/or any other parties in a sufficient amount to continue to operate as a going concern while seeking a comprehensive capital raise or a merger or sale transaction, the Debtor's fiduciaries determined to cause the Debtor to commence this Chapter 11 case in order to effectuate an orderly sale of its assets.

## **JURISDICTION AND VENUE**

18.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.

19.    This is a core proceeding pursuant to 28 U.S.C. § 157(b).

20.    The Debtor confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

21.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **RELIEF REQUESTED**

---

[5] Note the exception of 6 employees retained to assist with the bankruptcy.

22.    Pursuant to sections 365(a) and 105(a) of the Bankruptcy Code, Bankruptcy Rule 6006, and Local Rule 6006-1, the Debtor respectfully requests the authority to reject the leases listed in the Rejected Unoccupied Lease Schedule (attached hereto as **Exhibit B**) effective, *nunc pro tunc*, as of March 17, 2022, the Petition Date, as the Debtor never actually initiated business operations in those locations, which locations remain unoccupied. The Debtor further seeks authority to reject the leases listed in the Rejected Occupied Lease Schedule (attached hereto as **Exhibit C**) effective as of March 31, 2022, or when the premises are vacated by the Debtor, if the Debtor is unable to vacate the premises before March 31, 2022 while the Debtor attempts to liquidate all of its assets as quickly as possible. The Debtor further seeks authority to abandon whatever Equipment or Inventory is left in the stores that the Debtor is unable to sell.

## BASIS FOR RELIEF

23.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard applied to determine whether the rejection of an executory contract or unexpired lease should be authorized is the "business judgment" standard. *See In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009).

24.    Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (recognizing business judgment standard used to approve rejection of executory contracts or unexpired leases); *Nostas Assocs. v. Costich (In re Klein Sleep*

*Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996) (recognizing the business judgment standard used to approve rejection of executory contracts).

25.    The business judgment standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 1996) ("To meet the business judgment test, the debtor in possession must 'establish that rejection will benefit the estate.'") (citation omitted); *In re Balco Equities Ltd, Inc.*, 323 B.R. 85, 99 (Bankr. S.D.N.Y. 2005) ("In determining whether the debtor has employed reasonable business discretion, the court for the most part must only determine that the rejection will likely benefit the estate.") (quoting *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994). Further, under the business judgment standard "a debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001).

26.    Section 105(a) provides additional authority to the Court to grant the relief requested herein. Section 105(a) of the Bankruptcy Code provides that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105(a) allows the bankruptcy court to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2004) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)).

27.    The Debtor will no longer be operating and is seeking to liquidate all of its assets. The Rejected Leases are therefore not necessary or required for the Debtor's reorganization or

liquidation and represent a liability to the estate, which liability the Debtor is trying to minimize by quickly selling the Debtor's assets in its various leased locations and vacating those locations as quickly as possible. The decision to reject all of the Rejected Leases therefore satisfies the Debtor's business judgment rule, as this rejection is necessary to reduce the administrative costs to the estate and maximize the return to the Debtor's unsecured creditors. In the interim the Debtor, on a parallel track, will be seeking to locate parties that might want to assume the Debtor's Rejected leases. To the extent the Debtor is able to do so, the Debtor will seek the appropriate relief from the Court at that time, including the assumption and assignment of a particular lease.

## **BANKRUPTCY RULE 6006 IS SATISFIED**

15.    Bankruptcy Rule 6006(a) provides that a "proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014." Fed. R. Bankr. P. 6006(a). In turn, Bankruptcy Rule 9014 states that "[i]n a contested matter . . . not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a).

16.    Bankruptcy Rule 6006(e) allows a debtor to consolidate, in a single motion, requests for the authority to reject multiple executory contracts or unexpired leases that are among different parties, subject to Bankruptcy Rule 6006(f). *See* Fed. R. Bankr. P. 6006(e). Bankruptcy Rule 6006(f) requires, in part, that such omnibus motion must: (i) "state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion"; (ii) "list parties alphabetically and identify the corresponding contract or lease"; (iii) "be numbered consecutively with other omnibus motions

10

to assume, assign, or reject executory contracts or unexpired leases"; and (iv) "be limited to no more than 100 executory contracts or unexpired leases." Fed. R. Bankr. P. 6006(f).

17.     Here, the Debtor has provided notice to the Lease Counterparties to the Rejected Leases such that they can take appropriate action. In addition, this Motion provides a conspicuous notice that the parties receiving it should locate their names and agreements, includes the Lease Counterparties to the Rejected Leases in alphabetical order, identifies the leases to be rejected. This Motion and the notice provided to the Lease Counterparties and other parties in interest are thus sufficient under Bankruptcy Rule 6006. To the extent the Motion does not comply with Bankruptcy Rule 6006, the Debtor respectfully requests a waiver.

18.     The landlords whose leases are not being rejected as of the Petition Date are well protected as the rent for a number of them has been paid through March 31, 2022.  Additionally, the Debtor's debtor-in-possession loan facility provides for payment of post-petition March 2022 rent to the extent not previously paid as well as rent for any portion of April 2022 to which landlords may be entitled based on the date the leased premises are vacated.  Finally, in connection with the auction process to be undertaken by the Debtor, the retained auctioneers will have Court-required bonds and insurance to protect landlords from any losses and the Debtor has fulsome insurance as well. There were also be security provided by 2 of the Debtor's remaining 6 employees.  These short-term auction sales on the premises are designed to maximize the sale proceeds of the Debtor's equipment and food inventory so that unsecured creditors, including landlords who will have unsecured rejection damage claims, may have as a large a recovery as possible.

62637289;3

19.     In view of the foregoing, the Debtor respectfully requests that the Court approve the rejection of the Rejected Leases pursuant to sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006 in the manner requested herein.

## MOTION PRACTICE

20.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtor submits that this Motion satisfies Local Rule 9013-1(a).

## RESERVATION OF RIGHTS

21.     Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; (iii) a waiver by the Debtor of its right to dispute the amount of, basis for, or validity of any claim, including, but not limited to, any rejection damages claim; (iv) a waiver by the Debtor of its right to dispute or assert that the Rejected Leases were breached by the Lease Counterparty and/or terminated prior to the date of entry of the Proposed Order; (v) a waiver or limitation of the Debtor's right to assert at a later date that the Rejected Leases are not unexpired leases; or (vi) a concession or evidence that any Rejected Leases has not expired, been terminated, or otherwise currently is not in full force and effect.

## NOTICE

22.     The Debtor has caused a copy of this Motion to be served upon (i) the Top 20 unsecured creditors; (ii) the United States Trustee; (iii) the DIP Lender; (iv) the Lease Counterparties; (v) those persons who have formally appeared in the Chapter 11 Case and

62637289;3

requested service pursuant to Bankruptcy Rule 2002; and (vi) all applicable government agencies to the extent required by the Bankruptcy Rules and the Local Rules.  The Debtor submit that no other or further notice need be provided.

## **NO PRIOR REQUEST**

23.    No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE the Debtor respectfully request entry of an order in substantially the form attached hereto as **Exhibit A** (i) authorizing the Debtor to reject, *nunc pro tunc* to the Petition Date the Rejected Unoccupied Lease Schedule (attached hereto as **Exhibit B**; (ii) authorizing the Debtor to reject the leases listed  in the  Rejected Occupied Lease Schedule (attached hereto as **Exhibit C**) effective as of March 31, 2022 or when the premises are vacated by the Debtor, if the Debtor is unable to vacate the premises before March 31, 2022; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
      March 22, 2022                                        AKERMAN LLP


                                              By:    */s/Mark Lichtenstein*
                                              Mark S. Lichtenstein
                                              1251 Avenue of The Americas, 37th Floor
                                              New York, New York 10020
                                              Tel. No. (212) 880-3800
                                              Fax No. (212) 880-8965
                                              E-Mail: mark.lichtenstein@akerman.com

                                                    -and-

13

John H. Thompson
AKERMAN LLP
750 Ninth Street, N.W., Suite 750
Washington D.C. 20001
Tel.: (202) 393-6222
Fax: (202) 393-5959
E-Mail: john.thompson@akerman.com

*Proposed Counsel for Debtor and Debtor-in Possession*

14

# EXHIBIT A

# PROPOSED ORDER

62637289;3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUYK CORP.[1] | ) | Case No. 22-10328 (MEW) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER GRANTING OMNIBUS MOTION OF DEBTOR PURSUANT TO 11 U.S.C. §§ 105(a) AND 365(a) AND FED. R. BANKR. P. 6006 <u>AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES</u>

Upon the Debtor's Omnibus Motion  (the "Motion") [ECF No. ___] pursuant to 11 U.S.C. §§ 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6006-1 and 9006-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"),  to reject certain unexpired leases listed and described on the schedules attached hereto as **Exhibit A** (the "Rejected Unoccupied Leases Schedule"), including any amendments or modifications thereto effective, *nunc pro tunc*, as of March 17, 2022, and to reject certain unexpired leases, which leases are listed and described on the schedule attached hereto as **Exhibit B** (the "Rejected Occupied Lease Schedule",  together with the "Rejected Unoccupied Lease Schedule," each, a "Rejected Lease" and, collectively, the "Rejected Leases" and the counterparty thereto, the "Lease Counterparty"), including any amendments or modifications, thereto effective as of March 31, 2022 or when the premises are vacated by the Debtor, if the Debtor is unable to vacate the premises before March 31, 2022,  the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

January 31, 2012; and this proceeding being a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

and it appearing that notice of the Motion as set forth therein is sufficient under the circumstances,

and that no other or further notice need be provided; and it further appearing that the relief

requested in the Motion is in the best interests of the Debtor's estate, creditors, and other parties-

in-interest; and upon all of the proceedings had before the Court; and after due deliberation and

cause appearing;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      Pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, the

Debtor's rejection of the leases listed and described  in the Rejected Unoccupied Lease Schedule

attached hereto as **Exhibit A**, effective *nunc pro tunc* as of  March 17, 2022, is approved.

3.      Pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, the

Debtor's rejection of the leases listed and described  in the Rejected Occupied Lease Schedule

attached hereto as **Exhibit B**, effective as of March 31, 2022, or if the Debtor is unable to vacate

the premises by then, when the premises are actually vacated by the Debtor, is approved.

4.      Each non-Debtor counterparty to a Rejected Lease shall have until the latter of (i)

the general claims bar deadline, and (ii) thirty (30) days following entry of this Order, to file a

claim for any damages arising out of or related to a Rejected Lease.

5.      Any equipment or inventory left in the premises of the Rejected Leases is deemed

abandoned.

6.      The Debtor is authorized to take any additional actions as are necessary or

appropriate to implement and effectuate the rejections approved hereby.

7.      The Motion satisfies Bankruptcy Rules 2002, 6006 and 9014.

8.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to this Order.

Dated: New York, New York
       April __, 2022

**PROPOSED**

_____
 HONORABLE  MICHAEL E. WILES
 UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

# REJECTED UNOCCUPIED  LEASE SCHEDULE

In re: Buyk Corp.
Case No. 22-10328 (MEW)

## Exhibit B
## Rejected Unoccupied Leases Schedule

| Landlord | Address | City | State |
|---|---|---|---|
| 1368 FOREST AVENUE LLC | 1368 Forest Avenue | Staten Island | NY |
| 221-06 MERRICK BLVD. ASSOCIATES, LLC | 221-26 Merrick Boulevard | Springfield Gardens | NY |
| 456 GRAND REALTY URBAN RENEWAL, LLC | 460 GRAND STREET | Jersey City | NJ |
| 6145 MASTER ASSOCIATES LLC | 6145 N. Broadway | Chicago | IL |
| EMPIRE PUMP & MOTOR LLC | 1150 W 26th Street | New York | NY |
| EUGENE LLC | 386 FOREST AVENUE | Staten Island | NY |
| HICKORY PROPERTY GROUP, L.L.C. | 1800-A S. Cicero Avenue | Chicago | IL |
| MR 3629 WESTERN WAVELAND, LLC | 3621-A North Western Avenue | Chicago | IL |
| NORTH 14TH STREET REALTY ASSOCIATES LLC | 200 N 14th st | Brooklyn | NY |
| PILSEN GATEWAY LLC | 1461 S. BLUE ISLAND AVENUE | Chicago | IL |
| PRIMEROK REAL ESTATE/601 E TREMONT OPERATING LLC | 601 East Tremont Avenue | Bronx | NY |
| SHANTI ACQUISITION LLC | 2221 Washington Street | Roxbury | MA |
| SWEENEY PROPERTY GROUP, L.L.C. | 914 & 920 W. Madison Street | Oak Park | IL |
| UNITED INVESTORS, INC. AS AGENT FOR AG UNITED INVESTORS LP. | 3545-51 W. Armitage Avenue | Chicago | IL |

# EXHIBIT C

## REJECTED OCCUPIED  LEASE SCHEDULE

In re: Buyk Corp.
Case No. 22-10328 (MEW)

## EXHIBIT C
## REJECTED OCCUPIED LEASES SCHEDULE

| Landlord | Address | City | State | Zip |
|---|---|---|---|---|
| 1454 ROCKAWAY REALTY LLC | 1454 Rockaway Parkway | Brooklyn | NY | 11236 |
| 16 FULTON PARTNERS LLC | 1620 Fulton Street | Brooklyn | NY | 11213 |
| 1805 REALTY LLC and 1807 CHURCH REALTY, LLC | 1805-1807 Church Avenue | Brooklyn | NY | 11226 |
| 1860 N MILWAUKEE COMET LLC | 1860 N. Milkwaukee Avenue | Chicago | IL | 60647 |
| 1937 CONEY ISLAND LLC | 1938 Coney Island Boulevard | Brooklyn | NY | 11230 |
| 21 Penn Plaza Tenant LLC | 368 9th Ave. | New York | NY | 10001 |
| 2269 FIRST AVE OWNER LLC | 2269 First Avenue | New York | NY | 10035 |
| 231ST RIVERDALE LLC | 190 West 231st Street | Bronx | NY | 10463 |
| 271 SEA BREEZE DEVELOPMENT LLC | 76 West Brighton Avenue | Brooklyn | NY | 11224 |
| 2717 CLARK LLC | 2717 North Clark Street | Chicago | IL | 60614 |
| 29-28 41st AVENUE OWNER | 29-28 41st Avenue | Long Island City | NY | 11101 |
| 304-12 EAST 204TH STREET REALTY LLC | 304-312 East 204th Street | Bronx | NY | 10467 |
| 356 Broadway Retail LLC | 356 Broadway | New York | NY | 10013 |
| 47 EAST 34 OWNER LLC | 47 East 34th Street | New York | NY | 10016 |
| 5215 PROPERTIES, LLC | 5216-5224 Fifth Avenue | Brooklyn | NY | 11220 |
| 6241 FOREST AVENUE LLC | 6241 Forest Avenue | Ridgewood | NY | 11385 |
| 635 4TH AVENUE HOLDINGS LLC | 635 4th Avenue | Brooklyn | NY | 11232 |
| 8904 5TH AVE LLC | 8932 5th Ave | Brooklyn | NY | 11209 |
| Blanchard Naperville Property Group, L.L.C., | 4838 S. Cicero Avenue | Chicago | IL | 60638 |
| BRONXWOOD PARKING CORP. | 2721 Bronxwood Avenue | Bronx | NY | 10469 |
| BTM DEVELOPMENT PARTNERS, LLC | 610 Exterior Street | Bronx | NY | 10451 |
| CA 5-15 WEST 125TH LLC | 5-15 West 125th Street | New York | NY | 10027 |
| CASCADE BUILDING G LLC | 869 Myrtle Avenue | Brooklyn | NY | 11206 |
| DE BOULEVARD, LLC | 107-12 Queens Boulevard | Forest Hills | NY | 11375 |

In re: Buyk Corp.
Case No. 22-10328 (MEW)

| Landlord | Address | City | State | Zip |
|---|---|---|---|---|
| ECA BULIGO NOSTRAND PARTNERS, LP | 3780-3858 Nostrand Avenue | Brooklyn | NY | 11235 |
| FC MILLER REALTY LLC | 5020 Avenue N | Brooklyn | NY | 11234 |
| GATEWAY ELTON II, LLC | 524 Vandalia Street | Brooklyn | NY | 11239 |
| GRACE PROPERTIES LLC | 745 Gotham Parkway | Carlstadt | NJ | 07072 |
| HORIZON GROUP XVI, LLC | 1956 W. Lawrence Avenue | Chicago | IL | 60640 |
| HUN YIP LLC | 178 Delancey Street | New York | NY | 10002 |
| JEK ELM LEIGHTON LLC & RAA LEIGHTON ELM LLC | 1698 First Avenue | New York | NY | 10128 |
| MARKET SQUARE SHOPPING CENTER, LLC | 2121 North Clybourn | Chicago | IL | 60614 |
| NATION PROPERTY GROUP, L.L.C | 4819 W. Irving Park Road | Chicago | IL | 60641 |
| NATIONWIDE INDUSTRIAL SUPPLY, LLC | 10 Park Place | Butler | NJ | 07405 |
| NATIONWIDE INDUSTRIAL SUPPLY, LLC | 10 Park Place | Butler | NJ | 07405 |
| ONE ELEVEN THIRD LLC | 111 Third Avenue | New York | NY | 10003 |
| PE 315 LLC | 315 West 35th St | New York | NY | 10001 |
| R.P. FOX CHICAGO LLC | 2774 N Milwaukee | Chicago | IL | 60647 |
| RCGT 2988-37, LLC | 83 Gardner Ave | Brooklyn | NY | 11237 |
| SAAB FAMILY LIMITED PARTNERSHIP | 28-12 21st Street | Long Island City | NY | 11102 |
| STRATA REALTY CORP. & 201 WEST 108 STREET LLC | 976 Amsterdam Avenue | New York | NY | 10025 |
| THIRD AND BERGEN LLC | 83 THIRD AVENUE | BROOKLYN | NY | 11217 |