UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| BUYK CORP.[1] ) | Case No. 22-10328 (MEW) |
| ) | |
| Debtor. ) | |
| ) | |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 503 AND 507
(I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO THE SECURED PARTY,
(III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") [ECF No. 13] of Buyk Corp. (the "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), seeking entry of an interim order authorizing the Debtor to obtain postpetition financing; and the Court having held a hearing on the Motion on March 22, 2022 and having considered the declarations offered into evidence and the arguments of counsel at the hearing, IT IS HEREBY FOUND that:

A.   Petition Date.   On March 17, 2022 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Bankruptcy Code chapter 11;

B.   Debtor in Possession.   The Debtor is in possession of its properties and continues to operate its businesses as a debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case;

C.   Jurisdiction and Venue.   This Court has jurisdiction over the Chapter 11 Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C.

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

§ 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this interim order consistent with Article III of the United States Constitution;

D.  <u>Creditors' Committee</u>.  As of the date hereof, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") has not appointed an official committee of unsecured creditors in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (a "<u>Creditors' Committee</u>");

E.  <u>Adequate Notice.</u>  Under the circumstances, the notice given by the Debtor of the Motion and the hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Code section 364 and Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") 2002, 4001, and LBR 4001-2, such that no other or further notice of the Motion or entry of this Interim Order is needed;

F.  <u>Sufficient Cash Collateral.</u>  Sufficient Cash Collateral exists for the Debtor to operate this case without the need for additional borrowing prior to a final hearing on the Motion to be held on April 19, 2022, and thus, only partial relief in the form of an order authorizing the use Cash Collateral (the "<u>Interim Cash Collateral Order</u>") is warranted at this time.  Entry of this Interim Cash Collateral Order does not limit the Debtor from seeking additional borrowing or other appropriate relief pursuant to the Motion on an interim basis, if necessary;

G.  <u>Debtor's Stipulations.</u>  Without prejudice to the rights of any party to assert Claims and Defenses (as defined herein) prior to expiration of the Challenge Period (as defined herein) as more particularly set forth in Paragraph 4 of this Interim Cash Collateral Order, and without these matters constituting factual findings by the Court, the Debtor represents, admits, stipulates, and agrees (collectively, the "Debtor's Stipulations") as follows:

    a.  <u>Prepetition Term Loan Credit Agreement</u>.  The Debtor is a borrower under that certain Prepetition Term Loan Credit Agreement, dated March 11,

  2022, (together with any and all related collateral and security documents, guarantees and other loan documents, the "Secured Credit Documents" and any and all related obligations thereunder, the "Secured Obligations")[2] between the Debtor and Legalist DIP GP, LLC (in such capacity, the "Secured Party").

b. Prepetition Collateral. The Prepetition Term Loan Agreement is secured by substantially all assets of the Debtor (the "Prepetition Collateral" and all liens and security interests therein, the "Prepetition Liens")[3] and constitute the legal, valid and binding obligations of the Debtor, enforceable in accordance with the Secured Credit Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

c. Cash Collateral. Any and all of the Debtor's cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtor, and any amounts generated by the collection of accounts receivable, the exercise of letter of credit rights, the sale of inventory or other disposition of the Prepetition Collateral, and the proceeds of any of the foregoing is the Secured Party's cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

d. Secured Obligations. As of the Petition Date, the Debtor, without defense, counterclaim, or offset of any kind is indebted and liable to the Secured Party under the Secured Credit Documents in the principal amount set forth therein and incorporated herein by reference, exclusive of accrued and unpaid interest, premiums, if any, and certain fees, costs, expenses, indemnification obligations, charges and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued accruing, due, owing or chargeable in respect of any of the Secured Obligations.

e. Prepetition Liens. The Prepetition Liens granted to the Secured Party in the Prepetition Collateral pursuant to and in connection with the Secured Credit Documents, (i) are valid, binding, perfected, and enforceable first priority liens and security interests in the Prepetition Collateral, and (ii) constitute the legal, valid, and binding obligation of the Debtor, enforceable in accordance with the terms of the applicable Secured Credit Documents.

f. No Claims Against Secured Party. The Debtor and its estate have no claims, objections, challenges, causes of action and/or choses in action, including,

---

[2] A summary of the Secured Obligations is attached hereto as **Exhibit A**.

[3] For the avoidance of doubt, the Prepetition Collateral shall not include (a) Debtor's real property leases to the extent any Prepetition Liens thereon would be prohibited by the applicable lease after giving effect to any applicable law regarding the enforceability of such prohibition, or (b) property owned by the landlords of Debtor's real property leases, provided however, that any proceeds from the Debtor's real property leases are expressly incorporated in the Prepetition Collateral and secured by the Prepetition Liens.

without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Secured Party, or any of its agents, attorneys, advisors, professionals, officers, directors, and employees in respect of the Prepetition Liens, the Secured Obligations or the Secured Credit Documents.

H.  <u>Necessity for Relief Requested; Immediate and Irreparable Harm</u>.  The Debtor requested entry of this Interim Cash Collateral Order pursuant to Bankruptcy Rule 4001(b)(2). The Debtor has an immediate need to use the Prepetition Collateral, including Cash Collateral to, pay expenses and thereby to preserve and maintain the value of the Debtor's assets, absent which immediate and irreparable harm will result to the Debtor, its estate, the creditors, and other stakeholders.

I.  <u>Good Cause</u>.  Good cause has been shown for immediate entry of this Interim Cash Collateral Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules, and the entry of this Interim Cash Collateral Order is in the best interests of the Debtor, its estate, the creditors, and other stakeholders.

J.  <u>Good Faith</u>.  The Debtor and the Secured Party represent that the Debtor's use of Cash Collateral has been negotiated in good faith and at arms' length between the Debtor and the Secured Party and the Secured Party's consent to the Debtor's use of Cash Collateral has been made in "good faith."

**BASED UPON FOREGOING AND THE RECORD AT THE HEARING, IT IS HEREBY ORDERED:**

1.  <u>Motion Granted in Part.</u>  The Motion is <u>GRANTED</u> in part on an interim basis.  The Court will hear balance of the relief requested in the Motion on April 19, 2022 or such other time scheduled by the Court.  Any remaining objection to the Motion or entry of this Interim Cash Collateral Order is hereby <u>OVERRULED</u>.

2. <u>Authorization to Use Cash Collateral</u>.  The Debtor is authorized to use Cash Collateral during the period from the Petition Date through and including the Termination Date (as defined herein) pursuant to the terms and conditions provided herein.

3. <u>Budget.</u>

   a. Except as otherwise provided herein, the Debtor may only use Cash Collateral in the manner set forth in the budget approved by the Secured Party (as the same may be updated in accordance with the terms of the Prepetition Term Loan Agreement, the "<u>Budget</u>") and for no other purposes.  The Budget attached hereto as **Exhibit B**.

   b. The Debtor shall be deemed to be in compliance with the Budget so long as the Debtor provides to the Secured Party on or before the first Tuesday of each month (each in the Approved Form):

      i   A variance report (certified by an appropriate officer of the Debtor) comparing, on a line-item basis, actual cash receipts and disbursements to those contained in the Budget, for both the preceding month and cumulatively from the date hereof, together with detailed explanations of all variances (if any); and

      ii  A rolling 13-week cashflow forecast for the Debtor.

      In no event shall actual cash receipts vary downward, or cash disbursements vary upward, from the Budget (on a line-item, monthly, or cumulative basis) by more than 7.5% (the "<u>Permitted Variances</u>").

4. <u>Effect of Stipulations on Third Parties</u>.

   a. The Debtor's acknowledgments, stipulations, admissions and waivers set forth in this Interim Cash Collateral Order, including in <u>Paragraph G</u> hereof, shall be binding on the Debtor except to the extent specified in this paragraph 4.

   b. The acknowledgments, stipulations, admissions, waivers and releases contained in this Interim Cash Collateral Order, including in <u>Paragraph G</u> hereof, shall also be binding upon the Debtor's estate and all parties in interest, including the Creditors' Committee, if any, or any chapter 7 or chapter 11 trustee appointed or elected for the Debtor (a "<u>Trustee</u>"), unless (a) such party has duly filed an adversary proceeding challenging the validity, perfection, priority, extent or enforceability of the Prepetition Liens, the Secured Credit Documents or the Secured Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "<u>Claims and Defenses</u>") against the Secured Party in connection with any matter related to the Prepetition

5

        Collateral, the Prepetition Liens, the Secured Credit Documents or the Secured Obligations by no later than (i) with respect to any Creditors' Committee, the date that is sixty (60) days after entry of a Final Order (or such longer period as the Court orders for cause shown before the expiration of such period), (ii) with respect to other parties in interest, the date that is seventy-five (75) days after the entry of a Final Order with respect to the Motion (or such longer period as the Court orders for cause shown before the expiration of such period) or (iii) any such later date agreed to in writing by the Secured Party in its sole and absolute discretion (the time period established by the foregoing clauses (i), (ii) and (iii), the "<u>Challenge Period</u>"); and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding.

c.      For the avoidance of doubt, any Creditors' Committee, party in interest or trustee shall be deemed to have standing to assert a challenge as to the amounts owed to the Secured Party and/or the validity or perfection of the Prepetition Liens. A Creditors' Committee shall be deemed to have standing to assert avoidance actions within the Challenge Period against the Secured Party and on behalf of the estate. Any other party in interest who seeks authority to assert avoidance actions on behalf of the estate shall be required to obtain this Court's permission before doing so.

d.      If no such adversary proceeding is timely filed prior to the expiration of the Challenge Period, then (x) the Secured Obligations shall constitute allowed claims, not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in this Chapter 11 Case and any subsequent chapter 7 case, if any; and (y) the Secured Obligations, the Prepetition Liens, the Secured Credit Documents and the Secured Party (in its capacity as such) shall not be subject to any other or further challenge and any party in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtor's estates or taking any such action, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).

5.      <u>Termination Date</u>.  The Debtor's authorization, and the Secured Party's consent, to use Cash Collateral shall terminate without further notice or action by the Court on the earliest to occur of (the "<u>Termination Date</u>") any of the following (each a "<u>Termination Event</u>"):

    a.    the first business day that is 40 days after the Petition Date (unless such period is extended by Order of the Court or by agreement of the Secured Party) if the Final Order with respect to the Motion has not been entered by this Court on or before such date;

    b.    following five (5) business days written notice to the Debtor, the failure of the Debtor to comply with any provision, covenant or agreement in this Interim Cash Collateral Order (including, without limitation, any failure to comply with a Budget, subject to any permitted variances);

    c.    the Debtor shall grant, create, incur or suffer to exist any postpetition liens or security interests other than (i) those granted pursuant to this Interim Cash Collateral Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; and (iv) deposits to secure the payment of any postpetition statutory obligations, surety bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business;

    d.    the entry of an order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

    e.    the entry of an order in this Chapter 11 Case appointing a chapter 11 trustee;

    f.    the Court shall terminate or reduce the period pursuant to section 1121 of the Bankruptcy Code during which the Debtor have the exclusive right to file a plan and solicit acceptances thereof;

    g.    the entry of an order in the Chapter 11 Cases modifying, staying, reversing or vacating any part of this Interim Cash Collateral Order, without the prior consent of the Secured Party;

    h.    except as expressly allowed in this Interim Cash Collateral Order, an order of this Court shall be entered granting any lien on, or security interest in, any Prepetition Collateral in favor of any party other than the Secured Party, or granting an administrative claim payable by a Debtor to any party other than the Secured Party, that is senior to, or *pari passu* with, the Adequate Protection Superpriority Claim (as defined herein), without the express written consent of the Secured Party;

      i.      the Debtor file or support a motion challenging the validity, extent or priority of any of the Prepetition Liens or Secured Obligations; or

      j.      the entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting a deed in lieu of foreclosure).

6.    <u>Reporting Requirements/Access to Records</u>.  The Debtor shall provide the Secured Party with all reporting and other information required to be provided to the Secured Party under this Interim Cash Collateral Order and such other reporting reasonably requested from time to time by the Secured Party.

7.    <u>Insurance</u>.  At all times the Debtor shall maintain casualty and loss insurance coverage for the Prepetition Collateral on substantially the same basis as maintained prior to the Petition Date.

8.    <u>Adequate Protection</u>.  Subject only to the Carve-Out and the terms of this Interim Cash Collateral Order, pursuant to sections 361, 362, 363(e) and 507 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of the value of its interests in the Prepetition Collateral, for and equal in amount to the aggregate postpetition diminution in value of such interests(the "<u>Diminution in Value</u>"), the Secured Party is hereby granted the following:

      a.      <u>Adequate Protection Liens</u>.  As security for and solely to the extent of any Diminution in Value, the Secured Party is hereby granted, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, additional and replacement valid, binding, enforceable non-avoidable, and automatically perfected postpetition security interests in and liens (the "<u>Adequate Protection Liens</u>"), without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all property (including any previously unencumbered property), whether now owned or hereafter acquired or existing and wherever located, of the Debtor and its estate (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, equipment, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment

intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, proceeds from the disposition of leases, all of the issued and outstanding capital stock of the Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, causes of action, including causes of action arising under section 549 of the Bankruptcy Code (but excluding any causes of action under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions")), all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located, and subject to entry of the Final Order with respect to the Motion, all proceeds and property recovery in respect of Avoidance Actions (collectively, the "Adequate Protection Collateral").  Subject to the terms of this Interim Order, the Adequate Protection Liens shall be subordinate only to the (A) Carve-Out and (B) valid, perfected, unavoidable and enforceable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens of the Secured Party pursuant to applicable law.  Other than as specifically set forth above, the Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.  The Adequate Protection Liens shall not be (A) subject or junior to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor's estates under section 551 of the Bankruptcy Code or (ii) any lien or security interest arising on or after the Petition Date or (B) subordinated to or made *pari passu* with any other lien, claim or interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

b. Adequate Protection Superpriority Claim.  To the extent of any Diminution in Value, as further adequate protection, and to the extent provided by sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, the Secured Party is hereby granted an allowed superpriority administrative expense claim against the Debtor ahead of and senior to any and all other administrative expense claims and all other claims asserted against the Debtor (the "Adequate Protection Superpriority Claim") other than the Carve-Out.  Other than the Carve-Out (which shall have priority over the Adequate Protection Superpriority Claim), the Adequate Protection Superpriority Claim will not be junior to any claims and shall have priority over all administrative expense claims and all other claims asserted against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final DIP Order), 507(a), 507(b), 546(d), 726, 1113 and 1114.

9

9. <u>Perfection of Adequate Protection Liens</u>.

   a. The Secured Party is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder. Whether or not the Secured Party shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Cash Collateral Order. If the Secured Party determines to file or execute any financing statements, agreements, notice of liens or similar instruments, the Debtor shall cooperate and assist in any such execution and/or filings as reasonably requested by the Secured Party, and the automatic stay is hereby modified to allow such filings.

   b. A certified copy of this Interim Cash Collateral Order may, in the sole discretion of the Secured Party, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Cash Collateral Order for filing and recording; *provided* that, notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of this Interim Cash Collateral Order.

<u>Carveout</u>.  Unless and until the Carveout Trigger Date (defined below), the Debtor shall pay administrative expenses of the Case in the ordinary course as permitted by the Budget. Notwithstanding the Budget or anything else herein or in the Secured Credit Documents to the contrary, from and after the date of delivery (the "<u>Carveout Trigger Date</u>") by the Secured Party to the counsel to the Debtor and the U.S. Trustee of notice that both (a) a Termination Date has occurred and (b) the Secured Party has triggered the Carveout (a "<u>Carveout Trigger Notice</u>"), such administrative expenses shall be funded solely from an amount (the "<u>Carveout</u>"), not to exceed $168,000 (subject to the increase in the Carveout set forth in para. 10 below), to be set aside solely for (x) fees, expenses, and costs then due and payable to the U.S. Trustee and/or Clerk of the Court under 28 U.S.C. § 1930 <u>plus</u> (y) potential future fees, expenses, and costs of a statutory trustee appointed in the Debtor's case (together, the "<u>Triggered Carveout Cap</u>"); <u>provided</u> that in no event

10

shall payment of any amount contemplated by the Carveout or any portion of the Triggered Carveout Cap constitute a personal liability of the Secured Party, any Affiliate, or any other Indemnified Person.

10. For the avoidance of doubt, from and after the Carveout Trigger Date, the Debtor shall be allowed to utilize the Secured Party's Cash Collateral to satisfy administrative expenses reflected in the Budget, including the Debtor's professional fees, that are incurred but unpaid prior to the Carveout Trigger Date, provided that, any payment shall be (i) subject to approval by the Bankruptcy Court and (ii) permitted under the Carveout (as modified by this paragraph) solely to provide for the payment of such incurred but unpaid administrative expenses as of the Carveout Trigger Date.

11. <u>Reversal, Modification, Vacatur, or Stay</u>.  Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Cash Collateral Order (other than in accordance with the Final Order) shall not affect the validity or enforceability of any Adequate Protection Lien, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Lien, incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with the Final Order), (a) this Interim Cash Collateral Order shall govern, in all respects, any use of Cash Collateral or Adequate Protection Lien or Adequate Protection Superpriority Claim incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Secured Party shall be entitled to all the benefits and protections granted by this Interim Cash Collateral Order with respect to any such use of Cash Collateral (including payment of the Adequate Protection Fees) or such Adequate Protection Lien or Adequate Protection Superpriority Claim incurred by the Debtor.

12.     <u>Reservation of Rights of the Secured Party</u>.  Notwithstanding any other provision in this Interim Cash Collateral Order to the contrary, the entry of this Interim Cash Collateral Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of the Secured Party to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection at the Final Hearing; (b) the Secured Party's rights to seek modification of the grant of adequate protection provided under this Interim Cash Collateral Order so as to provide different or additional adequate protection at any time; (c) any of the rights of the Secured Party under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Secured Party to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in the Chapter 11 Case, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Secured Party.

13.     <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the Secured Party to seek relief or otherwise exercise any of its rights and remedies under this Interim Cash Collateral Order, the Secured Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by any or all of the Secured Party.

14.     <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Secured Party hereunder becomes insufficient to compensate for any Diminution in Value of its interests in the Prepetition Collateral during the Chapter 11 Case.

15.  <u>Modification of the Automatic Stay</u>.  The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Cash Collateral Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtor and the Secured Party to accomplish the transactions contemplated by this Interim Cash Collateral Order including, without limitation, to (a) permit the Debtor to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claim, as applicable, (b) permit the Debtor to perform such acts as the Secured Party may reasonably request to assure the perfection and priority of the liens granted herein, and (c) permit the Debtor to incur all liabilities and obligations to the Secured Party under this Interim Cash Collateral Order.

16.  <u>Preservation of Rights Granted Under This Interim Cash Collateral Order; Survival of This Interim Cash Collateral Order</u>.

   a.  Notwithstanding any order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the Adequate Protection Superpriority Claim, the other administrative claims granted pursuant to this Interim Cash Collateral Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Cash Collateral Order until all adequate protection obligations shall have been paid and satisfied in full in cash (and such Adequate Protection Superpriority Claim, the other administrative claims granted pursuant to this Interim Cash Collateral Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

   b.  Except as expressly provided in this Interim Cash Collateral Order, the Adequate Protection Liens, the Adequate Protection Superpriority Claim and all other rights and remedies of the Secured Party granted by the provisions of this Interim Cash Collateral Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7, dismissing the Chapter 11 Case, or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or Adequate Protection Collateral pursuant to Bankruptcy Code section 363(b) or (iii) the entry of an order confirming a plan in the Chapter 11

Case and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtor has waived any discharge as to any remaining adequate protection obligations. The terms and provisions of this Interim Cash Collateral Order shall continue in this Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code. The Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of the Secured Party granted by the provisions of this Interim Cash Collateral Order shall continue in full force and effect until all adequate protection obligations are indefeasibly paid in full, in cash.

17. *Good Faith*. Based on the representations of the Debtor and the Secured Party, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Secured Party is hereby found to have acted in "good faith" in connection with the negotiation and entry of this Interim Cash Collateral Order, and the Secured Party is entitled to the protections provided to such entities under section 363(m) of the Bankruptcy Code.

18. *Limitation of Liability*. By virtue of permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Cash Collateral Order, the Secured Party shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtor, its creditors or its estate, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtor.

19. *Final Hearing*. A hearing on the Debtor's Motion is scheduled for **April 19, 2022, at 10:00 a.m.** (prevailing Eastern time) before this Court. Within three (3) business days after entry of this Interim Cash Collateral Order, the Debtor shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of the Motion (to the extent the Motion was not

previously served on a party) and this Interim Cash Collateral Order on (i) the Notice Parties[4], and (ii) counsel to any Creditors' Committee.  Any responses or objections to the Motion shall be made in writing, conform to the applicable Bankruptcy Rules and Local Rules, be filed with the Bankruptcy Court, set forth the name of the objecting party, the basis for the objection, and the specific grounds therefor, and be served so as to be actually received no later than **April 12, 2022, at 4:00 p.m.** (prevailing Eastern time) by (i) the Debtor (ii) the Notice Parties and (ii) counsel to any Creditors' Committee.

20.    <u>Order Effective Upon Entry</u>.  Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Interim Cash Collateral Order shall be immediately effective and enforceable upon its entry.

21.    <u>Controlling Effects of Interim Cash Collateral Order</u>.  To the extent any provision of this Interim Cash Collateral Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Cash Collateral Order shall control.

22.    <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

23.    <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Interim Cash Collateral Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Cash Collateral Order.

Dated: New York, New York
       March 30, 2022

                                                           /s/ **Michael E. Wiles**
                                                           UNITED STATES BANKRUPTCY JUDGE

---

[4] The Notice Parties are identified in the Motion.

15

**Exhibit A**

Principal Amount of Secured Obligations

| Bank Creditor | Principal Amount | US Prime (w/ 4.00% Floor) | Interest Rate | Total Interest Rate |
|---|---|---|---|---|
| Legalist DIP GP, LLC | $4,000,000 | 4.00% | 11.75% | 15.75% |
|  |  |  |  |  |

**Exhibit B**
**(Budget)**

Exhibit B

**Buyk Corp.**
**DIP Budget**

| Week Ended[1] | kUSD | 3.11.2022 | 3/20/2022 | 3/27/2022 | 4/3/2022 | 4/10/2022 | 4/17/2022 | 4/24/2022 | 5/1/2022 | 5/8/2022 | 5/15/2022 | 5/22/2022 | 5/29/2022 | 6/5/2022 | 6/12/2022 | 6/19/2022 | 6/26/2022 | 7/3/2022 | 7/10/2022 | 7/17/2022 | 7/24/2022 | 7/31/2022 | 8/7/2022 | 8/14/2022 | 8/21/2022 | 8/28/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Initial cash balance | | 800 | | | | | | | | | | | | | | | | | | | | | | | | |
| Receipts | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DIP Financing | | 4,000 | 500 | - | (500) | (500) | (400) | - | - | (3,100) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Assets liquidation | | - | - | 312 | 312 | 187 | 187 | 218 | 4,463 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Deposits refund | | - | - | - | 880 | 150 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Receipts | | 4,000 | 500 | 312 | 692 | (163) | (213) | 218 | 4,463 | (3,100) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Disbursements: | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Employee Expenses | | 2,379 | - | 67 | - | 67 | - | 67 | - | 67 | - | 34 | - | 34 | - | 34 | - | 34 | - | 34 | - | 34 | - | 30 | - | 330 |
| Employee Reimbursement | | 104 | 10 | 10 | 10 | 10 | 5 | 5 | 5 | 5 | - | 5 | - | 5 | - | 5 | - | 5 | - | 5 | - | 2 | - | 2 | - | 2 |
| Outstaffed couriers, consultants, temp.hires | | 1,379 | 152 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Insurance | | 45 | 45 | - | - | - | 35 | - | - | - | - | - | 5 | - | - | - | 5 | - | - | - | - | 5 | - | - | - | 5 |
| Professional fees | | - | 20 | 10 | 10 | 10 | 5 | 5 | 10 | - | - | - | - | - | 10 | - | - | - | - | - | - | - | - | - | - | - |
| Attorney fees | | 75 | 40 | 25 | 40 | 25 | 40 | 25 | 25 | 25 | - | - | - | - | - | - | 50 | - | - | - | - | - | - | - | 25 | 30 |
| Rent & Utilities | | - | 608 | - | 404 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Taxes & fees | | - | 30 | 36 | - | - | - | 36 | - | - | - | - | 1 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Disbursements | | 3,982 | 905 | 148 | 464 | 112 | 50 | 173 | 35 | 97 | - | 39 | 6 | 49 | - | 89 | 5 | 39 | - | 39 | - | 41 | - | 32 | 25 | 367 |
| Total Operating Receipts / (Disbursements) | | 18 | (405) | 164 | 228 | (275) | (263) | 46 | 4,428 | (3,197) | - | (39) | (6) | (49) | - | (89) | (5) | (39) | - | (39) | - | (41) | - | (32) | (25) | (367) |
| DIP Facility Interest & Fees | | - | - | 1 | - | 7 | - | - | - | 352 | 7 | - | - | - | - | - | 15 | - | - | - | - | - | - | - | - | - |
| Net Receipts / (Disbursements) | | 18 | (405) | 163 | 228 | (282) | (263) | 46 | 4,428 | (3,550) | (7) | (39) | (6) | (49) | - | (89) | (20) | (39) | - | (39) | - | (41) | - | (32) | (25) | (367) |
| Cash balance | | 818 | 412 | 575 | 804 | 521 | 258 | 304 | 4,731 | 1,182 | 1,174 | 1,136 | 1,130 | 1,081 | 1,081 | 993 | 973 | 934 | 934 | 895 | 895 | 855 | 855 | 823 | 798 | 431 |