UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BUYK CORP..[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10328-mew |

**BALDOR'S LIMITED OBJECTION TO DEBTORS' PROPOSED STIPULATION AND ORDER REJECTING LEASE AND SELLING EQUIPMENT BY AND AMONG DEBTOR AND THIRD AND BERGEN, LLC WITH APPLICATION FOR APPROVAL**

**COMES NOW**, Baldor Specialty Foods Inc. ("Baldor"), by and through undersigned counsel, and hereby enters a limited objection (the "Objection") to Debtor's proposed sale of certain of its equipment located at 83 Third Avenue, Brooklyn, New York 11217, free and clear of all liens, claims, interests, and encumbrances, as set forth in *Debtor's Application for Approval of Stipulation and Order Regarding Debtor's Motion to Reject Lease at 83 Third Ave., Brooklyn, NY 11217 With Third and Bergen, LLC and Sell Equipment* (Docket No. 77) and Exhibit A thereto, *Stipulation and Order Rejecting Lease and Selling Equipment*. For the reasons set forth below, Baldor objects to the relief contemplated by the Stipulation and Order Rejecting Lease and Selling Equipment as contravening its right to prompt payment from non-bankruptcy estate trust assets under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq*. ("PACA") by providing for a sale "free and clear of all liens, claims, interests and encumbrances" without expressly providing that liens and claims will attach to the sales proceeds in the same relative priority as would attach if the assets were sold by auction. In support of its Objection, Baldor respectfully states as follows:

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number, is Buyk Corp. (1477).

- 1 -

## I.   BACKGROUND

1. On March 17, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court (Docket No. 1).

2. Debtors are continuing in possession of the business and property as debtors-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

3. Pre-petition, Debtors operated an "ultra-high speed grocery business" with 39 locations, including 31 in the New York metropolitan area. Declaration of James Walker (Docket No. 9) at ¶ 4. These grocery locations purchased wholesale quantities of fresh fruits and vegetables in the ordinary course of business and are subject to licensure under PACA a dealer.

4. Pre-petition, Baldor sold and delivered wholesale quantities of produce to Debtors in interstate commerce. Baldor is a PACA licensee who has preserved its rights as a beneficiary of the statutory trust created by PACA when it placed the statutory language on its invoices to Debtors as contemplated by 7 U.S.C. § 499e(c)(4).

5. Prior to the Petition Date, Baldor supplied Debtors with perishable agricultural commodities and other goods having a principal value of $85,702.82, $80,038.69 of which was for produce, all of which remains unpaid and is past due. Baldor's invoices also entitle it to recover interest on the principal balance at 18% *per annum*, plus attorneys' fees, and Baldor expressly reserves its rights to assert claims for all unpaid interest and attorneys' fees incurred in enforcing its trust rights under the PACA. Baldor has filed a proof of claim with the court in this action at Claim Number 13 (the "Claim").

6. Over the last several days, counsel for Baldor has spoken and repeatedly corresponded with counsel for the Debtor to advise of the existence of Baldor's PACA trust claim

and to request that adequate protections be put in place for the payment of its claim. Debtor's counsel indicated to Baldor's counsel that a PACA Claims Procedure motion would be filed in the near future, and a PACA Claims Procedure Motion was filed this afternoon (Docket No. 87) (the "PACA Motion"). Unfortunately, the PACA Motion fails to contain sufficient safeguards to protect Baldor's PACA trust claim because it: (a) authorizes Debtor to pay PACA claims <u>in its discretion,</u> (b) does not require or direct actual payment of PACA claims, (c) fails to provide for review by the Court in the event of dispute, and (d) fails to provide a date certain for payment. The PACA Motion thus provides no protection to PACA trust creditors like Baldor and amounts to mere lip-service to Debtor's fiduciary obligations under the PACA trust.

7. As for the Stipulation and Order Rejecting Lease and Selling Equipment, the predicate for the relief sought is this Court's Order Granting Debtor's Emergency Motion to (I) Approve Assets Sale Via Auction; and (II) Sell Property Free and Clear of All Liens, Claims, and Encumbrances (Docket No. 46) (the "Sale Order"). The Sale Order provides, in relevant part, as follows:

> All prepetition liens and claims, to the extent any exist other than the secured interest of the proposed DIP Lender, against the Equipment and Inventory, shall attach to the sale proceeds the Debtor receives. Those liens and claims <u>will attach to the proceeds **of any auction** sales authorized pursuant to this Order in the same order of relative priority and with the same validity, force, and effect that the holder of such lien or claim had against the asset prepetition</u> and will be subject to any claims and defenses the Debtor may possess with respect thereto. The interests of the holders of such liens or claims are being adequately protected pursuant to the provisions of this Order.

Sale Order at ¶ 6 (emphasis added).

8. Thus, on its face, the Sale Order appears to provide that all prepetition liens and claims attach to the proceeds of the sale contemplated by the Stipulation and Order in the same order and relative priority as they did to the asset. But this is mistaken, because paragraph 6

- 3 -

expressly limits the attachment of claims and liens to the proceeds "of any auction." The transaction contemplated by the Stipulation and Order is not an auction, but a sale. For the reasons set forth below, Baldor has statutory trust rights in the assets to be sold to the landlord, and thus a statutory trust interest in the proceeds from their sale. Neither the Sale Order nor the Stipulation and Order protects those rights.

9. Although Debtor's counsel confirmed in writing that the $30,000.00 in contemplated sales proceeds from the equipment at issue would be subject to liens and claims in the same relative priority as would attach if the assets were sold by auction, no similar confirmation has been received from counsel for Debtor's secured lender despite repeated assurances from Debtor's counsel that such confirmation would be provided. In addition, neither Debtor nor its secured lender have offered to formally modify the Stipulation and Order Rejecting Lease and Selling Equipment.

10. Because the Stipulation and Order Rejecting Lease and Selling Equipment at issue fails to preserve the super-priority status afforded PACA trust claims or provide the adequate protections required by controlling jurisprudence, with no formal revisions being proposed to protect Baldor and any similarly-situated PACA trust claimants, Baldor files this Limited Objection and respectfully submits that the Stipulation and Order be modified such that the $30,000.00 in contemplated sales proceeds from the equipment at issue is subject to liens and claims in the same relative priority as would attach if the assets were sold by auction

## II.    LEGAL ANALYSIS

11. PACA is a remedial statute designed to protect sellers of perishable commodities who, without the statute, would lack any way to secure themselves against non-payment by their customers. H. Rep. No. 543, 98th Cong., 1st Sess. 3 (1983), reprinted in 1984 *U.S. Code Cong &*

*Admin News* ("*USCCAN*") 405, 407. As a remedial statute, PACA "should be given a liberal construction to effectuate its statutory purpose." *Hull Company v. Hauser Foods, Inc.*, 924 F.3d 777, 781 (8th Cir. 1991).

12. In the early 1980's, "Congress determined that the increase in non-payment and delinquent payment by produce dealers threatened the financial stability of produce growers." *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990). To remedy this problem, Congress amended PACA in 1984 by creating a statutory trust in Section 499e to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 *U.S. Code Cong & Admin News* 405, 406. The trust provisions require a produce receiver to hold in trust as a fiduciary its produce-related assets, which includes the produce itself, products derived therefrom, <u>as well as any receivables or proceeds from the sale thereof</u>, until full payment is made to the seller. 7 U.S.C. § 499e(c)(2) (emphasis added); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010 (6th Cir. 1993).

13. Failure to maintain the trust and make full payment promptly to the trust beneficiaries is unlawful. 7 U.S.C. § 499b(4). Produce dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 CFR § 46.46(d)(1). Dissipation of trust assets, defined as the diversion of trust assets or the <u>impairment of a seller's right to obtain payment</u> (7 CFR § 46.46[a][2]), is forbidden. 7 CFR § 46.46(d)(1) (emphasis added).

14. The scope of the PACA trust is broad. Section 499e(c)(2) defines the *corpus* of the trust as all produce, including all inventories of food or other products derived from produce, and <u>receivables or proceeds from the sale of produce or its products</u>. 7 U.S.C. § 499e(c)(2) (emphasis added). The trust also extends to all inventory purchased from a commingled account, *Sanzone-Palmisano Co.* 986 F.2d at 1010, and to any other assets acquired with PACA trust funds. *In re Kornblum & Co., Inc.*, 81 F.3d at 280; *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990).

15. Assets purchased with funds held in an account containing comingled proceeds from the sale of produce and non-produce items are routinely held to be trust assets. *A & J Produce Corp. v. Bronx Overall Economic Development Corp.*, 542 F.3d 54 (2d Cir. 2008) (commercial real property impressed with PACA trust); *In re Kornblum & Co., Inc.,* 81 F.3d at 287 (proceeds from the sale of membership interests and leases on real property are PACA trust assets); *Chiquita Fresh N. Am., LLC v. Long Island Banana Corp.*, 198 F.Supp.3d 171 (E.D.N.Y. 2016) (real property proceeds subject to the PACA trust); *American Fruit & Vegetable Co., Inc. v. Ithaca Produce, Inc.*, 848 F.Supp.2d 375 (W.D.N.Y. 2011) (residential real property subject to PACA trust); *Movsovitz & Sons of Fla., Inc. v. Doral Bank,* 2010 U.S. Dist. LEXIS 48612 (D.P.R. May 17, 2010) (proceeds from the sale of real property impressed with PACA trust under *Kornblum* standard); *Tony Vitrano Co. v. National Produce Co.*, 815 F.Supp. 23 (D.D.C. 1993) (proceeds from sale of real property, paid for with PACA trust funds, are PACA trust assets); *Mid-Valley Produce Corp. v. 4-XXX Produce Corp.*, 833 F.Supp. 193 (E.D.N.Y. 1993) (use of PACA trust funds to pay mortgage on home resulted in imposition of constructive trust on home for benefit of PACA creditors); *In re Atlantic Tropical Market Corp.*, 118 B.R. at 142 ("[A]ny assets purchased while the fund is in existence will be assumed to be purchased with trust fund assets and will therefore become part of

the trust fund assets."); *In re Al Nagelberg & Co., Inc.*, 84 B.R. 19, 21 (S.D.N.Y. Bankr. 1988) (payments to co-op impressed with the PACA trust); *Consumers Produce Co. v. Fredericktown Produce Co.*, 2015 U.S. Dist. LEXIS 19869 (W.D. Pa. Feb. 19, 2015) (insurance policy proceeds subject to the PACA trust); *Sam Wang Produce, Inc. v. EE Mart FC, LLC,* 2010 U.S. Dist. LEXIS 13608 (E.D.Va., Feb. 16, 2010) (use of PACA trust funds to pay insurance premiums entitled PACA creditors to proceeds from insurance policy); *Atlantic Coast Produce, Inc., v. McDonald Farms, Inc.*, 2005 U.S. Dist. LEXIS 14993**12-13 (W.D. Va. 2005) ("If the buyer fails to prove [particular assets] did not derive from produce proceeds, a PACA beneficiary may recover any of the buyer's assets, up to the amount owed, ahead of other creditors."); *Hereford Haven v. Stevens,* 1999 U.S. Dist. LEXIS 3116 (N.D. Tex. Mar. 12, 1999) (business property, vehicles, and all business equipment are PACA trust assets because paid for with commingled PACA trust funds).

16.    Moreover, there is a presumption that the assets of a PACA trustee are subject to the PACA trust. *J.A. Besteman Co. v. Carter's, Inc.*, 439 F. Supp. 2d 774, 778 (W.D.Mich. 2006); *Tony Vitrano Co.*, 815 F.Supp. at 23. It is not the obligation of the PACA trust beneficiary to trace assets and show that they are impressed with the PACA trust. *J.A. Besteman Company*, 439 F. Supp. 2d at 777. Rather, the party alleging that assets acquired with commingled funds are not part of the PACA trust has the very difficult burden of proving that the assets are free of the trust. *Sanzone-Palmisano*, 986 F.2d at 1014; see also*, A & J Produce Corp.*, 542 F.3d at 58. It makes no difference if "the buyer sells other commodities in addition to produce and commingles the proceeds from the sale of all commodities." *Sanzone-Palmisano*, 986 F.2d at 1014. Nor does it matter that the debtor is a restaurant that sold meals containing produce. *In re: Old Fashioned Enterprises, Inc.*, 236 F.3d 422 (2001); *In re: Magic Restaurants, Inc.*, 205 F.3d 108 (2000); *In re: Country Harvest Buffet Restaurants, Inc.*; 245 B.R. 650 (B.A.P. 9th Cir. 2000).

17.     Based on this law, when a produce buyer files for bankruptcy protection, the PACA trust assets are not part of the debtor's estate. 11 U.S.C. § 541(d); 49 Fed. Reg. 45735, 45738; *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bkrtcy. C.D. Ill. 1997); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993). Therefore, so long as PACA creditors remain unpaid, Debtor, as the PACA trustee, has a fiduciary duty to the PACA creditors to ensure that sufficient assets are made available to pay all sums owing under the PACA trust, even before payment to secured lien holders. 7 U.S.C. § 499e(c)(1); *A & J Produce Corp.*, 542 F.3d at 58.

18.     PACA's trust provisions provide that unpaid produce sellers "are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy." *Frio Ice, S.A.*, 918 F.2d 154; see also, *In re Kornblum & Co.*, 81 F.3d 280; *Sanzone-Palmisano Company*, 986 F.2d 1010. "It is clear from the terms of the PACA amendments and from the supporting legislative history that Congress intended to create a *priority* status for unpaid produce claimants, priming even the administrative claims which normally stand first in line in a bankruptcy distribution." *In re Fresh Approach, Inc.*, 51 B.R. 412, 420 (Bankr. N.D. Tex. 1985) (emphasis in original). "Allowing a defunct PACA trustee to pay other creditors with PACA funds before the seller is paid in full would frustrate [the purpose of PACA], and would be contrary to the language of PACA and its accompanying regulations." *C.H. Robinson Company v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001).

19.     As a result, PACA creditors are entitled to immediate turnover of trust funds upon the commencement of the bankruptcy. *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bankr. E.D.Pa 1987). Unpaid produce suppliers are entitled to

immediate relief, either by the segregation of trust assets, *Frio Ice, S.A.* 918 F.2d at 156; *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D.Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D.Fla. 1989), or by immediate payment. *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Debtors required to immediately pay trust assets to the PACA trust creditors).

20. Furthermore, Debtors cannot delay payment of PACA claims by shunting them off to a plan of reorganization. See, *In re W.L Bradley Company, Inc.*, 75 B.R. at 514; *In re Fresh Approach, Inc.*, 51 B.R. 412; *In re Monterey House, Inc.*, 71 B.R. 244 (Bankr. S.D. Tex. 1986). In *Bradley*, the court explained its decision by recalling Congress' intent in enacting the PACA:

> It must be remembered that PACA was not enacted to protect those in Debtor's shoes, but rather to prevent the chaos and disruption in the flow of perishable agricultural commodities sure to result from an industry-wide proliferation of unpaid obligations. While in isolation this may seem a harsh course to follow, in the macroeconomic sense PACA serves to ensure continuity of payment and therefore survival of the industry. Congress has plainly decided it would be less disastrous to risk the liquidation of a single purchaser than to threaten the entire production chain with insolvency.

*In re W.L Bradley Company, Inc.*, 75 B.R. at 514.

21. The law is well-settled that PACA trust beneficiaries, "take complete priority in payment as to all the assets of the debtor, <u>ahead of the claims of creditors who have valid security interests, ahead of the administrative costs and expenses incurred in [bankruptcy] court</u>, and ahead of all other priority and general creditors." *In re Super Spud, Inc.*, 77 B.R. 930, 932 (M.D. Fla. 1987) (emphasis added); see also, *In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 965 (5th Cir. 1980). The terms of the sale agreement between Debtor and Third and Bergen, LLC as reflected in the Stipulation and Order Rejecting Lease and Selling Equipment fail to protect Baldor's priority status and must be modified to the extent they impinge on Baldor's statutory trust rights.

### III.    LIMITED OBJECTION

22.    The proposed Stipulation and Order Rejecting Lease and Selling Equipment ignores the entire statutory and legal framework described above and instead vitiates Baldor's statutory trust rights by permitting Debtor to transfer PACA trust assets free and clear of Baldor's statutory trust interest in PACA trust assets without requiring Debtor or the Purchaser to satisfy Baldor's PACA trust claim.  At a minimum, the Stipulation and Order must be modified such that the $30,000.00 in contemplated sales proceeds from the equipment at issue is subject to liens and claims in the same relative priority as would attach if the assets were sold by auction.

23.    Baldor reserves the right to assert additional objections in the event Debtor files revised pleadings or at the hearing on this matter.

### IV.    CONCLUSION

24.    Debtor asks this court to enter a Stipulation and Order that jeopardizes Baldor's superior statutory trust status and otherwise extinguishes rights granted to Baldor by Congress. Sustaining this Limited Objection is necessary to ensure the future payment of Baldor's PACA trust claim and that Debtor is not allowed to dodge its fiduciary and statutory obligations to Baldor because of competing but secondary obligations to its secured lender.

//
//
//
//
//
//
//

**WHEREFORE**, for the foregoing reasons, Baldor respectfully requests that this Court enter an Order (i) sustaining the Limited Objection, (ii) directing that the Stipulation and Order Rejecting Lease and Selling Equipment be modified to the extent it is inconsistent with the Limited Objection, and (iii) granting Baldor such other and further relief as the Court deems just and proper.

Dated: April 6, 2022

                                           McCarron & Diess
                                           Attorneys for Baldor Specialty Foods Inc.

                           By:    /s/ Gregory Brown
                                   Gregory Brown
                                   576 Broadhollow Road, Suite 105
                                   Melville, New York 11747
                                   P: (631) 425-8110
                                   F: (202) 364-2731
                                   Email: gbrown@mccarronlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2022, a copy of the foregoing Limited Objection was served via the Court's CM/ECF system to any party who has filed a request for notice pursuant to Rule 2002 of the Bankruptcy Rules and upon the following via email:

Counsel to Debtor
Akerman LLP
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Attn: Mark Lichtenstein, Esq.: mark.lichtenstein@akerman.com

and

Akerman LLP
750 Ninth Street, NW, Ste. 750
Washington, D.C. 20001
Attn: John Thompson, Esq.: john.thompson@akerman.com

Counsel to Landlord
Seyfarth Shaw LLP
620 Eight Avenue
New York, New York 10018
Attn: Edward M. Fox, Esq.: emfox@seyfarth.com

Office of the U.S. Trustee
201 Varick Street, Room 1006
New York, New York 10014
Attn: Mark Bruh, Esq.: mark.bruh@usdoj.gov

                              /s/ Gregory Brown
                              Gregory Brown