WILLIAM K. HARRINGTON Hearing Date: April 19, 2022
UNITED STATES TRUSTEE, REGION 2 Hearing Time: 2:00 p.m.
U.S. Department of Justice
Office of the United States Trustee
201 Varick Street, Suite 1006
New York, New York 10014
Telephone: (212) 510–0500
By: Mark Bruh
 Greg Zipes
 Tara Tiantian
 Trial Attorneys

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
In re: : Chapter 11
 :
BUYK CORP., : Case No. 22-10328 (MEW)
 :
 Debtor. :
-------------------------------------------------------X

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR
AN ORDER (I) APPROVING TERMS AND AUTHROIZING IMPLEMENTATION
OF KEY EMPLOYEE RETENTION PLAN AND KEY EMPLOYEE
INCENTIVE PLAN; AND (II) GRANTING RELATED RELIEF**

TO: THE HONORABLE MICHAEL E. WILES,
 UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), hereby submits this Objection[1] to the Debtor's Motion for Entry of an Order

(I) Approving the Terms and Authorizing Implementation of Key Employee Retention Plan

("KERP") and Key Employee Incentive Plan ("KEIP"); and (II) Granting Related Relief (the

"Bonus Motion") ECF No. 17. In support thereof, the United States Trustee respectfully states:

**PRELIMINARY STATEMENT**

The United States Trustee objects to approval of the Bonus Motion because the Debtor

has failed to meet its burden of proof with respect to both the KEIP and the KERP. With regard

---

[1] Debtor's counsel extended the United States Trustee's deadline to file an objection from April 12, 2022 to April 14, 2022.

1

to the KEIP, the Debtor proposes to make a total aggregate bonus payment in the sum of $300,000 to six (6) of the Debtor's officers and employees provided that the Debtor is able to (i) sell its assets for an aggregate net value of $8 million or more **OR** (ii) confirm a plan of liquidation that provides for at least a 10% distribution to the Debtor's unsecured creditors.

There are two reasons why the KEIP must fail. First, at least three of the six potential bonus recipients are senior officers of the Debtor and without a doubt, insiders of the Debtor as that term is defined by the Bankruptcy Code. See 11 U.S.C. 101(31)(B)(ii). With respect to the remaining three individuals, the Bonus Motion fails to provide their job titles and job responsibilities and therefore, it is impossible to reach a reasoned determination as to whether the Debtor's characterization of those three individuals as non-insiders is appropriate. To the extent, however, that at least half of these individuals are clearly insiders, the Court cannot approve the KEIP unless the Debtor is able to meet its burden of proof by demonstrating that the requirements of section 503(c)(1) of the Bankruptcy Code have been met. The Debtor has not done so here. As discussed below, despite the Debtor's characterization of the KEIP as an incentive-based plan, the Debtor provides virtually no information which would explain or justify how the plan can be incentive-based. As the Bonus Motion explains, the bulk of the groundwork for the sale of the Debtor's assets has completed. Therefore, rather than serving to incentivize these six individuals by setting difficult to reach goals, based on the information provided by the Debtor in the Bonus Motion, and as discussed in greater detail below, the KEIP's metrics seem to have been designed with the sole purpose of persuading these six individuals to remain with the Debtor through confirmation of a Chapter 11 plan of liquidation. Moreover, even assuming arguendo that one or more of these six key employees are not insiders, the Debtor has failed to meet its burden to demonstrate that the payment of these bonuses to these six key employees is a reasonable expenditure of Debtor assets or is justified under the

facts and circumstances of this case. The Debtor has already retained three (3) auctioneers in connection with the sale of the Debtor's assets presumably for the purpose of ensuring that the Debtor's asset sale is successful as possible. It is not clear why the Debtor needs to expend additional estate assets to the six individuals involved where the groundwork for the sale of the Debtor's assets has already been finalized. In short, as more fully discussed below, the KEIP should not be approved.

Second, given that this is a plan for the benefit of insiders with the purpose of inducing these individuals to remain with the Debtor, the Debtor needs to meet is burden of proof in demonstrating that it has met each of the factors set forth in section 503(c)(1). Again, the Debtor has failed to do so.

Finally, although the Bonus Motion asserts that the founders of the Debtor are not subject to any sanctions, see Bonus Motion para 5, no payment of bonuses should be made unless the Debtor is able to establish that any payment(s) to any of the bonus recipients would not be prohibited transactions under the recent sanction legislation, *see e.g.*, Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R. Part 587, by the Office of Foreign Assets Control ("OFAC"), on Monday, February 28, 2022 (effective March 1, 2022).

With respect to the KERP, the United States Trustee is unable to discern what relief the Debtor seeks in connection with this aspect of the Bonus Motion. Specifically, the Debtor maintains that the total aggregate KERP payment is $153,203.10 per month. See Bonus Motion, para 27. The chart provided by the Debtor which lists (i) the current salaries of the six proposed KERP recipients (who are the same individuals who are the proposed KEIP recipients), (ii) a discount rate to be applied to the annual salaries of James Walker and Dmitry Vilbaum, and (iii) the "New Salary per Year" for each of the six individuals, is confusing and not helpful. The purpose and connection of this annual salary information to the proposed monthly KERP

3

payment cannot be discerned. Accordingly, the KERP must be denied unless and until the Debtor meets its burden of proof by providing specific information regarding the titles and job descriptions of the KERP participants, the amounts proposed to be paid, and detailed information as to why the KERP is justified by the facts and circumstances of the case. For these reasons, the Bonus Motion must be denied.

Finally, to the extent the Debtor seeks approval of its Bonus Motion under section 363(b)(1) of the Bankruptcy Code, there is no authority under the Bankruptcy Code to approve transfer of debtor assets to individuals under section 363(b)(1). These transfers must be analyzed under the framework of 11 U.S.C. § 503(c). Nonetheless, even if section 363(b)(1) were applicable – which it is not – the Debtor has not established that the proposed bonus plan are justified by the facts of this case. Notably, even under the less rigorous standards of section 503(c)(3) and 363, the benchmarks for the payment of bonuses must still be "difficult targets to reach." In re Dana Corp., 358 B.R. 567, 583 (Bankr. S.D.N.Y. 2006) ("Dana II"). As addressed below, these plans do not appear to be difficult targets to reach.

## FACTUAL BACKGROUND

**A.     General Background**

1.      On March 17, 2022 (the "Petition Date"), Buyk Corp. (the "Debtor") commenced a voluntary case under chapter 11 of the Bankruptcy Code. ECF. No. 1. The Debtor is authorized to continue to operate its business and manage its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      As of the date hereof, the United States Trustee has not appointed an Official Committee of Unsecured Creditors.

3. Prior to the Petition Date, the Debtor asserted that it operated what it referred to as "an ultra-high speed grocery business" with 39 locations, 31 in the New York metropolitan area and 8 in the Chicago metropolitan area. ECF No. 9, Local Rule 1007-2 Affidavit at ¶ 4.

4. According to the Debtor, as a result of the Ukrainian crisis and the Debtor's attendant inability to receive funding from its initial investors and/or any other parties in a sufficient amount to continue to operate as a going concern while seeking a comprehensive capital raise or a merger or sale transaction, the Debtor's fiduciaries determined to cause the Debtor to commence this Chapter 11 case in order to effectuate an orderly sale of its assets. Id. at ¶ 19.

5. The Debtor alleges that prior to the Petition Date, it terminated 98% of its employees, except six (6) staff members. Id. at ¶ 7.

6. On March 23, 2022, the Court entered an order granting the Debtor's motion for an extension of time to file schedules and statements to April 15, 2022 (the "Extension Order"). ECF No. 40. Paragraph 3 of the Extension Order provides for the following:

> On or before Tuesday, March 29, 2022, the Debtor shall file with the Court a disclosure as to (i) all payments the Debtor made within (one) 1 year before March 17, 2022 to insiders as defined by 11 U.S.C. § 101; and (ii) any payments Debtor made on loans within ninety (90) days prior to March 17, 2022 [the "Insiders and Loans Payments Schedule"].

See ECF No. 40.

7. On March 24, 2022 and March 25, 2022, the Court approved the retentions of three (3) auctioneers for the Debtor.

8. On March 29, 2022, the Debtor filed the Insiders and Loans Payments Schedule. ECF No. 63.

**B.  The Bonus Motion**

9. On March 18, 2022, the Debtor filed the Bonus Motion. ECF No. 17.

10. According to the Bonus Motion, prior to the Petition Date, the Debtor terminated the employment of all its employees, except for six (6) staff members (set forth in the chart in paragraph 13 below) who the Debtor proposes to continue to employ postpetition to assist in the orderly winddown in this liquidating Chapter 11 case. Id. at ¶ 8.

11. The KEIP proposes to pay those six (6) employees an aggregate payout of approximately $300,000. The KEIP is based on the following metrics: (i) a sale of assets for an aggregate net value of $8 million or more; or (ii) a distribution to unsecured creditors of 10% or more, through the confirmation of a plan of liquidation. Id. at ¶ 28.

12. According to the Debtor, upon the completion of the required metrics, each of the six (6) employees shall receive a percentage of the $300,000, proportionate to the amount of salary received by each employee while the Debtor is in bankruptcy. Id.

13. According to the Bonus Motion, the "KERP is designed to ensure that six (6) key employees remain with the Debtor during this Chapter 11 Case and the liquidation of the Debtor's assets." Id. at ¶ 27. The Bonus Motion included the below chart, which the Debtor ostensibly included in order to demonstrate that the aggregate monthly KERP payments to the six (6) employees is $153,203.10:

| Name of the Employee | Current Salary Per Year | Discount | New Salary Per Year |
|---|---|---|---|
| James Walker | $ 750,000 | 35% | $ 487,500 |
| Alexandre Agaian | $ 222,000 | 0% | $ 222,000 |
| Olga Beliakova | $ 178,500 | 0% | $ 178,500 |
| Dmitry Vilbaum | $ 300,000 | 10% | $ 270,000 |
| Ramon Guzman | $ 120,000 | 0% | $ 120,000 |
| Oleg Lungu | $ 180,000 | 0% | $ 180,000 |

Id.

6

# LEGAL ARGUMENT

A.    **The Statutory Framework**

Section 503 governs the allowance of administrative expenses "for actual, necessary costs and expenses of preserving a debtor's bankruptcy estate." 11 U.S.C. § 503(b)(1)(A). The two general overriding policies of section 503 of the Bankruptcy Code are: (i) to preserve the value of the estate for the benefit of its creditors and (ii) to prevent the unjust enrichment of the insiders of the estate at the expense of its creditors. In re Journal Register Co., 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009) (citing Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98. 101 (2d Cir. 1960)) (additional citations omitted).

Section 503(c)(1) of the Bankruptcy Code prohibits any transfer:

> made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtors' business, absent a finding by the court based on evidence in the record that

(A)    the transfer or obligation is essential to the retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

(B)    the services provided by the person are essential to the survival of the business; and

(C)    either –

    (i)    the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

    (ii)    if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

7

11 U.S.C. § 503(c)(1).

A transfer to an insider to induce the insider to remain with the debtor's business must satisfy the requirements under subdivisions (A), (B), and (C) of section 503(c)(1) of the Bankruptcy Code to be subject to this subdivision's exception. 4 Collier on Bankruptcy ¶ 503.17 (15th ed. rev. 2007); see also In re Dana Corp., 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2007) ("Dana II") (summarizing the requirements under Section 503(c)(1) of the Bankruptcy Code). Attempts to characterize what are essentially prohibited retention programs as "incentive" programs to bypass the requirements of section 503(c)(1) of the Bankruptcy Code are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether the compensation programs are subject to section 503(c)(1) of the Bankruptcy Code. See In re Mesa Air Group, Inc., No. 10-10018, 2010 WL 3810899, at *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citing In re Dana Corp., 351 B.R. 96, 102 n.3 (Bankr. S.D.N.Y. 2006) ("Dana I") (stating that if a bonus proposal "walks like a duck (KERP), and quacks like a duck (KERP), it's a duck (KERP).").

Section 503(c) of the Bankruptcy Code, added in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), was intended to curtail payments of retention incentives to insiders, including bonuses granted to other employees without factual and circumstantial justification. See Journal Register; 407 B.R. at 535; see also In re Pilgrim's Pride Corp., 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) ("Section 503(c) was enacted to limit a debtor's ability to favor powerful insiders economically at estate expenses during a chapter 11 case."); In re Global Home Prods., LLC, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (stating that the amendments were added to "eradicate the notion that executives were entitled to bonuses simply for staying with the company through the bankruptcy process."). This section establishes

8

specific evidentiary standards that must be met before a bankruptcy court may authorize payments made to an insider for the purpose of inducing such person to remain with a debtor's business. Dana I, 351 B.R. at 100; 11 U.S.C. § 503(c)(1).

The BAPCPA amendments make it abundantly clear that if a proposed transfer falls within section 503(c)(1), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. Dana I, 351 B.R. at 101. The effect of section 503(c) of the Bankruptcy Code was to put in place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses could be paid. Mesa Air Group, 2010 WL 3810899, at *2 (citing Global Home Prods., 369 B.R. at 785).

### B. The Debtor Has Failed to Satisfy its Evidentiary Burden to Demonstrate the KEIP is an Incentive Plan

The law is clear that the burden is on the Debtor to either show that the proposed bonus plan complies with the requirements of section 503(c)(1) or that it is not a disguised retention plan. See Dana I, 351 B.R. at 100; Mesa Air Group, 2010 WL 3810899, at *2 (citing Global Home Prods., 369 B.R. at 785).

Retention plans usually are intended "to encourage certain crucial employees to remain with the company through a critical, transitional time period when the exact future of the company is unclear and when those employees would be most likely to search for other employment." Brooklyn Hosp., 341 B.R. 405, 413 (Bankr. E.D.N.Y. 2006). Although the Debtor styles the KEIP as an incentive plan, it fails to satisfy the stringent criteria that it is not merely retentive. It is the substance of how and why the proposed payments are made, not the label put on the plan, that is determinative. Mesa Air Group, Inc., 2010 WL 3810899, at *4 (incentive plans are designed to motivate employees to achieve performance goals).

9

*The KEIP Participants Are Insiders*

As an initial matter, it appears that at least some of the KEIP participants are "insiders" as that term is defined under the Bankruptcy Code. According to the Debtor's petition [see ECF No. 1] and the Insiders and Loans Payments Schedule [see ECF No. 63], three (3) of the six (6) remaining employees, i.e., James Walker (Debtor's Chief Executive Officer) Alexandre Agaian (Debtor's Corporate Secretary), and Olga Beliakova (Chief Financial Officer) are insiders. See 11 U.S.C. § 101(31)(B)(ii) ("the term 'insider' includes … if the debtor is a corporation, officer of the debtor."); see also In re Glob. Aviation Holdings Inc., 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) ("An officer is defined as a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as the CEO, president, secretary, or treasurer.")

Because these participants are insiders, in order to show that the more permissive terms of section 503(c)(3) apply, the Debtor must establish by a preponderance of the evidence that the KEIP is primarily incentivizing, rather than primarily retentive. In re Residential Capital, LLC, 478 B.R. 154, 170 (Bankr. S.D.N.Y 2012) ("Rescap"); see Hawker Beechcraft, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012). That is, in order for the proposed bonuses not to run afoul of section 503(c)(1), the Debtor must demonstrate that the KEIP is not retention-based, but rather that presents significant hurdles which are difficult to achieve. Rescap, 478 B.R. at 169; Dana I, 358 B.R. at 583; Hawker Beechcraft, 479 B.R. at 313; In re Velo Holdings Inc., 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012); Global Home, 369 B.R. at 784; see Dana II, 358 B.R. at 583 (concluding that benchmarks for the debtors' long-term KEIP "are difficult targets to reach and are clearly not 'lay-ups'.").

10

*The Debtor Fails to Demonstrate that the Metrics are Difficult*

The Debtor does not demonstrate that the bonuses associated with the KEIP present difficult targets. The Debtor's metrics on which the KEIP is based are as follows: (i) a sale of assets for an aggregate net value of $8 million or more; or (ii) a distribution to unsecured creditors of 10% or more, through the confirmation of a plan of liquidation. ECF No. 17 at ¶ 28.

In this regard, the Debtor has still not filed schedules of assets and liabilities, which would provide basic information about the Debtor's financial condition.[2] The Bonus Motion lacks this crucial information. According to paragraph 6 of the Bonus Motion, the Debtor's saleable assets have a book value of approximately $12.7 million.[3] Notwithstanding this brief mention of certain assets in the Bonus Motion, it is silent with respect to the estimated auction value of the assets, as well as any other assets of the Debtor, which might be subject to the aforementioned sale metric.[4] Not only has the Debtor failed to file a schedule of assets and liabilities, the Bonus Motion fails to link the KEIP participants to the achievement of the sales that will yield the amount of net sale proceeds that will trigger one of the two metrics under the KEIP. Nor does the Bonus Motion explain how the sale proceeds will benefit the estates and its creditors.

With respect to the first metric, under the terms of the KEIP, the participants can earn their bonuses even if the Debtor is unable to confirm a plan. Courts in this district have made it clear that triggering bonus awards solely on the basis of a sale transaction is not sufficient to shift consideration of a bonus plan providing payments to insiders from section 503(c)(1) to section 503(c)(3). See Rescap, 478 B.R. at 171 ("63% of the KEIP Awards are linked solely to the

---

[2] The Debtor obtained an extension to file its schedules of assets and liabilities to April 15, 2022. See ¶ 6 above.

[3] $11 million of those assets include unencumbered brand new (and almost new) refrigeration and other food storage equipment.

[4] Debtor's counsel has advised the undersigned that there are additional assets not mentioned in the instant motion which it seeks to sell.

11

Closing of the Asset Sales; [w]ithout more, this is insufficient to render the KEIP primarily incentivizing."); see also Velo Holdings, 472 B.R. 472 B.R. at 205–06 (approving KEIP measured by section 363 sales proceeds and financial hurdles); In re Borders Group, Inc., 453 B.R. 459, 465–66 (Bankr. S.D.N.Y. 2011) (approving KEIP that required successful reorganization or going concern sale and meeting substantial cost reduction targets.).

Here, the two metrics are disjunctive and not conjunctive, which that means achieving the sale of the assets alone will entitle the participants to earn the KEIP bonus. That is insufficient.

Furthermore, in connection with the bonuses to be paid, the nexus between the proposed bonuses and each insider is not specifically detailed. Accordingly, it is impossible to determine what, if anything, individual KEIP participants must do in order to obtain a bonus. In In re Hawker Beechcraft, Inc., 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012), the Court denied the debtors' KEIP motion because the debtors have failed to sustain their burden of proof. "[Debtors] did not identify the roles of each member of the SLT or why, individually or as part of a team, they will contribute services that are necessary to achieve the targets." Id. Nowhere does the Bonus Motion connect the KEIP participants with the achievement of the net[5] amount of sale proceeds that are to trigger the proposed bonuses. The two targets appear to be primarily relying on the efforts of the Debtor's three (3) auctioneers and bankruptcy professionals, and have little to do the Debtor's operational or financial performance which, based on the sparce information provided, appear to be the roles for the six (6) remaining employees.

Accordingly, absent further explanation, the bonus award does not represent difficult targets to reach, and the Bonus Motion appears to be retentive in nature. See Hawker Beechcraft 479 B.R. at 314 (denying bonus motion where (i) sale price target was not "much of a challenge" and (ii) cash flow targets would be met if debtors do not encounter any "whoopsies").

---

[5] Additionally, the Bonus Motion fails to identify how the Debtor computes "net" sale proceeds.

12

*The Debtors Do Not Adequately Address Section 503(c)(1)*

The Debtor fails to establish that, among other things, any of the KEIP participants have a bona fide job offer with other companies at the same or greater rates or that either (a) the new proposed payments are less than ten times the mean of similar payments made to non-management employees during the calendar year, or (b) the proposed payments are less than 25 percent of the amount of any similar payments made to the KEIP participants in the prior year. 11 U.S.C. § 503(c)(1). Accordingly, the Court should conclude that the Debtor has failed to satisfy its burden under section 503(c)(1) and the "incentive" awards should not be approved at this time.

C. **Debtor's KERP Involves Payments to Insiders**

According to the Debtor, the KERP is "designed to ensure the six key employees remain with the Debtor during this chapter 11 case." ECF No. 17 at ¶ 27. Notwithstanding the fact that the Debtor neither identifies the KERP participants by title, nor provides a job description for each employee, the Bonus Motion asserts that the six (6) remaining employees are "staff members." Id. at ¶ 8. However, as set forth above, three (3) of the six (6) remaining employees, i.e., James Walker (Debtor's Chief Executive Officer) Alexandre Agaian (Debtor's Corporate Secretary), and Olga Beliakova (Chief Financial Officer) are insiders.

An officer is a "person holding office and taking part in the management or direction of a society or institution, esp. one holding the office of president, treasurer or secretary." In re Foothills Texas, Inc., 408 B.R. 573, 579 (Bankr. D. Del. 2009). Regardless of title, a person with broad responsibilities over significant aspects of a debtor's business is considered an insider, even if he or she is not a member of senior management. See id. at 584 (finding vice presidents who were not members of senior management, but who had broad responsibilities over significant aspects of debtor's business, to be insiders); see also Borders Group, 453 B.R. at 469

13

("[i]nsider status can also be determined on a case by-case basis based on the totality of the circumstances, including the degree of an individual's involvement in a debtor's affairs"); <u>Office of the United States Trustee v. Fieldstone Mortgage Co.</u>, No. CCB-08-755, 2008 WL 4826291, at *5 (D. Md. Nov. 5, 2008) ("[C]ontrol . . . is an independent additional ground for finding a person an insider, not a feature that officers or directors are required to possess in order to be deemed insiders"); <u>In re Krehl</u>, 86 F.3d 737, 741 (7th Cir. 1996) (definition of insider is illustrative rather than exhaustive);<u>In re Kunz</u>, 489 F.3d 1072 (10th Cir. 2007) (it is not simply the title "director" or "officer" that renders an individual an insider; rather it is the set of legal rights that a typical corporate director or officer holds).

Given that James Walker, Alexandre Agaian, and Olga Beliakova are clearly insiders, the payments to them must satisfy the evidentiary standards set forth in section 503(c)(1). The Debtor has not made any effort to satisfy those standards in the Bonus Motion.

Additionally, the Bonus Motion does not provide information about the titles and job functions regarding the other three (3) remaining employees and, thus, there is insufficient information to make a determination as to whether they are insiders as well.

Furthermore, the Bonus Motion is unclear as to whether the proposed KERP payments include a bonus payment wrapped into $153,203.10 aggregate monthly salary payments to the six (6) remaining employees. The Debtor may very well be authorized to make those payments if they are salary payments in its ordinary course of business. Without more information, the KERP payments are not justified in this case.

### D. Even If the Bonus Plan Were Governed by Sections 503(c)(3) and 363, the Bonus Plan Does Not Satisfy These Statutory Provisions

Finally, if the Court finds that section 503(c)(1) does not apply, the Court may also consider whether the payments are permissible under section 503(c)(3). <u>Dana II</u>, 358 B.R. at 576. Section 503(c)(3) authorizes judicial discretion with respect to bonus plans motivated

14

primarily by reasons other than retention. Id. Should the Court find that section 503(c)(1) does not apply, to grant the Bonus Motion the Court must find that it passes the test of section 503(c)(3) – that it is necessary to preserve the value of the Debtor's estate, and is "justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3); In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001) (administrative expenses may not be allowed unless they are actual and necessary to preserve the estate); see also In re Regensteiner Printing Co., 122 B.R. 323 (N.D. Ill. 1990) (reversing approval of severance agreements for key employees, because debtors presented no evidence that severance payments were necessary to preserve bankruptcy estate).[6]

The Debtor has not established that the bonus plan is justified by the facts and circumstances of this case. Even under the less rigorous standards of sections 503(c)(3) and 363, the benchmarks for the payment of bonuses must be "difficult targets to reach." Dana II, 358 B.R. at 583. In the instant matter, the Debtor fails to explain why the metrics are difficult targets to reach, particularly given that the groundwork for the sale of the assets was already entered into both pre and postpetition and in view of the retention of three auctioneers to assist with the sale of the assets. Additionally, the Debtor does not tie the services of particular individuals to meeting metric thresholds. There is no specific metric or target set for any participant that must be met or accomplished for a bonus award. Therefore, there is little relationship between individual efforts and the bonus awards. The Debtor simply has not provided sufficient information for the Court to approve these awards. Neither the KEIP nor the KERP are justified by the facts and circumstances of this case.

---

[6] Although some courts in this district have determined that the standard under section 503(c)(3) is not different from the business judgment test under section 363(b), see In re Residential Capital, LLC, 491 B.R. 73, 84 (Bankr. S.D.N.Y. 2013) (additional citations omitted), these courts and others continue to apply the factors listed by Judge Lifland in Dana II, when determining if the structure of a compensation proposal and the process for its development meet with the standard under section 503(c)(3).

15

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Bonus Motion and grant such other relief as the Court deems fair and just.

Dated: New York, New York
April 14, 2022

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By:   /s/ Mark Bruh
Mark Bruh
Greg Zipes
Tara Tiantian
Trial Attorneys
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500

16