**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| BUYK CORP., | |
| | Case No. 22-10328-mew |
| Debtor. | |

**APPLICATION PURSUANT TO 11 U.S.C. § 327(a) FOR AUTHORITY TO RETAIN AND EMPLOY WINDELS MARX LANE & MITTENDORF, LLP AS ATTORNEYS TO THE DEBTOR EFFECTIVE APRIL 4, 2022**

---

**TO THE HONORABLE MICHAEL E. WILES,**
**UNITED STATES BANKRUPTCY JUDGE:**

Buyk Corp., as debtor and debtor-in-possession ("**Buyk**" or "**Debtor**") in the above captioned chapter 11 case (the "**Chapter 11 Case**"), respectfully submits this Application for Approval of the Employment of Windels Marx Lane & Mittendorf, LLP ("**Windels Marx**" or the "**Firm**"), as substitute bankruptcy counsel for the Debtor to replace Akerman LLP ("**Akerman**"), pursuant to sections 327(a), 328 and 1107 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and requests that the Court enter an order substantially in the form attached hereto as **Exhibit A** granting the Application. In support of the Application, the Debtor relies upon the Affidavit of James Sullivan, Esq. in Support of the Application for Approval of the Employment of Windels Marx as Attorneys for the Debtor (the "**Sullivan Affidavit**") attached hereto as **Exhibit B** and the engagement letter for the Debtor's retention of Windels Marx attached hereto as **Exhibit C**. The Debtor presents this Application and respectfully states as follows:

**A.**     **Jurisdiction; Venue; Statutory Bases for Relief**

1.     The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the

{12029276:4}

Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue of this case and of this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Code § 327(a) and Bankruptcy Rules 2014(a) and 2016. The subject matter of this Application is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**B.**    **Background**

2.    On March 17, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as Debtor and Debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Case.

3.    Contemporaneously with the filing of its first-day motions, the Debtor filed declaration testimony by its chief executive officer, James Walker (Doc. No. 9) (the "**Walker Declaration**"), which contains additional background information on the Debtor and its operations. The contents of the Walker Declaration are incorporated by reference, as if set forth herein verbatim, pursuant to Federal Rule of Civil Procedure 10(c), as made applicable by Bankruptcy Rule 7010.

4.    The application of the Debtor for an order authorizing the retention of Akerman remains pending before the Court. On April 5, 2022, Akerman filed a notice of presentment of an order authorizing approval of its retention application (Doc. No. 86) ("**Notice of Presentment**"). On April 8, 2022, Debtor filed a withdrawal of the Notice of Presentment (Doc. No. 98) in order to have Windels Marx and Akerman file retention applications and to reflect changes to the scope and duration of Akerman's retention and employment for which it has sought Court approval (the "**Notice of Withdrawal**").

5.      Following the Petition Date, the Debtor requested that the Firm be retained to act as substitute bankruptcy counsel for the Debtor because it determined that Windels Marx was better able to effectively and efficiently represent the interests of the Debtor and its estate ("**Estate**") going forward.  Buyk signed its engagement letter with Windels Marx on April 4, 2022.  Akerman was notified of the decision to replace Akerman with Windels Marx on April 6, 2022.

6.      To date, Akerman has undertaken numerous tasks on behalf of the Debtor in anticipation of approval of its retention application. Akerman and the Firm are coordinating to make as seamless a transition as possible to the representation of Debtor, and to minimize overlap or duplication of efforts. It is expected that Akerman may be asked to conclude certain discrete projects that it had already begun undertaking before it winds down its representation of Debtor. It is possible that Akerman may also be asked to represent the Debtor as conflicts counsel should any conflicts arise in connection with the Firm's representation.

7.      In connection with Windels Marx substituting for Akerman as Debtor's attorneys and the Notice of Withdrawal, contemporaneously herewith the Debtor has filed an amended application to retain Akerman as attorneys for the Debtor from the Petition Date through April 6, 2022.

**C.      Relief Requested**

8.      By this Application, the Debtor seeks this Court's approval of an order to retain and employ Windels Marx, located at 156 West 56th Street, New York, New York 10019, as its bankruptcy counsel in this case, under a general retainer, effective April 4, 2022.  The Debtor requests that the Court approve the retention of Windels Marx to perform services that will be necessary during the pendency of this Chapter 11 Case in accordance with the Firm's hourly rates and policies in effect when the Firm renders the services or incurs the expenses.  The

attorneys of Windels Marx who will be assigned to this case are duly admitted members in good standing in the Bar of the State of New York and in this Court and are well qualified to represent the Debtor.

9.      The Debtor has selected Windels Marx to act as its bankruptcy counsel in this Chapter 11 Case because of the Firm's extensive knowledge and expertise in the areas of law relevant to the Chapter 11 Case. The members of the Firm's bankruptcy practice group have significant experience in all facets of business reorganization and liquidation, debtor and creditor rights, bankruptcy practice and litigation. Windels Marx has extensive experience practicing before bankruptcy courts in New York.

10.     The Debtor has been informed that James Sullivan, Esq. will act as lead Windels Marx counsel for the Debtor in the Chapter 11 Case. Mr. Sullivan can be contacted at Windels Marx, (212) 237-1170, e-mail: Jsullivan@windelsmarx.com. Mr. Sullivan's State Bar Number is 2729135. The Debtor will require counsel to provide legal services relating to the administration of the Debtor's Chapter 11 case, and advice regarding those issues that may arise from the management of the Debtor's legal affairs, including, without limitation:

a.      Advising the Debtor regarding its powers and duties as Debtor-in-Possession in the liquidation of its business;

b.      Advising the Debtor with respect to all general bankruptcy matters;

c.      Attending meetings and negotiating with representatives of creditors and parties in interest;

d.      Preparing, on behalf of the Debtor, all necessary motions, applications, answers, orders and related pleadings, reports, and papers in connection with the administration of its Estate;

e.      Representing the Debtor at all critical hearings on matters relating to its affairs and interests as Debtor-in-Possession before this Court, any appellate courts, and the United States Supreme Court, and protecting the interests of the Debtor;

f.      Taking necessary action to protect and preserve the Debtor's Estate, including prosecuting actions on the Debtor's behalf and defending actions commenced against the Debtor and the Estate, and representing the Debtor's interests in negotiations concerning litigation in which it or the Estate are involved, including, but not limited to, claims filed against the Debtor's Estate and such matters as may be necessary for the protection of the Debtor's rights, the preservation of the Estate's assets, or the Debtor's successful orderly liquidation;

g.      Advising the Debtor in connection with the disposition of the Debtor's assets;

h.      Negotiating appropriate transactions and preparing any necessary documentation related thereto;

i.      Representing the Debtor on matters relating to the assumption or rejection of executory contracts and unexpired leases;

j.      Preparing a chapter 11 plan;

k.      Advising the Debtor with respect to general corporate, real estate, litigation, intellectual property, environmental, labor, regulatory, employment, tax, and other legal matters which may arise during the pendency of this Chapter 11 Case; and

l.      Performing such other necessary legal services needed to address issues or complications that may arise during the pendency of this Chapter 11 Case and ensure its efficient and economic administration.

11.     Windels Marx has advised Debtor of its willingness to replace Akerman as bankruptcy counsel to the Debtor in this Chapter 11 Case and to receive compensation on an hourly basis, subject to the approval of the Court.

**D.      Windels Marx Is A "Disinterested Person" as Defined in the Bankruptcy Code**

12.     The Debtor is unaware of any circumstances where Windels Marx was adverse to the Debtor. The Debtor has been informed that Windels Marx's conflicts database management system holds no information that would suggest that Windels Marx is now or has ever been adverse to the Debtor.

13.     Other than Firm's representation of parties in interest as described in the Sullivan Affidavit, the Debtor and Windels Marx have not identified any other connections between the Debtor's top 20 unsecured creditors, equity holders, landlords of the Debtor or insiders and Windels Marx. To the best of the Debtor's knowledge, the partners, counsel and associates of Windels Marx do not have any other connection with or any interest adverse to the Debtor, top 20 unsecured creditors, equity holders or insiders, or its respective attorneys and accountants or the United States Trustee or any person employed in the office of the United States Trustee, except as set forth herein and in the annexed Sullivan Affidavit.

14.     Fed. R. Bankr. P 2014(a) also requires a disclosure of all connections with the "Debtor, creditors, any other party in interest, their respective attorneys and accountants. . . ."

15.     As expected, the results of these searches revealed no conflict of interest with regard to the Firm's anticipated representation of the Debtor.

16.     To the best of the Debtor's knowledge, based upon the attached Sullivan Affidavit as of the Petition Date, Windels Marx is not owed any fees or reimbursement of expenses by the Debtor, and therefore is not a creditor of the Debtor and does not hold an interest adverse to the Debtor's Estate.

17.     Based upon the Sullivan Affidavit, Windels Marx represents no entity in connection with this case, is a disinterested person and represents or holds no interest adverse to that of the Debtor or the Estate with respect to the matters for which it is to be retained, and the employment of the Firm as counsel for the Debtor would be in the best interest of the Estate.

18.     Based upon the Sullivan Affidavit, the Debtor submits that Windels Marx is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14).  The Debtor has been informed that Windels Marx will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Windels Marx will supplement its disclosure to the Court.

19.     Except as may otherwise be set forth above and in the Sullivan Affidavit, the Firm has represented to the Debtor that it has not represented and will not represent any parties other than the Debtor in this case or in connection with any matters that would be adverse to the Debtor arising from, or related to, this case.

20.     More specifically, as set forth in the Sullivan Affidavit, Windels Marx, its partners, counsel and associates:

(a)     are not creditors, equity security holders or insiders of the Debtor;

(b)     are not and were not, within two years before the Petition Date, directors, officers or employees of the Debtor; and

(c)     do not have an interest materially adverse to the interest of the Debtor's Estate or of any class of creditors or equity security holders by reason of any direct or

indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

21.     The Debtor desires to employ Windels Marx as counsel under a general retainer due to the extensive legal services that will be required during the pendency of this casee, as of April 4, 2022, the date Windels Marx began rendering services to the Debtor in this case.

22.     The Debtor understands that during the bankruptcy case, Windels Marx may apply to the Court for allowance of compensation and reimbursement of actual and necessary expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, guidelines established by the UST, and orders of this Court for all services performed and expenses incurred after the Petition Date.

23.     Pursuant to Bankruptcy Code § 328(a), the Debtor may retain Windels Marx on any reasonable terms and conditions.  The Firm submits that the most reasonable terms and conditions are those charged by Windels Marx to the Debtor and other clients on a daily basis in a competitive market for legal services.  Nevertheless, the Debtor and Windels Marx have agreed that Windels Marx will be paid a modification of its customary hourly rates of services rendered, as set forth below and in the Sullivan Affidavit, and that it will be reimbursed according to Windels Marx's customary reimbursement policies.

24.     Pursuant to Bankruptcy Code § 330(a)(1)(A), the Court may award reasonable compensation for actual and necessary expenses and services rendered in conjunction with the Debtor's case.  Windels Marx's current hourly rates and reimbursement policies are what the general marketplace for legal services pays Windels Marx in other matters every day, and are reasonable as determined by the market at arm's length.

25.     Windels Marx's current regular hourly rates range from $670 to $1,030 for partners, from $575 to $595 for associates, from $795 to $860 for counsel, and from $280 to

$395 for paraprofessionals. Nothwithstanding the foregoing, Windels Marx has notified the Debtor that it will limit its 2022 rates to $615 for partners and of counsel, $595 for associates, and $395 for paraprofessionals.  Windels Marx adjusts its hourly rates annually in January.

26.     Ten business days prior to any increases in the Firm's rates, for any individual employed by Windels Marx and retained by the Debtor providing services in this case, Windels Marx shall file a supplemental affidavit with the Court setting forth the basis for the requested rate increase pursuant to Bankruptcy Code § 330(a)(3)(F).

27.     The Debtor, after reviewing the problems and difficulties that may arise during the pendency of this case, believes that the employment and retention of Windels Marx on the terms and conditions set forth herein is necessary and in the best interests of the Debtor, the Debtor's Estate, and its creditors.  Windels Marx is well qualified to perform the legal services as described above, and the Debtor knows of no reason why Windels Marx should not be retained. The Debtor requests that the Court enter an Order approving its retention and employment of Windels Marx as its bankruptcy counsel.

28.     No previous application for the relief requested herein has been made to this or any other Court.

**E.    Notice**

29.     The Debtor has caused a copy of this Application to be served upon (i) the Top 20 unsecured creditors; (ii) the United States Trustee; (iii) those persons who have formally appeared in the Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002; and (iv) all applicable government agencies to the extent required by the Bankruptcy Rules and the Local Rules. The Debtor submits that no other or further notice need be provided.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order approving the relief requested herein, including authorizing the retention and employment of Windels Marx

as its bankruptcy counsel under a general retainer as of April 4, 2022, and granting such other

and further relief as may be just.

Dated: New York, New York
       April 21, 2022

Respectfully submitted,

JAMES WALKER
as Chief Executive Officer of the Debtor

# **<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUYK CORP., | ) | Case No. 22-10328 (MEW) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER APPROVING APPLICATION FOR APPROVAL OF THE EMPLOYMENT AND RETENTION OF WINDELS MARX LANE & MITTENDORF, LLP AS INCOMING GENERAL BANKRUPTCY ATTORNEYS FOR THE DEBTOR

Upon the Application of Buyk Corp. (the "**Debtor**"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), for entry of an order authorizing the Debtor to employ and retain Windels Marx Lane & Mittendorf, LLP ("**Windels Marx**") as incoming general bankruptcy counsel for the Debtor effective April 4, 2022 [ECF No. ___] (the "**Application**"),[1] and upon the exhibits attached to the Application, specifically the affidavit of James M. Sullivan in support of the Application ("**Sullivan Affidavit**") and the engagement letter for Debtor's retention of Windels Marx (the "**Engagement Letter**"), this Court finds that (i) it has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Application is in the best interests of the Debtor, its estate, and its creditors and relief under Rule 6003 of the Federal Rules of Bankruptcy Procedure and approving employment of Windels Marx effective as of April 4, 2022 is necessary to avoid immediate and irreparable harm; (iv) Windels Marx is a "disinterested person" as that term is defined under Bankruptcy Code section 101(14) as modified by Bankruptcy Code section 1107(b); (v) proper and adequate notice of the Application has been given and that no other or further notice is

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

{12034686:2}

necessary; (vi) no objections have been filed to this Application [or all objections to the Application have been resolved by this Order or are overruled in their entirety]; and (vii) upon the record herein after due deliberation thereon good and sufficient cause exists for the granting of the relief as set forth herein.

IT IS THEREFORE ORDERED:

1.      The Application is GRANTED as set forth herein.

2.      Pursuant to section 327(a) of the Bankruptcy Code, the Debtor is authorized to retain Windels Marx, as bankruptcy counsel, effective as of April 4, 2022, in accordance with and on the terms described in the Application, the Sullivan Affidavit, the Engagement Letter, and this Order, and to perform the services described therein.

3.      The requirements of section 329 of the Bankruptcy Code have been satisfied.

4.      Windels Marx shall be compensated upon appropriate application and notice in accordance with Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Bankruptcy Rules, including any applicable procedures and orders of this Court.

5.      Prior to any increases in Windels Marx's rates for any individual retained by Windels Marx and providing services in this case, Windels Marx shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtor, the United States Trustee, and any official committee.  The supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtor has consented to the rate increase.  The United States Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code.

6.      The fee structure set forth in the Application is approved.

7.      No work performed by Windels Marx shall be unnecessarily duplicative of work performed by any other counsel retained by the Debtor in the Chapter 11 Case.

8.      If there is any inconsistency between the terms of this Order, the Application, the Engagement Letter, and the Sullivan Affidavit, the terms of this Order shall govern.

9.      The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
       April ____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE


NO OBJECTION: UNITED STATES TRUSTEE

By:     /s Mark Bruh_____
        Mark Bruh, Trial Attorney

# EXHIBIT B

{12036639:1}

WINDELS MARX LANE & MITTENDORF, LLP
*Proposed Attorneys for Debtor and Debtor-in Possession*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re <br><br> BUYK CORP., <br><br><div align="right">Debtor.</div> | Chapter 11 <br><br> Case No. 22-10328-mew |

**AFFIDAVIT OF JAMES M. SULLIVAN IN SUPPORT OF APPLICATION**
**PURSUANT TO 11 U.S.C. § 327(a) FOR AUTHORITY TO**
**RETAIN AND EMPLOY WINDELS MARX LANE & MITTENDORF, LLP**
**AS ATTORNEYS TO THE DEBTOR EFFECTIVE APRIL 4, 2022**

STATE OF NEW YORK  )
         ) ss.:
COUNTY OF NEW YORK  )

JAMES M. SULLIVAN, being duly sworn, deposes and says:

1.  I am a member of the law firm of Windels Marx Lane & Mittendorf, LLP ("**Windels Marx**"), which maintains offices located at 156 West 56th Street, New York, New York 10019, and all of whose members, counsel, and associates who will be assigned to this case are duly admitted to practice in this Court.

2.  I submit this Affidavit in support of the application ("**Application**") by Buyk Corp., as debtor and debtor-in-possession ("**Buyk**" or "**Debtor**") in the above captioned chapter 11 case (the "**Chapter 11 Case**"), for Approval of Windels Marx as bankruptcy counsel for the Debtor, to replace Akerman LLP ("**Akerman**"), pursuant to sections 327(a), 328 and 1107 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and to provide the disclosure required

pursuant to Bankruptcy Rules 2014(a) and 2016(b), on the terms and conditions set forth in the Application.

3.      Subject to discovery of any further information, it appears that neither Windels Marx nor I have any conflicts at this time.

4.      The Firm conducted a search of creditors and other parties in interest provided to it by the Debtor (including all the top 20 unsecured creditors) against its client database for any potential conflicts. The entity "Beam Bike Corp." is not one of the top 20 unsecured creditors, but has been identified as a creditor of the Debtor's.  Beam Bike Corp. is a client of the Firm. However, the Firm has not represented Beam Bike Corp. in any matter related to the Debtor or the Debtor's Estate.  Should any dispute arise in the Debtor's case in which the Debtor is adverse to Beam Bike Corp., then Debtor will retain Akerman or other conflicts counsel to address any such dispute, including any dispute relating to any claim filed by Beam Bike Corp.  Windels Marx will not represent Beam Bike Corp. in connection with the Debtor's case.

5.      Except as disclosed above, neither I, Windels Marx, nor any member or associate thereof, insofar as I have been able to ascertain, have any connection with the Debtor, its creditors, or any party in interest.

6.      Except as set forth above, neither deponent nor his firm holds or represents any interest adverse to the Debtor, or any class of creditors herein, in connection with the matters upon which it is to be engaged.

7.      Windels Marx is not owed any fees or reimbursement of expenses by the Debtor, and therefore is not a creditor of the Debtor.  Windels Marx has not represented and will not represent any parties other than the Debtor in this case or in connection with any matters that would be adverse to the Debtor arising from, or related to, this case.

8.      More specifically, Windels Marx, its partners, counsel and associates:

(a)     are not creditors, equity security holders or insiders of the Debtor;

(b)     are not and were not, within two years before the Petition Date, directors, officers or employees of the Debtor;

(c)     have no connection to Judge Michael E. Wiles or any member of His Honor's Chambers; and

(d)     do not have an interest materially adverse to the interest of the Debtor's Estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

9.       Windels Marx is disinterested as that term is defined in Bankruptcy Code § 101(14).

10.     Windels Marx seeks to be retained as of April 4, 2022, the date Windels Marx began rendering services to the Debtor.

11.     Pursuant to Bankruptcy Code § 330(a)(1)(A), the Court may award reasonable compensation for actual and necessary expenses and services rendered in conjunction with the Debtor's case.  Windels Marx's current hourly rates and reimbursement policies are what the general marketplace for legal services pays Windels Marx in other matters every day and are reasonable as determined by the market at arm's length.

12.     Windels Marx's current regular hourly rates range from $670 to $1,030 for partners, from $575 to $595 for associates, from $795 to $860 for counsel, and from $280 to $395 for paraprofessionals.  Notwithstanding the foregoing, Windels Marx has notified the Debtor that it will limit its 2022 rates to $615 for partners and of counsel, $595 for associates, and $395 for paraprofessionals.  Windels Marx adjusts its hourly rates annually in January.

13.     Ten business days prior to any increases in Windels Marx's rates, for any individual employed by Windels Marx and retained by the Debtor providing services in this case, Windels Marx shall file a supplemental affidavit with the Court setting forth the basis for the requested rate increase pursuant to Bankruptcy Code § 330(a)(3)(F).

14.     No agreement exists between Windels Marx and any third person for the sharing of compensation in connection with this case, except as allowed by Bankruptcy Code § 504(b) and Bankruptcy Rule 2016 in respect to sharing of compensation among members and associates of Windels Marx.

*/s/ James M. Sullivan*
James M. Sullivan

Sworn to before me this 21st day of April 2022

*/s/ Maritza Segarra*
Maritza Segarra
Notary Public, State of New York
No. 01SE4652865
Qualified in Westchester County
Commission Expires December 31, 2025

# **EXHIBIT C**

{12036639:1}



**WINDELS MARX** | Windels Marx Lane & Mittendorf, LLP

windelsmarx.com

**Leon Yel**
212.237.1232
lyel@windelsmarx.com

156 West 56th Street | New York, NY 10019
T. 212.237.1000 | F. 212.262.1215

March 17, 2022

Buyk Corp.
360 West 31st Street
Floor 6
New York, NY 10001

Re:    **Retainer Agreement**

Dear Client:

We are very pleased that you have chosen to retain Windels Marx Lane & Mittendorf, LLP (the "Firm") to represent Buyk Corp. ("Client" or "you") to represent you as general bankruptcy counsel in connection with your recently filed chapter 11 bankruptcy case. The purpose of this letter is to set forth the basic terms and conditions of our attorney/client relationship and the basis for the fees to be charged for this engagement.

1.    Scope of Engagement. This Engagement Letter Agreement (the "Agreement") confirms the terms of the Firm's representation. The scope of this engagement is to represent you as general bankruptcy counsel in connection with your recently filed chapter 11 bankruptcy case (the "Representation"). Should the scope of the Representation expand or should you ask the Firm to represent you on additional matters, the specifics of this Agreement will remain the same unless otherwise communicated.

2.    Staffing and Attorney-Client Interactions. James M. Sullivan will have primary responsibility for the Representation and may utilize other Firm lawyers and paraprofessionals when deemed appropriate and cost effective. We will do our best to staff this engagement as efficiently and economically as appropriate to the project. Although we reserve the right to make all staffing decisions, if you have any concern in this area, please do not hesitate to contact me.

Given that we will be replacing Akerman LLP as your general bankruptcy counsel in the bankruptcy case, initially we will work with attorneys at Akerman LLP to transition the matter to the Firm as smoothly and efficiently as possible.

3.    <u>Billing Policies and Procedures</u>.  Our fees are based principally on the number of hours devoted to the client's matter computed in fractional periods of not less than one tenth of an hour.  Mr. Sullivan's normal billing rate is $810 per hour.  For this matter, he is willing to discount his personal billing to $615 per hour.  The rates of other lawyers who may work on the matter would be less than Mr. Sullivan's rate.  The Firm generally adjusts its rates January first of each year.

Our retention is subject to (i) inclusion of an adequate professional fee carveout to be included in any debtor-in-possession financing and cash collateral orders and (ii) bankruptcy court approval.

In the course of our engagement, we will use our available support systems.  In addition to our fees for legal services, we charge an additional fee for certain disbursements, including facsimile, routine copying and, to the extent permitted by law, non-legal staff overtime.  We also may charge separately for larger disbursements, including document bate stamping and production, computer research facilities (LEXIS, Westlaw, and other external databases), travel, filing fees and other fees and expenses payable to third parties incurred on your behalf. Relatively large disbursement amounts may be forwarded by us to you for direct payment to the supplier or service provider.

4.    <u>Statement of Client's Rights and Responsibilities</u>.  We have attached hereto a Statement of Client's Rights and Responsibilities which is incorporated herein by reference.

We request that you review this letter carefully and let us know if there is any provision that you do not understand.  If the terms of this letter are consistent with your understanding of the terms and conditions of our relationship, please sign the enclosed copy of this letter and return it to me.  We suggest that you keep a copy of this letter in your files.

The essence of a satisfactory and productive attorney/client relationship is good communication.  If you have any questions or concerns about any aspect of our services or the relationship, please do not hesitate to call me.

We are very pleased to have this opportunity to be of service and look forward to working with you on this engagement.

Very truly yours,

Leon A. Yel, Esq.


**AGREED TO AND ACCEPTED:**

Buyk Corp.

By: _____

Name:

Title:

**<u>Wire and Payment Information</u>**

**Please make all checks payable to:**
**Windels Marx Lane & Mittendorf, LLP**
**Or For Wire Transactions:**
**Please Remit in U.S. Dollars**
**Via Check to our address above or by Wire Transfer to:**
WINDELS MARX LANE & MITTENDORF, LLP
Wells Fargo Bank, N.A.
**Account No.  2000012980996**
ABA/Routing No. for Wire Transfers 121000248
Swift No. WFBIUS6S – Wells Fargo Bank, N.A.

**Please put this reference on check or wire transfer**
**c/m#: Buyk Corp.**

# WINDELS MARX LANE & MITTENDORF, LLP
# TERMS OF ENGAGEMENT FOR LEGAL SERVICES

This statement, which supplements the attached engagement letter, sets forth the terms upon which Windels Marx Lane & Mittendorf, LLP (the "**Firm**") agrees to provide legal services to you. Any agreement or understanding to modify or depart from the terms of the engagement letter, including this statement, must be in writing and signed by a member of the Firm.

## Expressions of Opinion

We are sometimes asked by a client to express our verbal or written view or opinion as to the possible or likely outcome of the matter on which we are working. Such opinions are not assurances or guarantees. Opinions are necessarily limited by many factors, including our understanding of the facts, the complexity of the legal issues and the uncertainty of the state of the law at the time they are expressed. Furthermore, the extent of factual inquiry and legal research devoted to such opinions will vary based upon our client's desires. For example, a written formal opinion, which is intended to be relied upon to the extent stated therein generally represents a substantially greater degree of factual investigation and legal research than a verbal or informal expression of opinion, which may be based only on the lawyer's professional judgment exercised without legal research or factual due diligence.

## Who Will Provide the Services

In addition to our partners, counsel and associates, we employ various legal assistants who are not lawyers but possess training, experience and skills that enable them to assist our lawyers in discharging their responsibilities. These assistants may include law clerks (typically law students), paralegals, research librarians, investigators, analysts, and other technical (non-legal) specialists. In addition, it is possible that an attorney involved in your matters may be in the process of applying for admission to the New York Bar. This is often the case with recent law school graduates and occasionally may be true of more senior attorneys admitted in other jurisdictions who have recently joined the Firm.

## Other Charges

We also itemize and bill our clients for other charges and disbursements. Typical of such charges are copying, messenger, courier, and express delivery charges; meals and carfare relating to overtime; filing fees; deposition and transcript charges; witness fees; travel expenses; computerized legal research charges and charges made by outside experts and consultants, including accountants, appraisers, and other legal counsel (unless arrangements have been made for such outside experts and consultants to bill the client directly). Certain of these charges may not involve actual out-of-pocket expenses or may represent more than our direct out-of-pocket cost. We reserve the right to adjust our charges at any time. We incur outside charges as agents for our clients, who agree that these charges will be timely paid on a regular basis.

{12022929:3}                                                    4

### Billing Arrangements and Terms of Payment

We will bill you on a regular basis, normally each month, for fees and disbursements.  If you have any question about a bill, please contact us immediately.

### Client Satisfaction

It is our goal to provide satisfactory services to our clients.  If you are dissatisfied with any aspect of the services we are providing or our billing for those services, it is incumbent on you to communicate your concerns to us promptly, so that we may address them.  Initially, you should speak with the attorney responsible for the matter in question, but if that does not provide satisfaction, you should contact the client relationship partner or the managing partner of the Firm.

### Termination and Withdrawal

A client may terminate our representation at any time without cause simply by notifying us.  If termination occurs, the client's papers, property and funds will be returned promptly, subject to payment of all outstanding fees and charges.  New York law provides attorneys with a lien for unpaid fees and charges on a client's papers and on the proceeds of any litigation in which the lawyer has appeared.  A client's termination of our services will not affect the client's responsibility for payment of fees and other charges incurred before termination and in connection with an orderly transition of the matter.

We also have the reciprocal right, with or without cause, to withdraw from any representation, subject to our obligation when required by ethical rules to give a client reasonable notice so that it can arrange for alternative legal representation.  In addition, we are subject to the New York Rules of Professional Conduct that require or allow us to withdraw from representing a client in several circumstances, including:

- Circumstances where our continued representation of the client will result in violation of the Rules;

- Circumstances where our client insists on pursuing an objective that we consider repugnant or imprudent;

- Circumstances where a client fails substantially to fulfill an obligation to us regarding our services (including prompt payment of fees and other charges); and

- Circumstances where our continued representation of the client will result in an unreasonable financial burden on us or has been rendered unreasonably difficult by the client.

### New York Law

Our engagement and all aspects of our relationship shall be governed in all respects exclusively by New York law, without regard to principles of conflict of laws.

### Jurisdiction

You submit to the nonexclusive jurisdiction of the state and federal courts located in the City of New York in any action or proceeding relating to the arbitration of issues arising out of or relating to this engagement. You waive any objections to venue or the defense of an inconvenient forum in any such action or proceeding in any such court. A final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions. You agree that service of process may be made upon you by hand or delivery service or by certified or registered mail.