**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUYK CORP.[1] | ) | Case No. 22-10328 (MEW) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 503 AND 507 (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE SECURED PARTY, (III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion") [ECF No. 13] of Buyk Corp. (the "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), seeking entry of a final order authorizing the Debtor to obtain postpetition financing; and the Court having held hearings on the Motion on March 22, 2022 and April 19, 2022 and having considered the declarations offered into evidence and the arguments of counsel at the hearing, IT IS HEREBY FOUND that:

A.      Petition Date.   On March 17, 2022 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Bankruptcy Code chapter 11;

B.      Debtor in Possession.  The Debtor is in possession of its properties and continues to operate its businesses as a debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case;

C.      Jurisdiction and Venue.  This Court has jurisdiction over the Chapter 11 Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C.

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 360 West 31st Street, Floor 6, New York, NY 10001.

§ 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this final order consistent with Article III of the United States Constitution;

D.    Creditors' Committee.  As of the date hereof, the United States Trustee for the Southern District of New York (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (a "Creditors' Committee");

E.    Adequate Notice.  Under the circumstances, the notice given by the Debtor of the Motion and the hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Code section 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 4001, and LBR 4001-2, such that no other or further notice of the Motion or entry of this Final Cash Collateral Order is needed;

F.    Sufficient Cash Collateral.  Sufficient Cash Collateral exists for the Debtor to operate this case without the need for additional borrowing through July 19, 2022, and thus, only partial relief in the form of an order authorizing the use Cash Collateral (the "Final Cash Collateral Order") is warranted at this time.  Entry of this Final Cash Collateral Order does not limit the Debtor from seeking additional borrowing or other appropriate relief pursuant to the Motion in the future, if necessary;

G.    Debtor's Stipulations.  Without prejudice to the rights of any party to assert Claims and Defenses (as defined herein) prior to expiration of the Challenge Period (as defined herein) as more particularly set forth in Paragraph 4 of this Final Cash Collateral Order, and without these matters constituting factual findings by the Court, the Debtor represents, admits, stipulates, and agrees (collectively, the "Debtor's Stipulations") as follows:

a. <u>Prepetition Term Loan Credit Agreement</u>. The Debtor is a borrower under that certain Prepetition Term Loan Credit Agreement, dated March 11, 2022, (together with any and all related collateral and security documents, guarantees and other loan documents, the "<u>Secured Credit Documents</u>" and any and all related obligations thereunder, the "<u>Secured Obligations</u>")[2] between the Debtor and Legalist DIP GP, LLC (in such capacity, the "<u>Secured Party</u>").

b. <u>Prepetition Collateral</u>. The Prepetition Term Loan Agreement is secured by substantially all assets of the Debtor (the "<u>Prepetition Collateral</u>" and all liens and security interests therein, the "<u>Prepetition Liens</u>")[3] and constitute the legal, valid and binding obligations of the Debtor, enforceable in accordance with the Secured Credit Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

c. <u>Cash Collateral</u>. Any and all of the Debtor's cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtor, and any amounts generated by the collection of accounts receivable, the exercise of letter of credit rights, the sale of inventory or other disposition of the Prepetition Collateral, and the proceeds of any of the foregoing is the Secured Party's cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

d. <u>Secured Obligations</u>. As of the Petition Date, the Debtor, without defense, counterclaim, or offset of any kind is indebted and liable to the Secured Party under the Secured Credit Documents in the principal amount set forth therein and incorporated herein by reference, exclusive of accrued and unpaid interest, premiums, if any, and certain fees, costs, expenses, indemnification obligations, charges and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued accruing, due, owing or chargeable in respect of any of the Secured Obligations.

e. <u>Prepetition Liens</u>. The Prepetition Liens granted to the Secured Party in the Prepetition Collateral pursuant to and in connection with the Secured Credit Documents, (i) are valid, binding, perfected, and enforceable first priority

---

[2] A summary of the Secured Obligations is attached hereto as **Exhibit A**. A copy of the Secured Credit Documents is attached hereto as **Exhibit B**.

[3] For the avoidance of doubt, the Prepetition Collateral shall not include (a) Debtor's real property leases to the extent any Prepetition Liens thereon would be prohibited by the applicable lease after giving effect to any applicable law regarding the enforceability of such prohibition, (b) property owned by the landlords of Debtor's real property leases, provided however, that any proceeds from the Debtor's real property leases are expressly incorporated in the Prepetition Collateral and secured by the Prepetition Liens, (c) any produce or products subject to the trust provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.* ("PACA") or the proceeds thereof but only to the extent of the interests of holders of valid and timely asserted claims with respect to such produce, products, or proceeds (the "PACA Trust Claims"), or (d) property not part of the Debtor's estate pursuant to 11 U.S.C. § 541(d).

liens and security interests in the Prepetition Collateral, and (ii) constitute the legal, valid, and binding obligation of the Debtor, enforceable in accordance with the terms of the applicable Secured Credit Documents.

    f.   <u>No Claims Against Secured Party</u>. The Debtor and its estate have no claims, objections, challenges, causes of action and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Secured Party, or any of its agents, attorneys, advisors, professionals, officers, directors, and employees in respect of the Prepetition Liens, the Secured Obligations or the Secured Credit Documents.

    g.   <u>Payment of PACA Trust Claims</u>. Debtor may pay all PACA Trust Claims in accordance with the Budget (as defined *infra*) and Debtor's Motion for Entry of an Order (I) Establishing a Procedure for Determining Claims Arising Under the Perishable Agricultural Commodities Act and the Packers and Stockyards Act; (II) Authorizing the Debtor to Pay Certain Pre-Petition Claims Arising Under the Perishable Agricultural Commodities Act and the Packers and Stockyards Act; and (III) Granting Related Relief (Docket No. 87) (the "PACA Motion").

    H.   <u>Necessity for Relief Requested; Immediate and Irreparable Harm</u>. The Debtor requested entry of this Final Cash Collateral Order pursuant to Bankruptcy Rule 4001(b)(2). The Debtor has a need to use the Prepetition Collateral, including Cash Collateral to, pay expenses and thereby to preserve and maintain the value of the Debtor's assets, absent which irreparable harm will result to the Debtor, its estate, the creditors, and other stakeholders.

    I.   <u>Good Cause</u>. Good cause has been shown for entry of this Final Cash Collateral Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules, and the entry of this Final Cash Collateral Order is in the best interests of the Debtor, its estate, the creditors, and other stakeholders.

    J.   <u>Good Faith</u>. The Debtor and the Secured Party represent that the Debtor's use of Cash Collateral has been negotiated in good faith and at arms' length between the Debtor and the

Secured Party and the Secured Party's consent to the Debtor's use of Cash Collateral has been

made in "good faith."

**BASED UPON FOREGOING AND THE RECORD AT THE HEARING, IT IS HEREBY ORDERED:**

1.      <u>Motion Granted in Part.</u>  The Motion is <u>GRANTED</u> in part on a final basis.  The Court will

hear balance of the relief requested in the Motion at such other time scheduled by the Court.  Any

remaining objection to the Motion or entry of this Final Cash Collateral Order is hereby

<u>OVERRULED</u>.

2.      <u>Authorization to Use Cash Collateral.</u>  The Debtor is authorized to use Cash Collateral

during the period from the Petition Date through and including the Termination Date (as defined

herein) pursuant to the terms and conditions provided herein.

3.      <u>Budget.</u>

   a.      Except as otherwise provided herein, the Debtor may only use Cash Collateral
           in the manner set forth in the budget approved by the Secured Party (as the same
           may be updated in accordance with the terms of the Prepetition Term Loan
           Agreement, the "<u>Budget</u>") and for no other purposes.  The Budget attached
           hereto as **Exhibit C**.

   b.      The Debtor shall be deemed to be in compliance with the Budget so long as the
           Debtor provides to the Secured Party on or before the first Tuesday of each
           month (each in the Approved Form):

      i       A variance report (certified by an appropriate officer of the Debtor)
              comparing, on a line-item basis, actual cash receipts and disbursements
              to those contained in the Budget, for both the preceding month and
              cumulatively from the date hereof, together with detailed explanations
              of all variances (if any); and

      ii      A rolling 13-week cashflow forecast for the Debtor.

           In no event shall actual cash receipts vary downward, or cash disbursements
           vary upward, from the Budget (on a line-item, monthly, or cumulative basis) by
           more than 7.5% (the "Permitted Variances").

4.    <u>Effect of Stipulations on Third Parties</u>.

a.    The Debtor's acknowledgments, stipulations, admissions and waivers set forth in this Final Cash Collateral Order, including in <u>Paragraph G</u> hereof, shall be binding on the Debtor except to the extent specified in this paragraph 4.

b.    The acknowledgments, stipulations, admissions, waivers and releases contained in this Final Cash Collateral Order, including in <u>Paragraph G</u> hereof, shall also be binding upon the Debtor's estate and all parties in interest, including the Creditors' Committee, if any, or any chapter 7 or chapter 11 trustee appointed or elected for the Debtor (a "<u>Trustee</u>"), unless (a) such party has duly filed an adversary proceeding challenging the validity, perfection, priority, extent or enforceability of the Prepetition Liens, the Secured Credit Documents or the Secured Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "<u>Claims and Defenses</u>") against the Secured Party in connection with any matter related to the Prepetition Collateral, the Prepetition Liens, the Secured Credit Documents or the Secured Obligations by no later than (i) with respect to any Creditors' Committee, the date that is sixty (60) days after entry of a Final Order (or such longer period as the Court orders for cause shown before the expiration of such period), (ii) with respect to other parties in interest, the date that is seventy-five (75) days after the entry of a Final Order with respect to the Motion (or such longer period as the Court orders for cause shown before the expiration of such period) or (iii) any such later date agreed to in writing by the Secured Party in its sole and absolute discretion (the time period established by the foregoing clauses (i), (ii) and (iii), the "<u>Challenge Period</u>"); and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding.

c.    For the avoidance of doubt, any Creditors' Committee, party in interest or trustee shall be deemed to have standing to assert a challenge as to the amounts owed to the Secured Party and/or the validity or perfection of the Prepetition Liens. A Creditors' Committee shall be deemed to have standing to assert avoidance actions within the Challenge Period against the Secured Party and on behalf of the estate. Any other party in interest who seeks authority to assert avoidance actions on behalf of the estate shall be required to obtain this Court's permission before doing so.

d.    If no such adversary proceeding is timely filed prior to the expiration of the Challenge Period, then (x) the Secured Obligations shall constitute allowed claims, not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by

Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in this Chapter 11 Case and any subsequent chapter 7 case, if any; and (y) the Secured Obligations, the Prepetition Liens, the Secured Credit Documents and the Secured Party (in its capacity as such) shall not be subject to any other or further challenge and any party in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtor's estates or taking any such action, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period) *provided*, that nothing in this Order or in the expiration of the Challenge Period shall prohibit any party in interest from challenging the computations of interest, fees and expenses that are payable or reimbursable under the terms of the Secured Credit Documents.

5.  <u>Termination Date</u>.  The Debtor's authorization, and the Secured Party's consent, to use Cash Collateral shall terminate without further notice or action by the Court on the earliest to occur of (the "<u>Termination Date</u>") any of the following (each a "<u>Termination Event</u>"):

    a.    July 21, 2022 or such later date as may be agreed to in writing by Secured Party or as provided for by further order of the Court;

    b.    following five (5) business days written notice to the Debtor, the failure of the Debtor to comply with any provision, covenant or agreement in this Final Cash Collateral Order (including, without limitation, any failure to comply with a Budget, subject to any permitted variances);

    c.    the Debtor shall grant, create, incur or suffer to exist any postpetition liens or security interests other than (i) those granted pursuant to this Final Cash Collateral Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; and (iv) deposits to secure the payment of any postpetition statutory obligations, surety bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business;

    d.    the entry of an order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

    e.    the entry of an order in this Chapter 11 Case appointing a chapter 11 trustee;

    f.    the Court shall terminate or reduce the period pursuant to section 1121 of the Bankruptcy Code during which the Debtor have the exclusive right to file a plan and solicit acceptances thereof;

7

g.      the entry of an order in the Chapter 11 Cases modifying, staying, reversing or vacating any part of this Final Cash Collateral Order, without the prior consent of the Secured Party;

h.      except as expressly allowed in this Final Cash Collateral Order, an order of this Court shall be entered granting any lien on, or security interest in, any Prepetition Collateral in favor of any party other than the Secured Party, or granting an administrative claim payable by a Debtor to any party other than the Secured Party, that is senior to, or *pari passu* with, the Adequate Protection Superpriority Claim (as defined herein), without the express written consent of the Secured Party;

i.      the Debtor file or support a motion challenging the validity, extent or priority of any of the Prepetition Liens or Secured Obligations; or

j.      the entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting a deed in lieu of foreclosure).

6.      <u>Reporting Requirements/Access to Records</u>.  The Debtor shall provide the Secured Party with all reporting and other information required to be provided to the Secured Party under this Final Cash Collateral Order and such other reporting reasonably requested from time to time by the Secured Party.

7.      <u>Insurance</u>.  At all times the Debtor shall maintain casualty and loss insurance coverage for the Prepetition Collateral on substantially the same basis as maintained prior to the Petition Date.

8.      <u>Adequate Protection</u>.  Subject only to the Carve-Out, the PACA Trust Claims, and the terms of this Final Cash Collateral Order, pursuant to sections 361, 362, 363(e) and 507 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of the value of its interests in the Prepetition Collateral, for and equal in amount to the aggregate postpetition diminution in value of such interests (the "<u>Diminution in Value</u>"), the Secured Party is hereby granted the following:

a.      <u>Adequate Protection Liens</u>.  As security for and solely to the extent of any Diminution in Value, the Secured Party is hereby granted, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, additional and replacement valid, binding, enforceable non-avoidable, and automatically perfected postpetition

8

security interests in and liens (the "Adequate Protection Liens"), without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all property (including any previously unencumbered property), whether now owned or hereafter acquired or existing and wherever located, of the Debtor and its estate (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, equipment, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, proceeds from the disposition of leases, all of the issued and outstanding capital stock of the Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, causes of action, including causes of action arising under section 549 of the Bankruptcy Code (but excluding any causes of action under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions")), all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located, and subject to entry of the Final Order with respect to the Motion, all proceeds and property recovery in respect of Avoidance Actions (collectively, the "Adequate Protection Collateral"). Subject to the terms of this Final Order, the Adequate Protection Liens shall be subordinate only to the (A) Carve-Out and (B) valid, perfected, unavoidable and enforceable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens of the Secured Party pursuant to applicable law. Other than as specifically set forth above, the Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral. The Adequate Protection Liens shall not be (A) subject or junior to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor's estates under section 551 of the Bankruptcy Code or (ii) any lien or security interest arising on or after the Petition Date or (B) subordinated to or made *pari passu* with any other lien, claim or interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

b.     Adequate Protection Superpriority Claim. To the extent of any Diminution in Value, as further adequate protection, and to the extent provided by sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, the Secured Party is hereby granted an allowed superpriority administrative expense claim against the Debtor ahead of and senior to any and all other administrative

expense claims and all other claims asserted against the Debtor (the "Adequate Protection Superiority Claim") other than the Carve-Out. Other than the Carve-Out (which shall have priority over the Adequate Protection Superiority Claim), the Adequate Protection Superiority Claim will not be junior to any claims and shall have priority over all administrative expense claims and all other claims asserted against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final DIP Order), 507(a), 507(b), 546(d), 726, 1113 and 1114.

9.    <u>Perfection of Adequate Protection Liens.</u>

   a.    The Secured Party is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder. Whether or not the Secured Party shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Final Cash Collateral Order. If the Secured Party determines to file or execute any financing statements, agreements, notice of liens or similar instruments, the Debtor shall cooperate and assist in any such execution and/or filings as reasonably requested by the Secured Party, and the automatic stay is hereby modified to allow such filings.

   b.    A certified copy of this Final Cash Collateral Order may, in the sole discretion of the Secured Party, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Cash Collateral Order for filing and recording; *provided* that, notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of this Final Cash Collateral Order.

<u>Carveout</u>. Unless and until the Carveout Trigger Date (defined below), the Debtor shall pay

administrative expenses of the Case in the ordinary course as permitted by the Budget.

Notwithstanding the Budget or anything else herein or in the Secured Credit Documents to the

contrary, from and after the date of delivery (the "Carveout Trigger Date") by the Secured Party

to the counsel to the Debtor and the U.S. Trustee of notice that both (a) a Termination Date has

occurred and (b) the Secured Party has triggered the Carveout (a "Carveout Trigger Notice"), such administrative expenses shall be funded solely from an amount (the "Carveout"), not to exceed $168,000 (subject to the increase in the Carveout set forth in para. 10 below), to be set aside solely for (x) fees, expenses, and costs then due and payable to the U.S. Trustee and/or Clerk of the Court under 28 U.S.C. § 1930 plus (y) potential future fees, expenses, and costs of a statutory trustee appointed in the Debtor's case (together, the "Triggered Carveout Cap"); provided that in no event shall payment of any amount contemplated by the Carveout or any portion of the Triggered Carveout Cap constitute a personal liability of the Secured Party, any Affiliate, or any other Indemnified Person.

10.    For the avoidance of doubt, from and after the Carveout Trigger Date, the Debtor shall be allowed to utilize the Secured Party's Cash Collateral to pay PACA Trust Claims pursuant to the PACA Motion and to satisfy administrative expenses reflected in the Budget, including the Debtor's professional fees, that are incurred but unpaid prior to the Carveout Trigger Date, provided that, any payment of administrative expenses shall be (i) subject to approval by the Bankruptcy Court and (ii) permitted under the Carveout (as modified by this paragraph) solely to provide for the payment of such incurred but unpaid administrative expenses as of the Carveout Trigger Date.

11.    Reversal, Modification, Vacatur, or Stay.  Any reversal, modification, vacatur, or stay of any or all of the provisions of this Final Cash Collateral Order (other than in accordance with this Final Cash Collateral Order) shall not affect the validity or enforceability of any Adequate Protection Lien, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Lien, incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other

11

than in accordance with this Final Cash Collateral Order), (a) this Final Cash Collateral Order shall

govern, in all respects, any use of Cash Collateral or Adequate Protection Lien or Adequate

Protection Superpriority Claim incurred by the Debtor prior to the effective date of such reversal,

modification, vacatur, or stay, and (b) the Secured Party shall be entitled to all the benefits and

protections granted by this Final Cash Collateral Order with respect to any such use of Cash

Collateral (including payment of the Adequate Protection Fees) or such Adequate Protection Lien

or Adequate Protection Superpriority Claim incurred by the Debtor.

12.    Reservation of Rights of the Secured Party.  Notwithstanding any other provision in this

Final Cash Collateral Order to the contrary, the entry of this Final Cash Collateral Order is without

prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a)

any of the rights of the Secured Party to seek any other or supplemental relief in respect of the

Debtor, including the right to seek additional adequate protection in the future; (b) the Secured

Party's rights to seek modification of the grant of adequate protection provided under this Final

Cash Collateral Order so as to provide different or additional adequate protection at any time; (c)

any of the rights of the Secured Party under the Bankruptcy Code or under non-bankruptcy law,

including, without limitation, the right of the Secured Party to (i) request modification of the

automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11

Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11

trustee or examiner with expanded powers in the Chapter 11 Case, (iii) seek to propose, subject to

the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (d) any other

rights, claims, or privileges (whether legal, equitable, or otherwise) of the Secured Party.

13.    Reservations of PACA Trust Rights.  Nothing in this Final Cash Collateral Order shall

be construed to prime, diminish or impair the rights, if any, of parties holding PACA Trust

Claims.  The Debtor and Secured Lender each reserve all rights and defenses with respect to any alleged PACA Trust Claims.

14.    <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the Secured Party to seek relief or otherwise exercise any of its rights and remedies under this Final Cash Collateral Order, the Secured Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by any or all of the Secured Party.

15.    <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Secured Party hereunder becomes insufficient to compensate for any Diminution in Value of its interests in the Prepetition Collateral during the Chapter 11 Case.

16.    <u>Modification of the Automatic Stay</u>.  The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Cash Collateral Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtor and the Secured Party to accomplish the transactions contemplated by this Final Cash Collateral Order including, without limitation, to (a) permit the Debtor to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claim, as applicable, (b) permit the Debtor to perform such acts as the Secured Party may reasonably request to assure the perfection and priority of the liens granted herein, and (c) permit the Debtor to incur all liabilities and obligations to the Secured Party under this Final Cash Collateral Order.

17.    <u>Preservation of Rights Granted Under This Final Cash Collateral Order; Survival of This Final Cash Collateral Order</u>.

      a.      Notwithstanding any order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the Adequate

Protection Superpriority Claim, the other administrative claims granted pursuant to this Final Cash Collateral Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Cash Collateral Order until all adequate protection obligations shall have been paid and satisfied in full in cash (and such Adequate Protection Superpriority Claim, the other administrative claims granted pursuant to this Final Cash Collateral Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

b.     Except as expressly provided in this Final Cash Collateral Order, the Adequate Protection Liens, the Adequate Protection Superpriority Claim and all other rights and remedies of the Secured Party granted by the provisions of this Final Cash Collateral Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7, dismissing the Chapter 11 Case, or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or Adequate Protection Collateral pursuant to Bankruptcy Code section 363(b) or (iii) the entry of an order confirming a plan in the Chapter 11 Case and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtor has waived any discharge as to any remaining adequate protection obligations. The terms and provisions of this Final Cash Collateral Order shall continue in this Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code. The Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of the Secured Party granted by the provisions of this Final Cash Collateral Order shall continue in full force and effect until all adequate protection obligations are indefeasibly paid in full, in cash.

18.    <u>Good Faith</u>. Based on the representations of the Debtor and the Secured Party, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Secured Party is hereby found to have acted in "good faith" in connection with the negotiation and entry of this Final Cash Collateral Order, and the Secured Party is entitled to the protections provided to such entities under section 363(m) of the Bankruptcy Code.

19.    <u>Limitation of Liability</u>. By virtue of permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Cash Collateral Order, the Secured Party shall not be deemed to be in control of the operations of the Debtor or to

14

be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtor, its creditors or its estate, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtor.

20.     <u>Order Effective Upon Entry</u>.  Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Final Cash Collateral Order shall be immediately effective and enforceable upon its entry.

21.     <u>Controlling Effects of Final Cash Collateral Order</u>.  To the extent any provision of this Final Cash Collateral Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Final Cash Collateral Order shall control.

22.     <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

23.     <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Final Cash Collateral Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Cash Collateral Order.

24.    <u>PACA Trust Provision</u>.  The amount set forth in the Budget for payment of PACA Trust Claims shall not be deemed to place a cap or limit on such PACA Trust Claims, the extent of the assets subject to the PACA Trust Claims, or the priority of such claims.

Dated: New York, New York
        April 22, 2022

/s/ **Michael E. Wiles**
**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit A**

Principal Amount of Secured Obligations

| Bank Creditor | Principal Amount | US Prime (w/ 4.00% Floor) | Interest Rate | Total Interest Rate |
|---|---|---|---|---|
| Legalist DIP GP, LLC | $4,000,000 | 4.00% | 11.75% | 15.75% |
|  |  |  |  |  |

**Exhibit B**

(Secured Credit Documents)

**PREPETITION**
**TERM LOAN CREDIT AGREEMENT**

**among**

**BUYK CORP.,**
**as Borrower,**

**and**

**Certain Investment Fund(s) for Which**
**LEGALIST DIP GP, LLC**
**Serves as General Partner,**
**as Lender**

This PREPETITION TERM LOAN CREDIT AGREEMENT (the "**Agreement**"), dated as of March 10, 2022, is entered into among Buyk Corp. (the "**Borrower**") and certain investment fund(s) for which Legalist DIP GP, LLC serves as general partner, as lender, agent, and collateral agent (in such capacities, the "**Lender**").

<u>RECITALS</u>

WHEREAS, the Borrower intends to file a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on or before March 15, 2022 (the "**Case**");

WHEREAS, an immediate and ongoing need exists for the Borrower to obtain funds in advance of commencing its Case;

WHEREAS, the Lender is willing to extend the Loans (defined below) in the maximum amount of $4.0 million prepetition and, in the aggregate, $6.5 million (such amount, the "**Commitment**") in accordance with the allocation on Addendum 1; and

WHEREAS, the Lender and Borrower intend to amend and restate this Agreement in connection with the Case and the DIP Order consistent with the Term Sheet (as defined below) to seek Bankruptcy Court approval of the entire Commitment and related relief.

NOW THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto (the "**Parties**") agree as follows:

<u>ARTICLE I</u>
<u>DEFINED TERMS</u>

**Section 1.01** <u>Definitions</u>. As used in this Agreement:

"**Affiliate**" has the meaning given to it in the Bankruptcy Code.

"**Agreement**" has the meaning given to it in the preamble hereto.

"**Approved Form**" means in form and substance acceptable to (as evidenced by the prior written consent of) the Lender and consistent (as applicable) with the term sheet negotiated by Borrower and Lender (the "**Term Sheet**").

"**Bankruptcy Code**" has the meaning given to it in the Recitals.

"**Bankruptcy Court**" has the meaning given to it in the Recitals.

"**Borrower**" has the meaning given to it in the preamble hereto.

"**Borrowing Request**" means an executed borrowing request substantially in the form attached hereto as <u>Exhibit A</u> and otherwise in Approved Form.

"**Budget**" means a budget encompassing, on a monthly basis, the period from the date hereof through the satisfaction of the final Milestone and containing detailed line items of the Borrower's projected receipts and disbursements, in Approved Form, including as the same may be revised by the Borrower from time to time in Approved Form. The Budget as of the date hereof is attached hereto as <u>Exhibit B</u>.

"**Business Day**" means every day that is not a Saturday, Sunday, or Legal Holiday (as defined in Federal Rule of Bankruptcy Procedure 9006(a)(6)).

"**Carveout**" means 2.5% of the Commitment to be allocated to the payment of professional fees and other administrative expense upon and after a default by the Borrower under this Agreement.

"**Case**" has the meaning given to it in the Recitals.

"**Collateral**" means all assets and properties, whether real, personal, intellectual, or otherwise, whether tangible or intangible, whether domestic, foreign, or international, that the Borrower now owns or hereafter acquires, or to or in which the Borrower, now or in the future, holds any right, title, or interest (whether fixed, contingent, inchoate, or otherwise), expressly including all inventory, fixtures, accounts, vehicles, chattel paper, goods, instruments, investment property, accounts receivable, deposit accounts, documents, general intangibles, commercial tort claims, and avoidance actions, together with (in each case) all proceeds thereof; <u>provided</u> that the Collateral shall not include Excluded Collateral.

"**Commitment**" has the meaning given to it in the Recitals.

"**Commitment Fee**" has the meaning given to it in Section 2.05(i).

"**Debt**" has the meaning given to it in the Bankruptcy Code.

"**DIP Order**" means a final order of the Bankruptcy Court approving the Loans in Approved Form.

"**Draw**" has the meaning given to it in the Recitals.

"**Effective Date**" has the meaning given to it in Section 3.02.

"**Event of Default**" has the meaning given to it in Section 8.01.

"**Excluded Collateral**" means the assets and properties set forth on <u>Schedule 4</u>. CHAPTER 5 ACTIONS

"**Existing Liens**" means the Liens set forth on <u>Schedule 2</u>.

"**Indemnified Liabilities**" has the meaning set forth in Section 7.01.

"**Indemnified Persons**" has the meaning set forth in Section 7.01.

"**Lender**" has the meaning given to it in the preamble hereto.

"**Lender Expenses**" has the meaning given to it in Section 11.03.

"**Lien**" has the meaning given to it in the Bankruptcy Code.

"**Loan Documents**" means this Agreement, all Borrowing Requests, the Budget and related reporting, the Term Sheet, and all other agreements, documents, and instruments in any way arising from, related to, or connected with the Commitment or

Loans, together with all schedules, exhibits, and other addenda thereto, all of which shall be in Approved Form.

"**Loans**" has the meaning given to it in Section 2.01(a).

"**Makewhole Fee**" has the meaning given to it in Section 2.07(c).

"**Maturity Date**" means the earliest to occur of (v) six months from the date hereof, (w) March 22, 2022 solely in the event that interim approval of the Loans has not been obtained from the Bankruptcy Court by that time which date may be extended by mutual agreement of the Lender and Borrower, (x) the Borrower's exit from bankruptcy, (y) repayment in full of all outstanding Loans, and (z) the acceleration of the Loans following an Event of Default.

"**Milestones**" means, collectively, the events and corresponding deadlines set forth on Schedule 1.

"**Monitoring Fee**" has the meaning given to it in Section 2.05(iii).

"**Obligations**" means Lender Expenses, together with all principal of, and interest and fees on (including, without limitation, any applicable Undrawn Line Fee, the Monitoring Fee, Commitment Fee, Underwriting Fee, and any applicable Makewhole Fee) the Loans, any amount owed to any Indemnified Person, and any other amount owed by the Borrower under any Loan Document.

"**Permitted Senior Liens**" means the Liens set forth on Schedule 3.

"**Permitted Variances**" has the meaning given to it in

"**Person**" has the meaning given to it in the Bankruptcy Code.

"**Underwriting Fee**" has the meaning given to it in Section 2.05(ii).

"**Uniform Commercial Code**" has the meaning given to it in Section 11.08.

## ARTICLE II
## LOANS

### Section 2.01 In General.

(a) Subject to the terms hereof, the Lender agrees, upon the Effective Date, to make available to the Borrower, in one or more Draws, term loans in the full amount of the Commitment (such term loans, the "**Loans**").

(b) Subject to Section 2.7, all amounts owed hereunder with respect to the Loans shall be paid in full no later than the Maturity Date. Any principal amount of the Loans repaid or prepaid may not be reborrowed.

### Section 2.02 Use of Proceeds. The proceeds of the Loans shall be used by the Borrower solely to:

(i) Pay Lender Expenses;

(ii) Pay all other Obligations; and

(iii) Pay other amounts permitted under the Budget.

In no event shall any portion of the Loans be used for payment of fees, costs, or expenses incurred by any party in (x) investigating or pursuing any claim or cause of action against the Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any Lien or claim of the Lender (or the priority, validity, or enforceability thereof), any Obligation, any Loan Document, or any right or remedy of the Lender.

### Section 2.03 [Omitted].

### Section 2.04 Interest; Undrawn Line Fee.

(a) Interest Rate. The outstanding principal amount of the Loans (together with all other due and payable Obligations) shall accrue interest from the Effective Date at the U.S. prime rate (subject to a 4.00% floor) plus 11.75% per year, which shall accrue and be compounded and capitalized monthly.

(b) Default Interest. While an Event of Default has occurred and is continuing, the outstanding principal amount of the Loans (together with all other due and payable Obligations) shall accrue an additional 4.75% in interest per year, which shall accrue and be compounded and capitalized monthly. Payment or acceptance of the increased rates of interest provided for in this Section 2.4(c) is not a permitted alternative to timely payment and shall not constitute a waiver of any Event of Default or otherwise prejudice or limit any rights or remedies of the Lender.

(c) Undrawn Line Fee. Any undrawn portion of the Commitment shall accrue a fee (the "**Undrawn Line Fee**") from date hereof at 4.75% per year, which shall accrue and be compounded and capitalized monthly.

(d) Payment Terms. All interest (including default interest) and any applicable Undrawn Line Fee (which shall be Obligations for all purposes), together with the fees described in Section 2.05, shall be compounded and capitalized in arrears on the first Business Day of month and due and payable upon the Maturity Date.

### Section 2.05 Fees. The following fees shall be deemed fully and irrevocably earned upon the date hereof and shall be Obligations for all purposes:

(i) A onetime "**Commitment Fee**" of 2.75% of the Commitment, due and payable in cash upon the Maturity Date;

(ii) A onetime "**Underwriting Fee**" of 1.75% of the Commitment, due and payable in cash upon the Maturity Date; and

(iii) A "**Monitoring Fee**" of 1.75% of the Commitment per year, payable in kind monthly as provided in Section 2.04(d).

### Section 2.06 Repayment. Subject to Sections 2.07, the Loans shall be due and payable, and the Borrower unconditionally agrees and promises to repay to the Lender all other outstanding Obligations, in cash on the Maturity Date.

### Section 2.07 Omitted.

### Section 2.08 General Provisions Regarding Payments.

(a) Payments. All payments by or on behalf of the Borrower of principal, interest, fees, or other Obligations shall be made in U.S. dollars in same-day funds, without defense, setoff, or counterclaim of any kind, free of any restriction or condition, and delivered to Lender so as to be actually received by it no later than 1:00 PM New York time. All funds actually received by the Lender after that time shall be deemed to have been paid on the next Business Day.

2

(b) <u>Non-Conforming Payments</u>. Any payment not conforming to the foregoing Clause (a) shall be deemed a non-conforming payment and shall not be deemed to have been actually received by the Lender until the later of (x) the time such funds become available funds and (y) the next Business Day. Interest and fees shall continue to accrue on any principal (together with all other due and payable Obligations) until such funds become available funds.

(c) <u>Payments to Include Accrued Interest</u>. All payments in respect of the principal amount of the Loans shall include payment of accrued interest on the principal amount being repaid or prepaid, and all such payments shall be applied in accordance with Section 8.03.

(d) <u>Business Days</u>. Whenever a payment hereunder is due on a day that is not a Business Day, such payment shall be made on the next Business Day.

**Section 2.09 <u>Termination of Commitments</u>.** The Commitment of the Lender shall be automatically and permanently reduced (x) by the principal amount of each Loan made by the Lender pursuant to Section 2.01(b) and (y) in full, upon (i) acceleration of the Loans under Section 8.02(a)(i) or (ii) the election of the Lender while an Event of Default has occurred and is continuing. For the avoidance of doubt, any termination of the Commitment by Lender shall not negate or impair in any manner, the Lender's obligation to provide the Carveout

### ARTICLE III
### CONDITIONS PRECEDENT

**Section 3.01 <u>Conditions Precedent to Draws</u>.** The obligation of the Lender to make Draws available to the Borrower, in accordance with the Budget, in the aggregate amount of the Commitment (provided no Event of Default shall (x) have occurred and be continuing or (y) be reasonably likely to result therefrom), is subject to the occurrence (with respect to each such Draw) of all of:

*With respect to the initial Draw (not to exceed $4.0 million)*

(i) The Borrower's delivery of an executed Borrowing Request in the amount of such Draw; and

(ii) Each of the representations and warranties set forth in this Agreement and in each other Loan Document shall be true and correct as of the Effective Date, except to the extent that any such representation or warranty expressly relates to an earlier date, in which case each such representation and warranty shall have been true and correct as of such earlier date.

*With respect to all subsequent Draws (not to exceed, in the aggregate, the balance of the Commitment):*

(i) Commencement of the Case;

(ii) Execution of an amended and restated Agreement in Approved Form;

(iii) The Bankruptcy Court's entry of the DIP Order, which remains in full force and effect as so entered and in Approved Form;

(iv) The Borrower's satisfaction of all applicable Milestones;

(v) The Borrower's delivery of an executed Borrowing Request in the amount of such Draw; and

(vi) Each of the representations and warranties set forth in this Agreement and in each other Loan Document shall be true and correct as of the Effective Date, to the extent that any such representation or warranty expressly relates to an earlier date, in which case each such representation and warranty shall have been true and correct as of such earlier date.

**Section 3.02 <u>Effective Date</u>.** With respect to any Draw, the date on which all of the conditions precedent described in Section 3.01 have been met shall be the "**Effective Date**."

### ARTICLE IV
### REPRESENTATIONS AND WARRANTIES OF DEBTOR

To induce the Lender to provide the Loans, the Borrower makes to the Lender all of following representations and warranties, which representations and warranties shall (x) be deemed to have been made and remade as of each Effective Date and (y) survive the execution and delivery of this Agreement:

**Section 4.01 <u>Corporate Status; Corporate Authorization</u>.**

(a) The Borrower is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization and is duly qualified and in good standing in every other jurisdiction where it is doing business, and the execution, delivery, and performance by the Borrower of this Agreement (x) are within its authority, (y) have been duly authorized, and (z) do not conflict with or contravene its corporate-governance or organizational documents.

(b) The execution, delivery, and performance of obligations under this Agreement by the Borrower (x) do not require any consent that has not been obtained and (y) are not and will not be in conflict with or prohibited or prevented by any (i) law, rule, or regulation, (ii) corporate-governance or organizational document of the Borrower or (iii) other instrument or agreement, in each case binding on the Borrower or affecting its property.

**Section 4.02 <u>Execution and Binding Effect</u>.** Upon execution and delivery hereof, this Agreement shall constitute the legal, valid, and binding obligation of the Borrower, enforceable in accordance with its terms.

**Section 4.03 <u>Collateral</u>.** The Borrower has good and marketable title to all Collateral, free of all Liens, security interests, pledges, and other encumbrances, other than the Existing Liens.

**Section 4.04 <u>Absence of Material Adverse Effect</u>.** There has been no act, condition, or event that has had, or may reasonably be expected to have, a material adverse effect on the Borrower or its operations since March 1, 2022 (expressly excluding developments with respect to the ongoing Russian/Ukraine war and related sanctions, etc. and the determination by the Borrower to file for bankruptcy protection).

**Section 4.05 <u>Governmental Approvals and Filings</u>.** Except as has already been obtained, no approval, authorization, or other action by, or filing, recording, or registration with, or notice to, any governmental body is or will be necessary in connection with the execution, delivery, or performance of this Agreement.

**Section 4.06 <u>Misstatements and Omissions</u>.** No information furnished or made available by the Borrower (directly or

indirectly) to the Lender (x) contains any material misstatement of fact or (y) omits any material fact necessary to make such information not misleading.

## ARTICLE V
## AFFIRMATIVE COVENANTS

So long as any Obligation remains outstanding, the Borrower shall perform all of the following covenants:

**Section 5.01 Budget Reporting and Compliance.**

(a)  No later than the first Tuesday of each month, the Borrower shall provide the Lender (each in Approved Form):

(i)  A variance report (certified by an appropriate officer of the Borrower) comparing, on a line-item basis, actual cash receipts and disbursements to those contained in the Budget, for both the preceding month and cumulatively from the date hereof, together with detailed explanations of all variances (if any); and

(ii)  A rolling 13-week cashflow forecast for the Borrower.

(b)  In no event shall actual cash receipts vary downward, or cash disbursements vary upward, from the Budget (on a line-item, monthly, or cumulative basis) by more than 7.5% (the "**Permitted Variances**").

**Section 5.02 Accounting; Financial Statements.** The Borrower shall keep true and accurate books of record and account in accordance with past practice and sufficient to permit the preparation of financial statements in accordance with generally accepted accounting principles.

**Section 5.03 Maintenance of Existence.** The Borrower shall do all things necessary to maintain (x) its corporate or other existence in accordance with its organizational documents (which shall not be amended without the prior written consent of the Lender) and (y) all rights, licenses, and franchises.

**Section 5.04 Preservation of Assets.** The Borrower shall maintain its assets (including all Collateral) in good operating conditions and shall make such repairs and replacements as are required, in accordance with the Budget; provided that, in no event shall the Lender be surcharged with respect to such maintenance of the Collateral.

**Section 5.05 Notice of Material Events.** The Borrower shall notify the Lender promptly in writing of:

(i)  The occurrence of any default or Event of Default;

(ii)  Any threatened or pending litigation or other proceeding or claim affecting the Borrower; and

(iii)  Any other development that results in, or could reasonably be expected to result in, a material adverse effect on the Borrower or its operations.

**Section 5.06 Use of Proceeds.** The Borrower shall use the proceeds of the Loans only as permitted by Section 2.02.

**Section 5.07 [Omitted].**

**Section 5.08 Taxes.** The Borrower will pay its tax liabilities accruing after the date hereof before the same shall become delinquent or in default, except where the validity or amount thereof is being contested in good faith by appropriate proceedings and the Borrower has set aside on its books adequate reserves in accordance with generally accepted accounting principles.

**Section 5.09 Milestones.** The Borrower shall comply with all applicable Milestones.

**Section 5.10 Compliance with Laws.** The Borrower shall comply all applicable laws, rules, and regulations.

**Section 5.11 Bankruptcy Court Filings.** The Borrower shall commence all actions in, file all motions, applications, and proposed orders with, and make all other submissions to the Bankruptcy Court only in Approved Form.

**Section 5.12 Full Access to Information.** The Borrower shall promptly provide the Lender with all requested information and full and complete access to all executives, directors, and advisors of the Borrower, together with access to inspect any Collateral, when requested by the Lender; provided that, without any prior request from the Lender, the Borrower shall deliver to the Lender in real time copies of all offers (whether formal or informal, firm or contingent) to acquire the Borrower, the Collateral, or any part thereof, together with all related correspondence, and all other materials regarding the Borrower's progress on the Milestones.

**Section 5.13 Stay, Extension, and Usury Laws.** The Borrower (x) covenants that it will not at any time in any manner whatsoever claim or take the benefit or advantage of any stay, extension, or usury law (wherever enacted) that may affect the performance in full of this Agreement and (y) expressly waives the benefit of all such laws.

**Section 5.14 Timely Payment of Lender Expenses, Other Obligations.** The Borrower shall, in addition to repaying all other Obligations when due and payable hereunder, timely pay all Lender Expenses.

**Section 5.15 Further Assurances.** The Borrower shall fully cooperate with the Lender, and take such actions and execute such documents and instruments as the Lender may request, in furtherance of this Agreement and the transactions contemplated hereby, expressly including all steps necessary or desirable to maintain the priority, validity, and enforceability of the Lender's claims and liens on the Collateral.

Lender and Borrower agree to negotiate in good faith to amend and restate this Agreement (as contemplated by the Term Sheet) upon the commencement of Borrower's Case.

## ARTICLE VI
## NEGATIVE COVENANTS

So long as any Obligation remains outstanding, the Borrower shall perform all of the following covenants:

**Section 6.01 Indebtedness.** The Borrower shall not (directly or indirectly) incur, create, or permit to exist any Debt, other than (x) Debt existing as of the date hereof, (y) the Obligations, and (z) Debt expressly contemplated by the Budget.

**Section 6.02 Liens.** The Borrower shall not (directly or indirectly) incur, create, or permit to exist any Lien other than (x) Existing Liens and (y) the Liens granted hereunder.

**Section 6.03 Superpriority Claims.** The Borrower shall not (directly or indirectly) incur, create, or permit to exist any administrative-expense claim, expense, or cost not expressly contemplated by the Budget.

**Section 6.04 <u>Payments</u>.** The Borrower shall not make any payment (other than in respect of the Obligations) not expressly contemplated by the Budget.

**Section 6.05 <u>Merger or Sale</u>.** The Borrower shall not (directly or indirectly) (x) merge or consolidate with another Person or (y) unless the net proceeds thereof shall be sufficient to repay the Obligations in full, sell any Collateral; <u>provided</u> any such sale shall be in Approved Form.

**Section 6.06 <u>Business</u>.** The Borrower shall not engage in any business other than its line of business as of the date hereof.

**Section 6.07 <u>Amendments to Organizational Documents</u>.** The Borrower shall not amend any corporate-governance or organizational document.

**Section 6.08 <u>Bankruptcy Court Filings</u>.** The Borrower shall not commence any action in, file any motion, application, or proposed order with, or make any other submission to the Bankruptcy Court other than in Approved Form.

**ARTICLE VII**

**INDEMNIFICATION**

**Section 7.01 <u>Indemnification by the Borrower</u>.** The Borrower shall indemnify the Lender and its Affiliates (expressly including Legalist, Inc. and Legalist DIP GP, LLC), together with their respective partners, directors, officers, managers, members, partners, investors, employees, contractors, agents, administrators, advisors (including attorneys), and representatives, against, and hold each such Person (each an "**Indemnified Person**") harmless from all liabilities, obligations, losses, damages, penalties, claims, actions, causes of action, judgments, suits, costs, expenses, fees, and disbursements, of any kind or nature whatsoever, whether direct, indirect, special, exemplary, or consequential and whether based on federal, state, foreign, or international laws, statutes, rules, or regulations, that may be imposed on, incurred by, or asserted against such Indemnified Person, in any way arising from, in connection with, or relating to any Loan Document, the transactions contemplated thereby, or any action taken or not taken in connection therewith (collectively, the "**Indemnified Liabilities**"); <u>provided</u> that such indemnity shall not be available to an Indemnified Person to the extent that any Indemnified Liability was a direct result, as determined by a court of competent jurisdiction, in a final and non-appealable order, of the gross negligence or willful misconduct of such Indemnified Person. The Borrower's payment obligations with respect to any Indemnified Liability shall constitute Obligations for all purposes, and each Indemnified Person not a Party shall be a third-party beneficiary of this Agreement for purposes enforcing such obligations.

**ARTICLE VIII**

**EVENTS OF DEFAULT**

**Section 8.01 <u>Events of Default</u>.** The occurrence and continuation of each of the following shall constitute an "**Event of Default**":

(i)   The Borrower shall:

    (A)   Fail to timely pay any Lender Expense or other Obligation;

    (B)   Grant or permit to exist any Lien on any Collateral, other than the Existing Liens and Liens granted hereunder;

    (C)   Fail to satisfy any Milestone, within 2 business days of its stated deadline; or

    (D)   Make any payment not expressly contemplated by, or otherwise fail to comply with, the Budget (subject to Permitted Variances).

(ii)   Any representation, warranty, certification, or other statement made, or deemed made in or delivered pursuant to any Loan Document, by the Borrower shall be false in any material respect as of the date so made, deemed made, or delivered;

(iii)   The Borrower shall fail to perform or comply with any other agreement, covenant, term, or condition in any Loan Document, other than those listed in the preceding Clauses (i)-(v); <u>provided</u> such failure has not been remedied (if capable of remedy) within 21 days of the earlier of (x) the Borrower's becoming aware of such failure or (ii) the Borrower's receipt of written notice from the Lender of such failure.

**Section 8.02 <u>Remedies</u>.**

(a)   Subject to the Bankruptcy Code and applicable Bankruptcy Court orders (if any), while any Event of Default has occurred and is continuing, the Lender may upon three (3) business days notice to the Borrower:

    (i)   Declare the Commitment terminated; and

    (ii)   Declare all Obligations immediately due and payable, without the requirement of presentment, demand, protest, or any other notice, all of which are waived by the Borrower.

(b)   In addition to the rights and remedies enumerated in the foregoing Clause (a), subject to the Bankruptcy Code and applicable Bankruptcy Court orders (if any) the Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it as a secured party under the Uniform Commercial Code.

(c)   For the avoidance of doubt, all costs incurred by the Lender in connection with this Section 8.02 shall constitute Lender Expenses and Obligations for all purposes.

**Section 8.03 <u>Application of Funds</u>.** If the Lender receives any payment from or on behalf of the Borrower, or collects any money or property pursuant to this Article VIII, it shall pay out the money or property as follows:

(i)   <u>First</u>: To the Lender, for accrued and unpaid Lender Expenses;

(ii)   <u>Second</u>: To the Lender, for accrued and unpaid interest (including default interest) and applicable fees;

(iii)   <u>Third</u>: To the Lender, for unpaid principal outstanding on the Loans;

(iv)   <u>Fourth</u>: To the Lender, for all other unpaid Obligations (including reasonable reserves for Indemnified Liabilities and other contingent Obligations); and

(v)   <u>Fifth</u>: After all Obligations (including reasonable reserves) have been indefeasibly paid in full in cash and the Commitment has terminated, the Lender shall distribute any surplus to Borrowe and/or in accordance with an applicable final, non-appealable Bankruptcy Court order.

For the avoidance of doubt, the Borrower shall remain liable for any deficiency.

### ARTICLE IX
### [OMITTED]

### ARTICLE X
### COLLATERAL, SECURITY, AND PRIORITY

**Section 10.01** Omitted.

**Section 10.02 Grant of Security Interest.** Subject to the priorities set forth in Section 10.03, as to all Collateral, the Borrower assigns and conveys as security, grants a security interest in and Lien on, hypothecates, mortgages, pledges, and sets over and unto the Lender all right, title, and interest of the Borrower in the Collateral.

**Section 10.03 Liens.** The Borrower covenants, represents, and warrants that, upon execution hereof and filing of customary financing statements, the Lender shall hold first-priority senior Liens on all Collateral (subject to Existing Liens, if any).

**Section 10.04 Further Assurances.** The Borrower further agrees that, if requested by the Lender, it shall enter into any separate security agreement, control agreement, pledge agreement, or other similar documentation or instrument with respect to any Collateral that the Lender may request, all expenses of which incurred by the Lender shall constitute Lender Expenses; provided that the Lender is hereby authorized to take any and all steps necessary or desirable to perfect the Liens granted hereunder.

### ARTICLE XI
### MISCELLANEOUS

**Section 11.01 Amendments and Waivers.** No amendment, modification, termination, or waiver of any provision hereof, or consent to any departure by the Borrower therefrom, shall be effective without the express written consent of the Lender. Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given. No notice to or demand on the Borrower in any given instance shall entitle the Borrower to any other or further notice or demand in similar or other circumstances.

**Section 11.02 Notices.** All notices, requests, demands, and other communications under any Loan Document shall be in writing, delivered by electronic mail as follows, and deemed effective upon delivery:

(i)   If to the Borrower:

Attn: James Walker  james.walker@buyk.com

With a copy (which shall not constitute notice) to:

Akerman LLP
Attn: Mark Lichtenstein, Esq. mark.lichtenstein@akerman.com

(ii)   If to the Lender:

c/o Legalist, Inc. (dip@legalist.com).

**Section 11.03 Lender Expenses.** Whether or not the transactions contemplated hereby are consummated or any Loan is made, the Borrower agrees to pay promptly all costs and expenses of the Lender incurred in connection with, arising from, or relating to the Borrower or its Case, the Loan Documents, and any exercise of rights or remedies thereunder, whether before or after the date hereof and irrespective of the occurrence of any default or Event of Default, including (without limitation) all costs of inhouse counsel, advisers, and consultants of Lender, together all fees, expenses, and disbursements of outside counsel or other advisers and consultants retained by the Lender with respect thereto (collectively, the "**Lender Expenses**"), which shall constitute Obligations for all purposes hereunder. The foregoing shall be in addition to, and shall not limit, any other provision of the Loan Documents regarding Obligations to be paid by the Borrower.

**Section 11.04 Enforceability; Successors and Assigns.** This Agreement shall be binding on and inure to the benefit of, and shall be enforceable by, the respective successors and permitted assigns of the Parties. No Borrower may assign any Loan Document without the Lender's prior written consent. Any such alleged assignment shall be void *ab initio* and shall not relieve the Borrower of any obligation thereunder.

**Section 11.05 Integration.** The Loan Documents contain and constitute the entire agreement of the Parties with respect to the subject matter thereof and supersede all prior negotiations, agreements, and understandings, whether written or oral.

**Section 11.06 No Waiver; Remedies Cumulative.** No failure or delay by the Lender in exercising any right, power, or privilege hereunder shall operate as a waiver thereof. A single or partial exercise of any right, power, or privilege shall not preclude any other or further exercise of the same or another right, power, or privilege. The rights and remedies provided in the Loan Documents shall be cumulative and not exclusive of any right or remedy provided by law or equity or otherwise available.

**Section 11.07 Submission to Jurisdiction.** Each Party agrees that any action with respect to any Loan Document shall be brought exclusively in, and unconditionally submits to the jurisdiction of, the state and/or federal courts in New York County, New York regarding the same.

**Section 11.08 Governing Law.** The Loan Documents, and any dispute arising therefrom, shall be governed by the Bankruptcy Code and, to the extend not preempted thereby, New York state law. This Agreement constitutes an instrument for the payment of money only, within the meaning of N.Y. C.P.L.R. § 3213. Any reference herein to the "**Uniform Commercial Code**" refers to the New York Uniform Commercial Code as in effect from time to time.

**Section 11.09 WAIVER OF JURY TRIAL.** EACH PARTY HERETO IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY IN ANY DISPUTE ARISING FROM THIS AGREEMENT.

**Section 11.10 Severability.** If any term of any Loan Document is held invalid, illegal, or incapable of being enforced by any rule of law or public policy, all terms of such Loan Document shall remain in full force and effect so long as the economic or legal substance of the transactions contemplated thereby is not affected in any manner adverse to any party thereto. Upon such holding, the Parties shall negotiate in good faith to modify the same such that the transactions contemplated thereby are fulfilled to the maximum extent possible.

**Section 11.11 Survival.** All representations, warranties, covenants, and agreements made by the Borrower in any Loan Document shall survive until full and indefeasible payment of all

Obligations, irrespective of any earlier default, Event of Default, acceleration, or termination thereunder; provided that Article VII and Section 11.3 shall survive such full and indefeasible payment of all Obligations.

**Section 11.12 Maximum Lawful Interest.** Notwithstanding anything to the contrary herein, in no event shall the amount of interest and other charges for the use of money payable under this Agreement exceed the maximum amounts permissible under any law that a court of competent jurisdiction shall, in a final and non-appealable order, deem applicable. The Borrower and the Lender, in executing and delivering this Agreement, intend legally to agree on the rate or rates of interest and other charges for the use of money and manner of payment permitted by such law; provided that, if such amount exceeds such maximum allowable amount, then the Borrower is and shall be liable only for the payment of such maximum as allowed by law, and payment received from the Borrower in excess of such legal maximum shall be applied to reduce the principal balance of the Loans to the extent of any such excess.

**Section 11.13 Foreseeable Circumstances.** The Parties acknowledge that (x) the COVID-19 pandemic any/or other instances of pandemic or widespread virus or infection and (y) ongoing riots, insurrections, terrorist acts, and/or other domestic unrest and uncertainty shall not be considered unforeseeable circumstances for purposes of this Agreement. The Parties agree that any claim of unenforceability, force majeure, or other claim and/or defense related to the foregoing (including with respect to any court closure) is expressly waived.

**Section 11.14 Execution in Counterparts.** Each Loan Document may be executed, including electronically, in any number of counterparts and by different Parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Loan Document.

*       *       *

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective authorized signatories as of the date first written above.

**DEBTOR:**

BUYK CORP.

By: _____
Name: James Walker
Title: CEO

**LENDER:**

LEGALIST DIP GP, LLC, as general partner of the investment fund(s) listed on Addendum 1

By: _____
Name: Christian G.B. Haigh
Title: Managing Member

62553324;2

| Schedule 1 | | Schedule 2 |
|---|---|---|
| (Milestones) | | (Existing Liens) |

| Event | Deadline |
|---|---|
| Commencement of Case | 03/15/22 |
| Interim Approval of DIP Order | 03/22/22 |

None.

| **Schedule 3** | **Schedule 4** |
| --- | --- |
| **(Permitted Senior Liens)** | **(Excluded Collateral)** |
| None. | Chapter V actions |

**Exhibit A**
**(Form of Borrowing Request)**

Legalist DIP Fund I, LP
c/o Legalist, Inc. (dip@legalist.com)

RE: _Buyk Corp._

Ladies and Gentlemen:

This Borrowing Request is delivered to you pursuant to Article III of the Prepetition Term Loan Credit Agreement, dated as of _____ (as in effect from time to time, the "Credit Agreement"), among Buyk Corp. (the "Borrower") and the addressee(s) hereof (the "Lender"). The Borrower acknowledges that this Borrowing Request is a Loan Document for all purposes. Capitalized term used but not defined herein have the meanings given to them in the Credit Agreement

The Borrower hereby requests that a Loan be made to it in the aggregate principal amount of $_____ (the "Draw").

The Borrower hereby acknowledges that, pursuant to Credit Agreement Section 3.01(v), each of the representations and warranties set forth in the Credit Agreement and in each other Loan Document shall be true and correct as of the date hereof, except to the extent that any such representation or warranty expressly relates to an earlier date, in which case each such representation and/or warranty shall have been true and correct as of such earlier date. The Borrower agrees that if, at any time prior to the time the Draw is funded by the Lender, any matter certified to herein by it will not be true and correct in all material respects at such time as if then made, it will immediately so notify the Lender.

Please wire transfer the proceeds of the Draw as follows:

Account Name: _____
Bank: _____
ABA (for wires): _____
Account No.: _____

Phone No. (Borrower): _____

Very truly yours,

BUYK CORP.

By: _____
Name: James Walker
Title: CEO

Exhibit B

**<u>Buyk Corp.</u>**
**DIP Budget**
**Initial Draw Disbursements**

| | kUSD |
|---|---|
| Week Ended[1] | **3.11.2022** |
| | |
| Receipts | |
|   AR Collections | - |
|   Other | - |
| Total Receipts | - |
| | |
| Disbursements: | |
| Employee Expenses | 2,379 |
| Employee Reimbursement | 104 |
| Outstaffed couriers, consultants, temp.hires | 1,379 |
| Insurance | 45 |
| Bankruptcy Professionals | 75 |
| Total Disbursements | 3,982 |
| | |
| Total Operating Receipts / (Disbursements) | (3,982) |
| | |
| DIP Facility Interest & Fees | - |
| | |
| Net Receipts / (Disbursements) | (3,982) |

**Addendum 1**
**(Allocation of Commitment)**

- Legalist DIP Fund I, LP: $4.0 million

- Legalist DIP SPV II, LP: $2.5 million

RECEIVED
SECRETARY OF STATE
UNIFORM COMM. CODE DIV.

2022 MAR 14 PM 1:30

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

UCU103/14/22:02:6853:
20.00 MU
SOSIL 14:07  28251556 FS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| CSC   1-800-858-5294 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| SPRFiling@cscglobal.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

2283 80177
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Illinois
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME Buyk Corp. | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 360 W. 31st Street Floor 6 | CITY New York | STATE NY / POSTAL CODE 10001 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME Legalist DIP Fund I, LP | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 10120 W. Flamingo Rd., Ste. 4, No. 3015 | CITY Las Vegas | STATE NV / POSTAL CODE 89147 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|
| 6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

COPY   2283 80177

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

0411239        2022 Mar 11 PM04:19

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **Buyk Corp.** | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS **360 W. 31st Street Floor 6** | CITY **New York** | STATE **NY** POSTAL CODE **10001** | COUNTRY **USA** |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **Corporation** | 1f. JURISDICTION OF ORGANIZATION **NY** | 1g. ORGANIZATIONAL ID #, if any | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **Legalist DIP Fund I, LP** | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS **10120 W. Flamingo Rd., Ste. 4, No. 3015** | CITY **Las Vegas** | STATE **NV** POSTAL CODE **89147** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-202203118121809**

**STATE OF NEVADA**



**_BARBARA K. CEGAVSKE_**
_Secretary of State_

Commercial Recordings & Notary Division
202 N. Carson Street
Carson City, NV 89701
Telephone (775) 684-5708
Fax (775) 684-7138

North Las Vegas City Hall
2250 Las Vegas Blvd North, Suite 400
North Las Vegas, NV 89030
Telephone (702) 486-2880
Fax (702) 486-2888

**_KIMBERLEY PERONDI_**
_Deputy Secretary for
Commercial Recordings_

**OFFICE OF THE
SECRETARY OF STATE**

Legalist Inc.
10120 W Flamingo Rd Ste 4 #3015
Las Vegas, NV 89147, USA

**Work Order #:** W2022031101227
March 11, 2022
Receipt Version: 1

**Special Handling Instructions:**                          **Submitter ID:** 557700

**Charges**

| Description | Fee Description | Filing Number | Filing Date/Time | Filing Status | Qty | Price | Amount |
|---|---|---|---|---|---|---|---|
| UCC-1 | Fees | 2022227159-5 | 3/11/2022 1:12:28 PM | Approved | 1 | $30.00 | $30.00 |
| Total | | | | | | | $30.00 |

**Payments**

| Type | Description | Payment Status | Amount |
|---|---|---|---|
| Credit Card | 6470331520646950503051 | Success | $30.00 |
| Total | | | $30.00 |

**Credit Balance:**    $0.00

Legalist Inc.
10120 W Flamingo Rd Ste 4 #3015
Las Vegas, NV 89147, USA

STATE OF NEVADA



*BARBARA K. CEGAVSKE*
*Secretary of State*

*KIMBERLEY PERONDI*
*Deputy Secretary for*
*Commercial Recordings*

*Commercial Recordings Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

**OFFICE OF THE**
**SECRETARY OF STATE**

## Filing Acknowledgement

March 11, 2022 01:12 PM

| | |
|---|---|
| **Work Order Number** | **Initial Filing Number** |
| W2022031101227 | 2022227159-5 |
| **Filing Description** | **Document Filing Number** |
| UCC-1 | 2022227159-5 |
| **Debtors** | |
| BUYK CORP. | 360 W. 31ST STREET FLOOR 6<br>NEW YORK, NY 10001 |
| **Secured Parties** | |
| LEGALIST DIP FUND I, LP | 10120 W. FLAMINGO RD., STE. 4, NO. 3015<br>LAS VEGAS, NV 89147 |

The Nevada Secretary of State, Uniform Commercial Code Division has filed the attached documents. The filing number, date, and time are shown on each document. The filing number can be used to reference the document in the future.

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| **Legalist Inc. 415-570-7878** |
| B. E-MAIL CONTACT AT FILER (optional) |
| **info@legalist.com** |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address) |
| **Legalist, Inc.** |
| **10120 W Flamingo Rd Ste 4 #3015** |
| **Las Vegas, NV 89147, USA** |

| Filed in the Office of | Initial Filing Number |
| --- | --- |
| *Barbara K. Cegavske* | **2022227159-5** |
|  | Filed On |
|  | **March 11, 2022 01:12 PM** |
| Secretary of State | Number of Pages |
| State Of Nevada | **1** |

1. DEBTOR'S NAME:  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

OR

| 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| **BUYK CORP.** | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| **360 W. 31ST STREET FLOOR 6** | **NEW YORK** | **NY** | **10001** | **USA** |

2. DEBTOR'S NAME:  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

OR

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

OR

| 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| **LEGALIST DIP FUND I, LP** | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| **10120 W. FLAMINGO RD., STE. 4, NO. 3015** | **LAS VEGAS** | **NV** | **89147** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

**ALL ASSETS**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**Exhibit C**

(Budget)

Exhibit B

**Buyk Corp.**
**DIP Budget**                          kUSD

| | plan | plan | plan | plan | plan | plan | 6-week plan | 6-week actual |
|---|---|---|---|---|---|---|---|---|
| Week Ended[1] | **3.11.2022** | **3/20/2022** | **3/27/2022** | **4/3/2022** | **4/10/2022** | **4/17/2022** | | |
| | | | | | | | | |
| Initial cash balance | 800 | | | | | | | |
| | | | | | | | | |
| Receipts | | | | | | | | |
| Secured debt (Legalist) | 4,000 | 500 | - | (500) | (500) | (400) | 3,100 | 4,000 |
| Assets liquidation | - | - | 312 | 312 | 187 | 187 | 998 | - |
| *incl proceeds from perishables* | | | | | | | | |
| Deposits refund | - | - | - | 880 | 150 | - | 1,030 | 141 |
| Total Receipts | 4,000 | 500 | 312 | 692 | (163) | (213) | 5,128 | 4,141 |
| | | | | | | | | |
| Disbursements: | | | | | | | | |
| PACA Claims | | | | | | | | |
| Section 503(b)(9) | | | | | | | | |
| Employee Expenses | 2,379 | - | 67 | - | 67 | - | 2,514 | 2,402 |
| Employee Reimbursement | 104 | 10 | 10 | 10 | 10 | 5 | 149 | 108 |
| Outstaffed couriers, consultants, temp.hires | 1,379 | 152 | - | - | - | - | 1,531 | 1,336 |
| Insurance | 45 | 45 | - | - | - | - | 90 | 49 |
| Professional fees | | 20 | 10 | 10 | 10 | 5 | 55 | 4 |
| Attorney fees | 75 | 40 | 25 | 40 | 25 | 40 | 245 | 35 |
| Rent & Utilities | | 638 | - | 418 | - | - | 1,056 | 78 |
| Utility deposit | | | | | | | | |
| Taxes & fees | | 30 | 36 | - | - | - | 66 | 32 |
| UST fees | | | | | | | | |
| | | | | | | | | |
| Total Disbursements | 3,982 | 935 | 148 | 478 | 112 | 50 | 5,706 | 4,044 |
| | | | | | | | | |
| Total Operating Receipts / (Disbursements) | 18 | (435) | 164 | 213 | (275) | (263) | (578) | 97 |
| | | | | | | | | |
| Secured debt Fees | - | - | 1 | - | 7 | - | | |
| | | | | | | | | |
| Net Receipts / (Disbursements) | 18 | (435) | 163 | 213 | (282) | (263) | | |
| | | | | | | | | |
| Cash balance | 818 | 383 | 546 | 760 | 477 | 214 | | |

Exhibit B

**Buyk Corp.**
**DIP Budget**

| | revised plan | revised plan | revised plan | revised plan | revised plan | revised plan | revised plan | revised plan |
|---|---|---|---|---|---|---|---|---|
| Week Ended[1] | 4/24/2022 | 5/1/2022 | 5/8/2022 | 5/15/2022 | 5/22/2022 | 5/29/2022 | 6/5/2022 | 6/12/2022 |
| Initial cash balance | 800 | | | | | | | |
| | | | | | | | | |
| Receipts | | | | | | | | |
| Secured debt (Legalist) | | | | | | | | |
| Assets liquidation | 60 | 159 | 394 | 262 | | | | 1,863 |
| *incl proceeds from perishables* | *12* | *32* | *79* | *52* | | | | |
| Deposits refund | | | 843 | | | | | |
| Total Receipts | 60 | 159 | 1,237 | 262 | - | - | - | 1,863 |
| | | | | | | | | |
| Disbursements: | | | | | | | | |
| PACA Claims | | 12 | 32 | 79 | 52 | | | |
| Section 503(b)(9) | | | | 202 | 202 | - | | |
| Employee Expenses | 67 | | 67 | | 67 | | 67 | |
| Employee Reimbursement | 5 | | 5 | | 5 | | 5 | |
| Outstaffed couriers, consultants, temp.hires | 2 | 2 | | | | | | |
| Insurance | 28 | 49 | 135 | | 39 | | | |
| Professional fees | | | | | 10 | | | |
| Attorney fees | 210 | 50 | 25 | - | - | - | - | - |
| Rent & Utilities | 450 | | 150 | | 400 | | | 150 |
| Utility deposit | | 25 | | | | | | |
| Taxes & fees | 5 | 60 | | | | | | |
| UST fees | | 2 | | | | | | |
| | | | | | | | | |
| Total Disbursements | 767 | 200 | 414 | 281 | 776 | - | 72 | 150 |
| | | | | | | | | |
| Total Operating Receipts / (Disbursements) | (707) | (41) | 822 | (18) | (776) | - | (72) | 1,713 |
| | | | | | | | | |
| Secured debt Fees | | | | | | | | |
| | | | | | | | | |
| Net Receipts / (Disbursements) | (707) | (41) | 822 | (18) | (776) | - | (72) | 1,713 |
| | | | | | | | | |
| Cash balance | 93 | 52 | 874 | 856 | 80 | 80 | 8 | 1,722 |

Exhibit B

**Buyk Corp.**
**DIP Budget**

| Week Ended[1] | revised plan 6/19/2022 | revised plan 6/26/2022 | revised plan 7/3/2022 | revised plan 7/10/2022 | revised plan 7/17/2022 | revised plan 7/24/2022 | revised plan 7/31/2022 | revised plan 8/7/2022 |
|---|---|---|---|---|---|---|---|---|
| Initial cash balance | | | | | | | | |
| **Receipts** | | | | | | | | |
| Secured debt (Legalist) | | | | | (4,000) | | | |
| Assets liquidation | | 1,863 | | 1,597 | | | | |
| *incl proceeds from perishables* | | | | | | | | |
| Deposits refund | | | | | | | | |
| Total Receipts | - | 1,863 | - | 1,597 | (4,000) | | | |
| **Disbursements:** | | | | | | | | |
| PACA Claims | | | | | | | | |
| Section 503(b)(9) | | | | | | | | |
| Employee Expenses | 67 | | 34 | | 34 | | 34 | |
| Employee Reimbursement | 5 | | 3 | | 3 | | 3 | |
| Outstaffed couriers, consultants, temp.hires | | | | | | | | |
| Insurance | 10 | | | | 10 | | | |
| Professional fees | | | | | 10 | | | |
| Attorney fees | 50 | - | - | - | - | - | - | - |
| Rent & Utilities | | | | | | | | |
| Utility deposit | | | | | | | | |
| Taxes & fees | | | | | 15 | | | |
| UST fees | | | 15 | | | | | |
| Total Disbursements | 132 | - | 52 | - | 72 | - | 37 | - |
| Total Operating Receipts / (Disbursements) | (132) | 1,863 | (52) | 1,597 | (4,072) | - | (37) | - |
| Secured debt Fees | | | | | | | | |
| Net Receipts / (Disbursements) | (132) | 1,863 | (52) | 1,597 | (4,072) | - | (37) | - |
| Cash balance | 1,590 | 3,453 | 3,401 | 4,998 | 926 | 926 | 889 | 889 |

Exhibit B

**Buyk Corp.**
**DIP Budget**

| | revised plan | revised plan | revised plan |
|---|---|---|---|
| Week Ended[1] | 8/14/2022 | 8/21/2022 | 8/28/2022 |
| | | | |
| Initial cash balance | | | |
| | | | |
| Receipts | | | |
| Secured debt (Legalist) | | | |
| Assets liquidation | | | |
| *incl proceeds from perishables* | | | |
| Deposits refund | | | |
| Total Receipts | | | |
| | | | |
| Disbursements: | | | |
| PACA Claims | | | |
| Section 503(b)(9) | | | |
| Employee Expenses | 34 | | 334 |
| Employee Reimbursement | 3 | | 3 |
| Outstaffed couriers, consultants, temp.hires | | | |
| Insurance | 10 | | |
| Professional fees | | | |
| Attorney fees | - | 25 | 30 |
| Rent & Utilities | | | |
| Utility deposit | | | |
| Taxes & fees | | | |
| UST fees | | | 15 |
| | | | |
| Total Disbursements | 47 | 25 | 382 |
| | | | |
| Total Operating Receipts / (Disbursements) | (47) | (25) | (382) |
| | | | |
| Secured debt Fees | | | |
| | | | |
| Net Receipts / (Disbursements) | (47) | (25) | (382) |
| | | | |
| Cash balance | 842 | 817 | 435 |