WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Buyk Corp., Chapter 11 Debtor and Debtor in Possession*
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000 / Fax: (212) 262-1215
Attorneys Appearing: James M. Sullivan (jsullivan@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : |
| | : Chapter 11 |
| BUYK CORP.,[1] | : |
| | : Case No. 22-10328-mew |
| Debtor. | : |
| | : |
| BUYK CORP., | : |
| | : |
| Plaintiff, | : Adv. Proc. No. 22-_____-mew |
| -against- | : |
| FOOD START INC., | : |
| | : |
| Defendant. | : |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS**
**PURSUANT TO 11 U.S.C. §§ 547 AND 550**

Buyk Corp. ("***Plaintiff***" or "***Debtor***"), as the debtor and debtor in possession in the above-captioned chapter 11 case (the "***Bankruptcy Case***"), by its counsel, Windels Marx Lane & Mittendorf, LLP, files this complaint (the "***Complaint***") to avoid and recover transfers totaling at least $301,611.73 against Food Start Inc. (the "***Defendant***"). In support of this Complaint, Plaintiff respectfully alleges the following upon knowledge with respect of its own acts and upon information and belief and to the best of its knowledge with respect to all other matters.

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number is Buyk Corp. (1477). The principal place of business for the Debtor is 245 East 93rd Street, Ste. 22E, New York, NY 10128.

{12105793:3}                                                    1

**NATURE OF THE CASE**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property of the Debtor that were made on or within 90 days before the commencement of the Bankruptcy Case pursuant to sections 547 and 550 of title 11, United States Code (the "*Bankruptcy Code*").

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this adversary proceeding, which arises under title 11 and relates to a case under title 11 in the United States Bankruptcy Court for the Southern District of New York (the "*Court*") captioned *In re Buyk Corp.*, Case No. 22-10328-mew, pursuant to 28 U.S.C. §§ 157 and 1334(b).

3. The statutory and legal predicates for the relief sought herein are sections 547 and 550 of the Bankruptcy Code, and Federal Rule of Bankruptcy Procedure 7001.

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

5. The Debtor consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties herein, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. Venue of this case and proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**PROCEDURAL BACKGROUND**

7. On March 17, 2022 (the "*Petition Date*"), the Debtor filed its voluntary petition for chapter 11 relief under the Bankruptcy Code in this Court. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to section 1184 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed

in this Bankruptcy Case.

## THE PARTIES

8. Plaintiff brings this action in its capacity as debtor in possession. Pursuant to Bankruptcy Code §§ 323, 547, 550, and 1107, Plaintiff is authorized and has standing to pursue this avoidance action.

9. Upon information and belief, Defendant was, at all relevant times, an entity that provided staffing services to the Debtor. Upon further information and belief, at all relevant times, Defendant's principal place of business was located at 175 Elaine Drive, Oceanside, New York 11572.

## FACTUAL BACKGROUND

10. In April 2021, the Debtor made its debut with the launch of a 15-minute grocery delivery service in New York City. In November 2021, the Debtor expanded into the Chicago market. The Debtor offered grocery items, along with household essentials, personal care and pet supplies, relying on couriers on bicycles to deliver the orders.

11. After an initial seed round of investment by Russian-based investors in the amount of approximately $63.5 million in convertible notes and $11 million in unsecured loans, in or about January 2022, the Debtor was seeking additional equity investments to fund its operations. The Debtor had been relying upon cash infusions by its original investors to continue to operate and expand while simultaneously seeking this new round of equity financing. Prior to closing its business, the Debtor's plan had been to open another 100 stores in 2022.

12. Due to the mounting indicia of a potential Russian dispute with Ukraine, the Debtor determined in January 2022 to pivot to a United States-based equity raise and actively sought Series A funding from numerous institutional investors. The United States fundraising was going reasonably well when Russia commenced its invasion of Ukraine. At that juncture,

the Debtor was confronted with an existential and, ultimately, fatal crisis. First, any chance of obtaining equity or debt investment from the prominent institutional investors which had been interested in funding the Debtor was now lost. Second, although the Debtor was operating and earning revenue, it was in the beginning stages of its growth and was relying, in part, on cash infusions by the founders to continue its operations and expansion. Unfortunately, although the founders were not, and are not, subject to any sanctions, restrictions on the ability to transfer any funds out of Russia made it impossible for the founders to provide any further funding to the Debtor.

13. Due to the invasion of Ukraine, the Debtor was unable to execute on its planned equity raise, despite its intensive efforts to raise rescue capital. With relatively little cash on hand in February 2022 and payroll coming due, the Debtor's Board of Directors, in consultation with its managers and retained advisors, determined to ultimately terminate virtually all of its employees and obtain a relatively small DIP Loan to fund a liquidating Chapter 11 case.

14. During the ninety (90) days before the Petition Date, that is between and including December 17, 2021 and March 16, 2022 (the "*Preference Period*"), the Debtor continued to operate its business, including the transfer of money to various entities, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise.

15. During the course of their relationship, Defendant and the Debtor entered into agreements for the purchase of services by the Debtor from Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "*Agreements*"). The Agreements concerned and related to the services provided by Defendant to the Debtor. The Debtor's payments to Defendant pursuant to the Agreements during the Preference Period are set forth in the Preference Analysis attached as Exhibit A and incorporated by reference.

16. Plaintiff is seeking to avoid all of the transfers of an interest of Debtor's property made by Debtor to Defendant within the Preference Period.

17. Debtor made transfers of an interest of Debtor's property to or for the benefit of Defendant during the Preference Period through payments aggregating not less than the amount set forth on Exhibit A attached (the "**Transfer**" or "**Transfers**"). The details of each Transfer are set forth on Exhibit A and incorporated by reference. Such details include the date and amount of each Transfer.

18. Plaintiff performed a due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant pursuant to 11 U.S.C. § 547(c). Based on that evaluation, Plaintiff has determined that it may avoid some or all of the Transfers even after taking into account such affirmative defenses.

19. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers of the Debtor in property made directly or indirectly to Defendant during the Preference Period or that may be avoidable or recoverable under other provisions of the Bankruptcy Code. It is Plaintiff's intention to avoid and recover all avoidable transfers of property made by the Debtor to or for the benefit of Defendant or any other transferee. Plaintiff reserves the right to amend this original Complaint to include: (i) further information regarding the Transfers, (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "**Amendments**"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### First Claim for Relief
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

20. Plaintiff repeats and re-alleges the allegations set forth above.

21. During the Preference Period, the Debtor made the Transfers to or for the benefit of Defendant in an aggregate amount not less than the total amount set forth on Exhibit A attached.

22. Each Transfer was made from the Debtor, and constituted a transfer of an interest in Debtor's property.

23. Defendant was a creditor of Debtor at the time of each Transfer by virtue of supplying services to Debtor for which Debtor was obligated to pay in accordance with the Agreements. *See* Exhibit A.

24. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by Debtor to Defendant. *See* Exhibit A.

25. Each Transfer was made for, or on account of, an antecedent debt or debts owed by Debtor to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by Plaintiff. *See* Exhibit A.

26. Each Transfer was made while Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

27. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

28. As a result of each Transfer, Defendant received more than Defendant would have

received if: (i) the Bankruptcy Case was a case under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by Debtor's schedules filed in the Bankruptcy Case as well as the proofs of claim that have been received to date, Debtor's liabilities exceed its assets such that Debtor's unsecured creditors will not receive payment of their claims in full from the Debtor's estate.

29. As a result of the above, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b) and Plaintiff is entitled to judgment against Defendant avoiding and preserving the Transfers.

**Second Claim for Relief**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

30. Plaintiff repeats and re-alleges the allegations set forth above.

31. Plaintiff is entitled to avoid the Transfers pursuant to 11 U.S.C. § 547(b).

32. Defendant was the initial transferee of the Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Transfers were made.

33. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant the Transfers, plus interest thereon to the date of payment and the costs of this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First and Second Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Transfers and directing Defendant to return to Plaintiff the amount of the Transfers pursuant to 11 U.S.C. §§ 547(b) and 550(a), plus interest from the date of judgment at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees; and

{12105793:3}                                                    7

B.     Such other and further relief as this Court may deem just and proper.

Dated: New York, New York           Respectfully submitted,
        October 19, 2022               WINDELS MARX LANE & MITTENDORF, LLP
                                                       *Attorneys for Buyk Corp., Chapter 11 Debtor and Debtor in Possession*

By:    */s/ James M. Sullivan*
        James M. Sullivan (jsullivan@windelsmarx.com)
        156 West 56th Street
        New York, New York 10019
        Tel: (212) 237-1000 / Fax: (212) 262-1215

{12105793:3}        8

# EXHIBIT A

## Preference Analysis

| Transfer Date | Transfer Amount | Reason for Transfer |
|---|---|---|
| 12/20/2021 | $24,369.98 | Services |
| 12/28/2021 | $9,619.04 | Services |
| 01/04/2022 | $5,499.79 | Services |
| 01/31/2022 | $58,844.51 | Services |
| 02/14/2022 | $18,352.66 | Services |
| 02/22/2022 | $22,440.77 | Services |
| 02/23/2022 | $37,435.63 | Services |
| 03/11/2022 | $704.31 | Services |
| 03/11/2022 | $13,498.54 | Services |
| 03/11/2022 | $591.52 | Services |
| 03/11/2022 | $4,600.60 | Services |
| 03/11/2022 | $283.67 | Services |
| 03/11/2022 | $963.63 | Services |
| 03/11/2022 | $28,427.39 | Services |
| 03/11/2022 | $14,617.01 | Services |
| 03/11/2022 | $1,406.69 | Services |
| 03/11/2022 | $1,779.95 | Services |
| 03/11/2022 | $18,247.53 | Services |
| 03/14/2022 | $39,928.51 | Services |
| **Total:** | **$301,611.73** | |